## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| PATRIOT NATIONAL, INC., *et al.*, | Case No. 18-10189 (KG) |
| Reorganized Debtors. | |
| MICHELLE L. COLE, ANDREA SCARLETT and JESSICA BARAD, on their own behalf and on behalf of all other persons similarly situated, | Adversary Proc. No. 18-50278 (KG) |
| Plaintiffs, | |
| | Obj. Deadline:  April 26, 2019 at 4:00 p.m. |
| | Hearing Date:  May 7, 2019 at 10:00 a.m. |
| v. | |
| PATRIOT NATIONAL, INC., | |
| Defendant. | |

**JOINT MOTION OF THE DEFENDANT, PNI LITIGATION TRUST AND PLAINTIFFS, PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE AND RULES 9019 AND 7023 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, TO (I) APPROVE A SETTLEMENT AGREEMENT; (II) CERTIFY A CLASS OF WARN ACT CLAIMANTS FOR SETTLEMENT PURPOSES ONLY, APPOINT CLASS COUNSEL AND CLASS REPRESENTATIVES, AND PRELIMINARILY APPROVE THE SETTLEMENT AGREEMENT; (III) APPROVE THE FORM AND MANNER OF NOTICE TO CLASS MEMBERS OF THE CLASS CERTIFICATION AND SETTLEMENT; (IV) SCHEDULE A FAIRNESS HEARING TO CONSIDER FINAL APPROVAL OF THE SETTLEMENT AGREEMENT; (V) FINALLY APPROVE THE SETTLEMENT AGREEMENT AFTER THE FAIRNESS HEARING; AND (VI) GRANT RELATED RELIEF**

Patriot National, Inc. ("<u>Defendant</u>" or "<u>PNI</u>"), Peter Kravitz, as the Litigation Trustee

("<u>Litigation Trustee</u>") for the PNI Litigation Trust (the "<u>Litigation Trust</u>") and as Plan

Administrator pursuant to the confirmed Chapter 11 Plan on behalf of Defendant, and

prospective class representatives and named plaintiffs, Michelle L. Cole, Andrea Scarlett and Jessica Barad (the "Class Representatives"), on behalf of themselves and similarly situated prospective class members (together with the Class Representatives, the "Class Members"), by and through their respective counsel, hereby move (the "Joint Motion") this Court, pursuant to section 105 of Title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (as amended, the "Bankruptcy Code"), Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 23 of the Federal Rules of Civil Procedure (the "Civil Rules"), made applicable hereto by Rule 7023 of the Bankruptcy Rules, for the entry of an order:  (i) approving the *Settlement Agreement and Release* (the "Settlement Agreement"), in substantially the form annexed hereto as **Exhibit 1**, among Defendant, the Litigation Trust and the Class Representatives (each referred to herein as a "Party" and collectively, the "Parties"), pursuant to Bankruptcy Rule 9019; (ii) certifying a class for settlement purposes only, appointing the law firm of Klehr Harrison Harvey Branzburg LLP, 1835 Market Street, Ste. 1400, Philadelphia, PA 19103 as class counsel ("Class Counsel"), appointing Michelle L. Cole, Andrea Scarlett and Jessica Barad as Class Representatives, and preliminarily approving the Settlement Agreement pursuant to Civil Rule 23; (iii) approving the form and manner of notice to Class Members of the conditional class certification and settlement (the "Class Notice"); (iv) scheduling a fairness hearing (the "Fairness Hearing") to consider final approval of the Settlement Agreement pursuant to Civil Rule 23; (v) after the Fairness Hearing, finally approving the Settlement Agreement pursuant to Civil Rule 23; and (vi) granting related relief.  In support of the Joint Motion, the Parties respectfully represent as follows:

PHIL1 7803640v.1

# I.    Preliminary Statement[1]

The Court should approve the Settlement Agreement.  The Class Representatives on behalf of themselves and on behalf of the Class Members sued PNI for allegedly failing to provide the notice required by the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq*. (the "Federal WARN Act") and any and all similar state and local laws requiring advance notice be given prior to the occurrence of an employment loss (together with the Federal WARN Act, the "WARN Act" or "WARN"), before ordering mass layoffs or plant closings.  The Class Representatives further asserted that, as a consequence of this alleged failure, the Class Members have administrative expense claims, pursuant to section 503(b)(1)(A) of the Bankruptcy Code against PNI.

In exchange for a full release of any and all claims for damages under the WARN Act, severance pay, back pay or other benefits arising from the mass layoffs or plant closings, the Litigation Trust will provide (i) the Class Members with an allowed claim in the amount of $100,000.00 (the "Allowed Priority Claim"), which will be paid from the Litigation Trust assets after payment of (a) all accrued and unpaid Litigation Trust Expenses and (b) all obligations under the Litigation Trust Facility, but prior to any distribution to the holders of Allowed First Lien Lender Deficiency Claims and Allowed Class 5 General Unsecured Claims, and (ii) the Class Members with an Allowed Class 5 General Unsecured Claim in the amount of $2,500,000.00 (the "Allowed General Unsecured Claim," and together with the Allowed Priority Claim, the "Allowed WARN Claims") to be paid *pro rata* with all other Allowed Class 5 General Unsecured Claims from the Litigation Trust and solely from funds available to the

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in subsequent sections of the Joint Motion or the Settlement Agreement.

Litigation Trust for purposes of making distributions to holders of Allowed Class 5 Unsecured Claims.

From the perspective of the Parties, the Settlement Agreement is fair and reasonable. The above-captioned WARN Act Case would be protracted and expensive to litigate, and the outcomes are uncertain. Defendant and the Litigation Trust believe that the unforeseeable business circumstance or faltering company exceptions to the sixty (60) days' notice requirement of the WARN Act apply. To the extent such exceptions do not apply, Defendant and the Litigation Trust believe that the Defendant is entitled to a reduction of any purported damages based on the Defendant's good faith belief that all actions complied with the provisions of the WARN Act. In addition, the Defendant and the Litigation Trust believe that hundreds of the Debtors' employees were not covered by WARN because their respective employment locations employed fewer than fifty (50) employees.

The Class Representatives dispute these assertions and contend that the Defendant is precluded from relying on any such exception to the WARN Act's requirements and thus were not excused from providing sixty (60) days' notice of the mass layoffs or plant closings that occurred on or after November 24, 2017. The Class Representatives also contend that the fifty (50) employee limitation does not apply here and that the Debtors' virtual and remote employees may be aggregated for purposes of WARN. A trial on the applicability of the faltering company and unforeseeable business circumstances exceptions and the employee aggregation issue would require both sides to engage in extensive expert and non-expert discovery at significant expense, with inherently uncertain results at trial.

Class Counsel also contends that if the Court found that the Class Members were entitled

to even one (1) additional day of notice than they were provided, then the Class Members would be the "prevailing parties" entitled to their attorneys' fees and costs. Thus, if the WARN Act Case was tried, the Litigation Trust faces, at least a theoretical risk, of being liable for both sides' fees (even if the Litigation Trust established the unforeseeable business circumstances or faltering company exception to the sixty (60) days' notice requirement) if the Court finds the Defendant did not provide notice to the Class Members as soon as practicable.

In light of the inherent risks and costs associated with litigation of the WARN Act Case, the Litigation Trust has determined that the allowance of the Allowed Priority Claim and an Allowed General Unsecured Claim is well within the range of reasonableness. Accordingly, the Court should approve the Settlement Agreement under Bankruptcy Rule 9019.

For essentially the same reasons, the Settlement Agreement is also fair and reasonable to the Class Members. Without the settlement (the "Settlement") embodied in the Settlement Agreement the Class Members would wait a substantial period of time before the Court determined the allowance of the alleged WARN Claims, even if they prevail at trial and on appeal, and risk further depletion of the Litigation Trust assets through continued administrative and litigation costs.

Further, it is appropriate to certify the Class for settlement purposes only and appoint Class Counsel. As set forth below, for purposes of the Settlement, the Parties agree that the Class meets all of the requirements of Civil Rule 23 and that Class Counsel is competent and experienced.

Finally, the Parties request a two-step approval process to facilitate notice to Class Members. After preliminary approval of the Settlement Agreement and the form of notice to be

given to the Class Members, Class Counsel will serve a notice ("Notice"), drafted by Class Counsel in consultation with the Defendant and the Litigation Trust, and approved by the Court, upon each Class Member that describes the Settlement Agreement, and informs the Class Members of their respective rights to opt out of the Class or object to the Settlement Agreement, and the deadlines for opting-out and/or objecting.

After service of the Notice, the Parties request that the Court set a Fairness Hearing to consider final approval of the Settlement Agreement.

Based on the foregoing, and as set forth more fully below, the Parties submit that the Court should approve the Settlement Agreement and the procedures proposed in this Joint Motion.

## II.    Background

### A.    General Background

1.      On January 30, 2018 (the "Petition Date"), PNI and certain of its affiliates and subsidiaries (the "Debtors") filed their respective voluntary petitions for relief under the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

2.      On or about February 1, 2018, the Class Representatives filed a class action complaint ("Complaint") in the Court styled *Michelle L. Cole, Andrea Scarlett and Jessica Barad, individually and as Class Representatives v. Patriot National, Inc.,* Adv. Pro. No. 18-50278-KG (the "WARN Act Case").

3.      On May 3, 2018, the Debtors filed the *Fourth Further Amended Joint Chapter 11 Plan of Reorganization* [D.I. 702] (the "Plan").  On May 4, 2018, the Court entered the *Findings*

6

*of Fact, Conclusions of Law and Order Confirming the Fourth Further Amended Joint Chapter 11 Plan of Reorganization.*  The Plan went effective on July 2, 2018.

4.      The Plan provided that the Litigation Trust shall be established pursuant to the Litigation Trust Agreement for the purpose of prosecuting litigation claims which automatically vested in the Litigation Trust and objecting to claims asserted against the Debtors.

        **B.**      **Defendant's Business and Events Leading up to the WARN Act Case**

5.      Prior to the Petition Date, PNI provided services to insurance carriers, employers and other clients to assist them in mitigating risk, complying with regulations and improving efficiency through its technology-enabled outsourcing solutions.   While PNI was not an insurance carrier and did not issue insurance policies, its business model was dependent on the annual renewal of policies written by its insurance carrier clients which enabled PNI to earn commissions and additional revenue for providing services in connection with those policies.

6.      In March 2017, PNI reportedly provided Guarantee Insurance Co. ("GIC"), its largest customer, with $30 million in exchange for a 10-year services contract.  GIC was one of PNI's most significant customers.  In August 2017, GIC entered into a consent order barring it from writing new business while implementing a plan of reorganization.   The Florida Department of Financial Services in November 2017 took over GIC as its receiver.  GIC suffered net underwriting losses and financial difficulties which caused it to delay or defer payments to PNI.

7.      Prior to November 24, 2017, the Debtors employed more than 840 employees.

8.      Through the Complaint, the Class Representatives have alleged that the Defendant violated the WARN Act by ordering mass layoffs or plant closings, on or about

November 24, 2017, without providing sixty (60) days' advance notice thereof. The Class Representatives have further asserted that as a consequence of this alleged failure to provide sixty (60) days' advance notice of mass layoffs or plant closings, the affected Employees have an administrative expense claim pursuant to section 503(b)(1)(A) of the Bankruptcy Code against the Defendant.

9.      The Defendant and the Litigation Trustee have disputed all liability thereunder, including without limitation the characterization of any WARN damage claim in respect of the Complaint as an administrative expense claim, and asserted defenses to the claims of the Plaintiffs and Class Members.

10.      Some of the former Employees of the Defendant have filed individual proofs of claim in the Bankruptcy Cases based on the termination of their employment relating to or based on the WARN Act or severance pay or benefits arising out of the termination of their employment, including but not limited to: (i) claims asserted or that could have been asserted in the WARN Act Case; and (ii) other claims for severance pay or benefits based on or arising out of any federal, state or local statute, ordinance or regulation (collectively, the "Individual WARN Claims").[2] The Defendant and the Litigation Trust dispute all of the Individual WARN Claims and reserve all rights with respect to the Individual Non-WARN Claims.

11.      The Parties recognize and agree that the question of whether the WARN claims asserted in the Complaint and the Individual WARN Claims, if allowed, would be entitled to priority treatment under the Bankruptcy Code involves unsettled legal issues.

---

[2]  For the avoidance of doubt, the Individual WARN Claims do not include filed proofs of claim arising from or relating to unpaid wages or wage equivalents, commissions, unpaid vacation, sick leave, paid time off or any other related claims (collectively, the "Individual Non-WARN Claims").

12.     Subject to certain exceptions and other requirements, the WARN Act requires employers having one hundred (100) or more full-time employees to provide written notice of a "mass layoff" or "plant closing" (as such terms are defined in the WARN Act), if the layoffs result in an "employment loss" (as defined in the WARN Act) during any thirty (30) day period for fifty (50) or more employees at a single site of employment, excluding "part-time employees" (as defined in the WARN Act).

13.     The Parties disagree as to whether the Defendant has liability under the WARN Act and as to the proper scope of the alleged Class.  There are several statutory exceptions to liability under the WARN Act.  For example, the Defendant and Litigation Trust have asserted that the Defendant satisfied the requirements of the "faltering company" and/or "unforeseeable business circumstances" exceptions under the WARN Act.  The Defendant and the Litigation Trust further assert that these exceptions can excuse notice or reduce the time period within such notice must be provided to the Employees.  The Class Representatives dispute that these defenses apply.

14.     Even if the faltering company or unforeseeable business exceptions to the WARN Act do not apply, the Defendant and Litigation Trust have asserted that the Defendant is nonetheless entitled to a statutorily-proved reduction of damages based on PNI's good-faith belief that it fell under the faltering-company and/or unforeseen business circumstances exceptions or that the provisions of the WARN Act were otherwise satisfied or did not apply. The Class Representatives dispute this.

9

E.                **Essential Terms of the Proposed Settlement**[3]

     15.    On December 18, 2018, the Defendant, the Litigation Trust and Class Representatives reached a tentative settlement, subject to Court approval, the terms of which are memorialized in the Settlement Agreement.  The essential terms of the Settlement Agreement are as follows:

- **Settlement Class**:  A class will be certified for settlement purposes only (the "Class").  The Class will include (i) the Employees who have not waived their rights under the WARN Act, who have not timely and properly opted out of the Settlement Class, who worked at and/or reported to the Debtors' headquarters at 401 East Las Olas Boulevard, Fort Lauderdale, Florida ("Headquarters") or Debtors' office at 555 Maryville University Drive, St. Louis, Missouri ("STL") and who suffered an employment loss (as defined by the WARN Act) on or after November 24, 2017.

- **Settlement Consideration Payable to the Class Members**:  On the Effective Date of the Settlement Agreement, the Class Representatives (on behalf of themselves and the other members of the Settlement Class) shall be granted an allowed claim against the Litigation Trust in the amount of $100,000.00 (the "Allowed Priority Claim").  The Allowed Priority Claim will be paid from the Litigation Trust assets after payment of (a) all accrued and unpaid Litigation Trust Expenses and (b) all obligations under the Litigation Trust Facility, but prior to any distribution to the holders of Allowed First Lien Lender Deficiency Claims and Allowed Class 5 General Unsecured Claims.  On the Effective Date, the Class Representatives (on behalf of themselves and the other members of the Settlement Class) shall also be granted an Allowed Class 5 General Unsecured Claim in the amount of $2,500,000.00 (the "Allowed Unsecured Claim" and together with the Allowed Priority Claim, the **"Allowed WARN Claims"**).  The Allowed Unsecured Claim will be paid *pro rata* with all other Allowed Class 5 General Unsecured Claims from the Litigation Trust and solely from funds available to the Litigation Trust for purposes of making distributions to holders of Allowed Class 5 Unsecured Claims.  The Allowed WARN Claims includes all amounts payable as a result of the settlement and compromise contained in the Settlement Agreement, including without limitation attorneys' fees and costs that shall be paid to Class Counsel.

---

[3]  The summary contained herein is qualified in its entirety by reference to provisions of the Settlement Agreement. In the event of any inconsistencies between the provisions of the Settlement Agreement and the terms herein, the terms of the Settlement Agreement shall govern.  Unless otherwise defined in the summary contained in the accompanying text, capitalized terms shall have the meanings assigned to such terms in the Settlement Agreement.

- **Release of Claims and Covenant Not to Sue**:  In consideration for the Allowed WARN Claims, the Class Members, each on his or her own behalf, and on behalf of their respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys will release and forever discharge the Released Parties from and with respect to any and all Released Claims, including individual or class and collective action wage and hour claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, liquidated damages, punitive damages, interest, penalties, actions or causes of action, whether known or unknown, contingent or non-contingent, from the beginning of time through the Effective Date of the Agreement, but which shall not include the Individual Non-WARN Claims.  The Releasing Parties will be deemed to have fully, finally, and forever released, settled, compromised, relinquished and discharged any and each of the Released Parties from any and all Released Claims.  The Releasing Parties agree and covenant that they will never, directly or indirectly, institute any lawsuits or other claims against any of the other Released Parties with respect to any Released Claims.  In giving this release and covenant, the Releasing Parties acknowledge that they are aware that facts may be discovered in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Released Claims, but it is their respective intention to, and they do fully, finally, and forever settle and release any and all of the Released Parties from any and all Released Claims without regard to the subsequent discovery or existence of such additional or different facts.  Each Releasing Party acknowledges that Section 1542 of the Civil Code of the State of California provides: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."  Nevertheless, each Release Party agrees to expressly waive any rights under such code section and any other statute, regulation or common law principles of similar effect, understands that this waiver is not a mere recital, but is a knowing and voluntary waiver of rights and benefits otherwise available, and agrees that this waiver is an essential and material term of this Agreement, and that without such waiver the Defendant and the Litigation Trust would not have entered into this Agreement. In the event that any waiver of statute or regulation is judicially determined to be invalid, voidable or unenforceable for any reason, such waiver to that extent shall be severable from the remaining provisions of this Agreement and the invalidity, voidability or unenforceability thereof shall not affect the validity, effect, enforceability or interpretation of the remaining provisions of the Agreement.

- **Dismissal of Complaints:**  Dismissal with prejudice of the WARN Act Case shall be executed in a form agreeable to the Parties (the "Dismissal").  Class Counsel shall file the Dismissal with the Court upon the Order approving the Settlement Agreement becoming a Final Order.  Dismissal of the WARN Act Case shall not

11

abate or limit the effectiveness of the Order approving the Settlement Agreement, including the releases set forth herein and the terms and conditions of the Settlement Agreement.

- **Disallowance of Individual WARN Claims:**  Upon the Effective Date of the Settlement Agreement, the members of the Settlement Class agree that any claims that have been scheduled on behalf of, or filed by the Class Representatives or the members of the Settlement Class in the Debtors' Bankruptcy Cases, on account of any alleged violation of the WARN Act or for severance pay or benefits under any federal, state or local law or regulation, including without limitation, the Individual WARN Claims are disallowed in their entirety and may be expunged from the Debtors' schedules or claims register, as appropriate.  The Individual Non-WARN Claims shall not be disallowed under the Settlement  Agreement, will remain subject to the Litigation Trust's further review.

- **Fee Award:**  Class counsel plans to apply for an Order of the Court awarding a thirty-three and one-third (33.33%) percent contingency fee, plus costs, payable out of the gross settlement proceeds.[4]

### III.    Jurisdiction, Venue and Predicates for Relief

16.    The Court has jurisdiction over this Motion under 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of this Motion and the Bankruptcy Cases is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief requested herein are section 105(a) of the Bankruptcy Code, Bankruptcy Rule 9019 and Civil Rule 23.

### IV.    Summary of Relief Requested

17.    By this Joint Motion, the Parties request that the Court enter Orders:   (i) approving the Settlement Agreement pursuant to Bankruptcy Rule 9019; (ii) certifying the Class

---

[4]  Class Counsel contends that a contingency fee of thirty-three and one third percent (33.33%), plus costs is typical in a WARN Act class action.  Class Counsel further submits that the Class Representatives and over 55 plaintiffs directly engaged Klehr Harrison Harvey Branzburg LLP pursuant to a fee arrangement that authorized a contingency fee of thirty-three and one third percent (33.33%), plus costs.  Class Counsel believes that the Fee Award is reasonable, inter alia,  because such fee awards are typically approved in WARN Act cases and the recovery in this is reasonable in this case given the limited assets, the litigation risk, and the complexity of legal issues presented.

for settlement purposes only, appointing Class Counsel and Class Representatives and preliminarily approving the Settlement Agreement; (iii) approving the form and manner of the Class Notice; (iv) scheduling a Fairness Hearing to consider final approval of the Settlement Agreement; (v) approving the Settlement Agreement on a final basis; and (vi) granting related relief.

## V.    Basis for Relief Requested

### A.    The Court Should Approve the Settlement Agreement Pursuant to Bankruptcy Rule 9019

18.    Bankruptcy Rule 9019(a) governs the approval of compromises and settlements, and provides as follows:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

19.    The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored."  *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006); *see also Matter of Penn Central Transp. Co.*, 596 F.2d 1102, 1113 (3d Cir. 1979) ("In administrating reorganization proceedings in an economical and practical matter it will often be wise to arrange the settlement of claims . . .") (internal citation marks and quotation marks omitted).

20.    In determining the fairness and equity of a compromise in bankruptcy, the United States Court of Appeals for the Third Circuit has stated that it is important that the bankruptcy court "apprise[] [it]self of all facts necessary [to form] an intelligent and objective opinion of the

PHIL1 7803640v.1

probabilities of ultimate success should the claim be litigated, [and] estimate . . . the complexity, expense and likely duration of such litigation . . . [and] all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *Matter of Penn Central Transp. Co.*, 596 F.2d at 1114; *see also In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (describing the "ultimate inquiry to be whether the compromise is fair, reasonable, and in interest of the estate") (internal citations and quotation marks omitted).

21.    The United States Court of Appeals for the Third Circuit has enumerated four factors that should be considered in determining whether a compromise should be approved: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Myers v. Martin* (*In re Martin*), 91 F.3d 389, 393 (3d Cir. 1996) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)); *accord In re Nutraquest, Inc.,* 434 F.3d 639, 644 (3d Cir. 2006).

22.    Furthermore, the decision to approve a compromise is "within the [sound] discretion of the bankruptcy court." *In re World Health Alternatives, Inc.*, 344 B.R. at 296.  In making its decisions, the bankruptcy court should not substitute its judgment for that of the Litigation Trustee.  The court is not to decide the numerous questions of law or fact raised by the litigation, but rather should canvas the issues to determine "whether the settlement fall[s] below the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 22 (1983) (internal citations and quotations omitted); *see also In re Penn Central Transp. Co.,* 596 F.2d at 1104 (holding that settlement

should be approved if it falls "within the range of litigation possibilities"); *In re World Health Alternatives, Inc.*, 344 B.R. at 296 (stating that "the court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is within the range of litigation possibilities") (internal quotation marks and citations omitted).

23.     In passing upon the reasonableness of a proposed compromise, the Court "may give weight to the opinions of the Trustee, the parties and their counsel in determining the reasonableness of the proposed settlement." *In re Bell & Beckwith*, 77 B.R. 606, 612 (Bankr. N.D. Ohio), *aff'd*, 87 B.R. 412 (N.D. Ohio 1987); *accord In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness . . . . If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other") (internal citations omitted).

24.     The Parties believe that the Settlement rises well above the "lowest point in the range of reasonableness." Additionally, as discussed more fully below, each of the applicable *Martin* factors set forth above weighs in favor of approving the Settlement Agreement. The Court should therefore approve the Settlement Agreement pursuant to Bankruptcy Rule 9019 and applicable law.

25.     The results of a trial are uncertain and the litigation is complex. The WARN Act Case involves numerous legal issues regarding the application of the WARN Act and its statutory and other legal defenses to complex facts. These issues include, *inter alia*, (i) whether the Defendant was entitled to give fewer than sixty (60) days' notice because of the unforeseeable business circumstances that caused the Debtors to fail; (ii) whether the Defendant

was entitled to give fewer than sixty (60) days' notice because, at the time notice would otherwise have been required, it was seeking new capital it reasonably believed, if obtained, would have obviated or substantially postponed the alleged plant closings or mass layoffs; (iii) whether the Defendant has other defenses to the application of the WARN Act; (iv) whether the employment losses allegedly suffered by the aggrieved employees was caused by the Defendant's failure to obtain capital or business; (v) whether the Defendant gave "as much notice as practicable;" (vi) whether the Defendant is entitled to a defense of "good faith;" (vii) the computation of the amount of damages; (viii) whether the Defendant is entitled to setoffs against damages for sums paid prepetition to the employees; (ix) whether virtual employees of the Defendant who worked at remote or virtual location are entitled to WARN damages; (x) whether attorneys' fees are to be awarded to the Class Members if they prevail and whether such fees are entitled to administrative expense priority; and (xi) whether the alleged damages are entitled to administrative expense priority under section 503(b)(1)(A) of the Bankruptcy Code or wage or benefit priority under subsections (a)(4) or (5) of section 507 of the Bankruptcy Code, respectively.

26.     Continued litigation would be costly and time-consuming and expose the Litigation Trust to significant risks.  The Settlement provides for (i) the allowance of the Allowed Priority Claim in the amount of $100,000.00 to be paid from the Litigation Trust assets, and (ii) the allowance of the Allowed General Unsecured Claim in the amount of $2,500,000.00 to be paid from the Litigation Trust assets.

27.     The Settlement Agreement resolves all claims under the WARN Act and related law, and eliminates any further accrual of the substantial litigation expenses which have been

16

associated with the WARN Act Case.  Furthermore, the difficulty of collection weighs in favor of approval of the Settlement Agreement because the Litigation Trust has extremely limited assets.  Accordingly, the paramount interests of other creditors favors approval of the Settlement Agreement.

28.     For the foregoing reasons, the Parties respectfully submit that approval of the Settlement Agreement is warranted.[5]

### B.     The Court Should Certify the Class, Appoint the Class Counsel and Class Representatives Pursuant to Civil Rule 23

29.     Where, as in this case, the Court has not already certified a class, before approving a class settlement pursuant to Civil Rule 23, the Court must determine whether the proposed settlement class satisfies the certification requirement of Civil Rule 23.  *See Amchem v. Windsor*, 521 U.S. 591, 620 (1997); *see also In re Community Bank of Northern Virginia*, 418 F.3d 277, 300 (3d Cir. 2005).

30.     "[A]ll federal courts recognize the utility of Rule 23(b)(3) settlement classes." *Amchem v. Windsor*, 521 U.S. at 618; *accord Community Bank*, 418 F.3d at 299.   "The settlement class action device offers defendants the opportunity to engage in settlement negotiations without conceding any of the arguments they may have against class certification." *Community Bank*, 418 F.3d at 299; *see also General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 786 (3d Cir. 1995) ("By specifying certification for settlement purposes only . . . the court preserves the defendant's ability to contest certification should the settlement fall apart").

---

[5]  In the event that the Settlement Agreement is not approved by the Court or the Settlement Agreement does not become binding and enforceable for any reason, the Parties reserve all of their rights.

31.     Subsections (a) and (b) of Civil Rule 23 "focus court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of a class representative." *Amchem v. Windsor*, 521 U.S. at 621.

**C.     The Court Should Conditionally Certify the Settlement Class**

32.     To be certified a class must satisfy the four requirements of Civil Rule 23(a):  (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  *See* Fed. R. Civ. P. 23; *see also Community Bank*, 418 F.3d at 302.  In addition, the class must satisfy the requirements of Civil Rule 23(b)(1), (2) or (3).  In this case, the Parties have agreed to request conditional certification under Civil Rule 23(b)(3), "the customary vehicle for damage actions." *Id*.  In order to certify a class under Civil Rule 23(b)(3), the court must make two additional findings, predominance and superiority.  That is, "[i]ssues common to the class must predominate over individual issues, and the class device must be superior to the other means of handling the litigation."  *Gates v. Rohm & Hass Co.*, 248 F.R.D. 434, 442-43 (E.D. Pa. 2008). The proposed Settlement Class meets each of the foregoing elements.

**a.     The Civil Rule 23(a) Criteria are Satisfied[6]**

33.     Numerosity requires a finding that the putative class is "so numerous that joinder of all members is impracticable."  *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182 (3d Cir. 2001).  "No single magic number exists satisfying the numerosity requirement."  *Behrend v. Comcast Corp.*, 245 F.R.D. 195, 202 (E.D. Pa. 1989).  However, the Court of Appeals for the Third Circuit "typically has approved classes numbering 40 or more."

---

[6]  The positions expressed in this section are those of the Class Representatives only and not of the Defendant or Litigation Trust.  The Defendant and the Litigation Trust do not dispute these positions solely for purpose of the proposed Settlement.

*Gates*, 248 F.R.D. at 440 (citing *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)).

34.    The proposed Class Members as set forth on **Exhibit A** to the Settlement Agreement meet the numerosity requirement and the Class is sufficiently numerous so as to make joinder of all Class Members impractical.  Accordingly, the Court should find that the numerosity requirement has been met.

35.    The commonality requirement requires the existence of at least one question of law or fact common to the Class.  *See* Fed. R. Civ. P. 23(a)(2); *see also Johnston v. HBO Film Management, Inc.*, 265 F.3d 178, 184 (3d Cir. 2001).  The commonality threshold is low and does not require "an identity of claims or facts among class members."  *Behrend*, 245 F.R.D. at 202-203.    Further, the existence of individual facts and circumstances will not defeat commonality so long as the Class Members allege harm under the same legal theory.[7]

36.    Here, fundamental issues of law and fact regarding notice of termination, applicability of several defenses, measure of damages and priority of claims and attorneys' fees are common to all Class Members.

37.    Typicality requires that the "named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of plaintiffs are aligned with those of the class."  *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (citing *Baby Neal*, 43 F.3d at 55); *see also* Fed. R. Civ. P. 23(a)(3).  "Typicality requires a strong similarity of legal theories to ensure that the class representatives' pursuit of their own goals will work to benefit the entire class."  *Powers*, 245 F.R.D. at 236.  "Factual differences will not render atypical if the

---

[7] Class Counsel recognizes that the amount of damages is particular to each Class Member.  However, individualized damage calculations do not defeat commonality, "so long as the plaintiffs allege harm under the same legal theory."  *Baby Neal v. Casey*, 43 F.3d 48, 56-58 (3d Cir. 1994).

claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Beck*, 457 F.3d at 295-96 (quoting *Baby Neal*, 43 F.3d at 55).

38.    The Class Representatives do not allege that they were singled out; instead they allege that they suffered harm as a result of the same conduct that allegedly injured the Class Members – they were terminated by the Debtors on or after November 24, 2017, without receiving sixty (60) days' advance written notice thereof.  Accordingly, the Court should find that the typicality requirement is met.

39.    With respect to adequacy, class representatives must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4); *Gates,* 248 F.R.D. at 441.  The adequacy inquiry "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck*, 457 F.3d at 296.  Thus, the Court must determine "whether the representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class." *Johnston*, 265 F.3d at 185.

40.    The Court should find that the Class Representatives and Class Counsel adequately represent the interests of the Class Members.  Class Counsel is well qualified and experienced to represent the Class Members.   Charles. A. Ercole, Esq. and Klehr Harrison Harvey Branzburg, LLP have served as lead counsel or co-counsel in a significant number of employment law class actions, including*, Classic Kitchens, LLC, et al.,* Case No. 01-20393 (Bankr. E.D. Pa. 2001) (lead defense counsel); *In Re Charter Behavioral Health Systems, Inc., eta!.,* Case No. 00-00989-01 089) (Bankr. D. De. 2000); *Justin Abreau v. Oakwood Homes*

*Corporation, et al., C. A. 02I 3396 (Bankr. D. Del. 2002); In Re USF Red Star Worker Notification Litigation, MDL I 655 (E. D. Pa. 2005), In Re McGraw v. Independence Blue Cross, Docket No. 000171 (Pa. Ct. Common Pleas 2007); Rocco v. Sears, et al. No. 06-2868 (D. NJ 2008;, Riley v. Hoboken Wood Flooring, C.A. No. 2:07-cv-05666, (D.N.J 2009); Caccamo and Harnois v. Mortgage Lenders Network, Adv. No. 07-51415 (D. Del. 2009); Perez v. American Remanufacturers Inc., Adv. No. 06-50819 (Bankr. D. Del. 2010); Fleetwood Travel Trailers,* No. 6:09-ap-01114-MJ (Bankr. C.D. Ca. 2010); *Sane v. Liberty Fibers Corp., Adv. No. 06-05049 (Bankr. MD. Tenn. 2011); In re Qimonda North America, et al., Adv. No. 09-50192 (Bankr. D. Del. 2011); Smith v. Arrow Trucking, No. 09-cv-810 (N. D. Okla. 2011); Excel Storage Products Case No. 10-07862 (RNO) (pending Bankr. MD. Pa.;, MF Global Holdings Adv. Pro. No. 11-02880 (MG) (pending in S.D.N Y); Hostess Employees' WARN Litigation,* Case No. 12-22052 (U.S. Bankr. Ct. S.D.N.Y.)(RDD); *Woolery et al v. MatlinPatterson Global Advisors LLC et al*, Case No. 1:12-cv-00726-RGA (*pending in*  D. Del. 2012).

### b.    The Civil Rule 23(b) Criteria are Met[8]

41.    Common questions of law and fact predominate over the individual issues that appear to be limited to each Class Member's pay and benefits under the WARN Act. Predominate tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *See Amchem*, 521 U.S. at 623-24; *see also Community Bank*, 418 F.3d at 308-09. The proper predominance inquiry "trains on the legal and factual questions that qualify each member's case as a genuine controversy, questions that preexist any settlement." *Amchem*, 521

---

[8]  The positions expressed in this section are those of the Class Representatives only and not of the Defendant or Litigation Trust.  The Defendant and the Litigation Trust do not dispute these solely for purposes of the proposed Settlement.

U.S. at 623.  "In this vein a predominance analysis is similar to the requirements of Rule 23(a)(3) that claims or defenses of the named representatives must be typical of the claims or defenses of the classes."  *Community Bank*, 418 F.3d at 309.

42.     Just as typicality exists, predominance also exists.  All of the claims arise from an alleged violation of the WARN Act resulting from the Debtors' mass layoff of employees or plant closings on or after November 24, 2017.  Accordingly, the Court should find that the predominance requirement is met.

43.     Civil Rule 23(b)(2) also requires a determination that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3); *see also Gates*, 248 F.R.D. at 443.  In effect, "[t]he superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative methods of adjudication."  *Krell v. Prudential Ins. Co. (In re Prudential Ins. Co.)*, 148 F.3d 283, 316 (3d Cir. 1998).

44.     Civil Rule 23 sets forth several factors relevant to the superiority inquiry:  "(A) the class members interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (D) the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3); *see also Gates*, 248 F.R.D. at 443.  However, when a class certification is being considered for settlement purposes only, the difficulties in managing a class action are not considered.  *See Gates*, 248 F.R.D. at 443.

45.     Here, a class action is superior to individual actions.  The WARN Act itself notes

22

the propriety of class treatment for WARN Act litigations.  *See* 29 U.S.C. § 2104(a)(5) (WARN

Act claimant "may sue either for such person or for other persons similarly situated").  The

nature of the WARN Act makes it perfectly suited to class treatment in many cases, such as this

one, as liability depends on issues of law and fact that affect an entire large group of employees

in the same way.  Additionally, the amount of each Class Member's individual claim is relatively

small.  Individually, there is little incentive in the prosecution of separate actions.  *See Amchem*,

521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the

problem that small recoveries do not provide the incentive for any individual to bring a solo

action prosecuting his or her rights.  A class action solves this problem by aggregating the

relatively paltry potential recoveries into something worth someone's (usually an attorney's)

labor") (internal quotation and citation omitted).  It is therefore appropriate for all of the WARN

Claims against the Debtors arising from the Class Representatives' allegations to be concentrated

in the Court.  In addition, determining the claims of some Class Members, but not all, could

prejudice the claims of the remaining Class Members.  Accordingly, the Court should find that

the superiority element is met.

46.    Based on the foregoing, the Court should certify the Class for settlement purposes

only, appoint Michelle L. Cole, Andrea Scarlett and Jessica Barad as the Class Representatives,

and appoint the law firm of Klehr Harrison Harvey Branzburg LLP as Class Counsel.

**D.    The Court Should Preliminarily Approve the Settlement Agreement
        Pursuant to Civil Rule 23**

47.    After Class Certification, approval of a class settlement generally requires two

hearings:  one preliminary approval hearing and one final "fairness" hearing.  *See Gates*, 248

F.R.D.at 442-43.  Once a settlement is preliminarily approved, notice of the proposed settlement

and the fairness hearing is provided to class members.  Because the Settlement Agreement in this case will be preliminarily approved pursuant to this Joint Motion, notice of the conditional class certification and proposed settlement can be combined into one notice.  *See Gates*, 248 F.R.D. at 445 (citation omitted). At any subsequent fairness hearing, Class Members may formally object to the proposed settlement. *See Gates*, 248 F.R.D. at 439.

48.    "The preliminary approval decision is not a commitment [to] approve the final settlement; rather, it is a determination that 'there are no obvious deficiencies and the settlement falls within the range of reason.'"  *Id*. at 438 (quoting  *Smith v. Professional Billing & Management Services, Inc.*, 2007 WL 4191749, * 1 (D. N.J. 2007)).  The preliminary approval determination requires the Court to consider whether "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re General Motors Corp. Pick Up Fuel Tank Products Liability Litigation*, 55 F.3d 768, 785-86 (3d Cir. 1995); *see also Gates*, 248 F.R.D. at 444.  When a class certification is sought in conjunction with preliminary approval, then class member objections are not relevant. *See Gates*, 248 F.R.D. at 444.

49.    The Settlement Agreement has no obvious deficiencies and, as demonstrated above, falls within the range of reason.  Further, each of the above-cited factors weighs in favor of preliminary approval of the Settlement Agreement.

50.    First, the Settlement is the result of good faith, arm's-length negotiations between capable adversaries.  The Parties have been in discussions with respect to the WARN Act Case since soon after the Complaint was filed and the Class is represented by counsel with extensive

24

experience and expertise in WARN Act matters.

51.    Second, the Parties exchanged a significant amount of information during their negotiations, including Defendant sharing payroll information with Class Counsel..  The Parties engaged in mediation with the Court-appointed Mediator.

52.    Third, as set forth herein, Class Counsel has been appointed as class counsel or been appointed jointly with a co-counsel in at least 16 employment class actions, the majority of which involved WARN Act claims similar to those asserted herein.  The Class Representatives believe that Class Counsel has the experience and skill to both vigorously litigate WARN Act claims and to determine when and to what extent settlement is appropriate.  They have exercised that judgment in this case with respect to the Settlement Agreement.

53.    Accordingly, the Court should preliminarily approve the Settlement Agreement.

**E.    The Court Should Approve the Form and Manner of the Proposed Notice of Settlement**

54.    Civil Rule 23(c)(2)(B) provides:

For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all class members who can be identified through reasonable effort.  The notice must clearly and concisely state in plain, easily understandable language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

55.    In addition, Civil Rule 23(e) requires that all members of the class be notified of the terms of any proposed settlement.  *See* Fed. R. Civ. P. 23(e).  The Civil Rule 23(e)

requirement is "designed to summarize the litigation and the settlement and to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation. *See Krell v. Prudential Ins. Co. (In re Prudential Ins. Co.)*, 148 F.3d at 326-27.

56.    The Class Notice and the Opt-Out Notice Form, substantially in the forms attached to the Settlement Agreement as **Exhibit C** and **D**, will be served by Class Counsel upon each member of the Class.  Class Counsel proposes that within fifteen (15) business days following entry of the Order certifying the Class for settlement purposes and preliminarily approving the Settlement Agreement, Class Counsel will serve the Class Notice and Opt-Out Notice Form upon each member of the Class at their last known address according to the Debtors' books and records (or as updated by Class Counsel's searches for current addresses). *Cf. id*. at 327 (holding that mailings to last known address of class members and publication in national newspapers sufficient to provide notice to large, multi-state class).

57.    The Class Notice includes each of the facts required by Civil Rule 23(c)(2)(B). The Class Notice also outlines the terms of the Settlement Agreement, including the attorneys' fees and out of pocket costs proposed to be paid to the Class Counsel and describes how each Class Member may obtain a copy of the pleadings in the WARN Act Case and a copy of the Settlement Agreement.  The Class Notice will also state the date, time, location and purpose of the Fairness Hearing.  In addition, the Class Notice will inform each of member of the Class of his/her right to appear at the Fairness Hearing, and describes the procedures for opting out of the Class or objecting to approval of the Settlement Agreement.  Accordingly, the form and manner of the Class Notice is sufficient and should be approved.

58.     In addition, Class Counsel intends to satisfy the requirements of the Class Action Fairness Act, 28 U.S.C. § 1711 *et seq*., by providing notice to appropriate state and federal officials.

**F.     The Court Should Finally Approve the Settlement at the Fairness Hearing Pursuant to Civil Rule 23**

59.     The Parties jointly request that the Court set a Fairness Hearing approximately three (3) months after the date of the initial approval of the Settlement Agreement.  At the Fairness Hearing, the Court should finally approve the Settlement, provided that no final order would be entered pending the expiration of any applicable deadlines under 28 U.S.C. § 1715.

60.     Civil Rule 23 provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  Final approval of a settlement pursuant to Civil Rule 23(e) turns on whether the settlement is "fair, reasonable and adequate."  Fed. R. Civ. P. 23(e)(2); *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001).  "This inquiry reaches the court's independent and objective analysis of the evidence and circumstances before it in order to determine whether the settlement is in the best interests of those whose claims will be extinguished."  *Community Bank*, MDL No. 1674, No. 03-0425, 2008 WL 3833271, * 5 (W.D. Pa. Aug. 15, 2008) (quoting *General Motors*, 55 F.3d at 785).

61.     The Court of Appeals for the Third Circuit has held that the following nine factors are relevant in determining whether a proposed class settlement is fair, reasonable and adequate: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintain the class action through trial; (7) the ability of

the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement

fund in light of the best recovery; and (9) the range of reasonableness of the settlement in light of

all the attendant risks of litigation.  *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).  This

list is not exhaustive.

62.    The following *Girsh* factors strongly support approval of the Settlement

Agreement:

- As discussed, litigation of the WARN Act Case would be complicated, protracted and expensive for the Litigation Trust;

- The Class Representatives support the Settlement Agreement and Class Counsel believes that the bulk of the other Class Members will have a favorable reaction to the Settlement Agreement and will not object to approval of the Settlement Agreement;

- The Settlement Agreement was reached after the essential facts had been thoroughly investigated by Class Counsel through extensive fact discovery and disclosures by the Defendant's counsel and the Parties, through counsel, had participated in mediation;

- The risks that the Class Representatives would be unable to establish liability because of the  defenses asserted by the Defendant's counsel;

- When considered in light of the best possible recovery and the attendant risks, the Settlement falls well within the range of reasonableness; and

- Litigating the WARN Act Case would be expensive, and the recovery, even if damages are awarded, is of questionable value, given that the assets of the Litigation Trust are extremely limited.

63.    Based on the foregoing, the Court should approve the Settlement Agreement

pursuant to Civil Rule 23 and Bankruptcy Rule 9019.

## VI.    <u>No Prior Request</u>

64.    No prior request for the relief sought herein has been duly made to the Court or

any other court.

28

## VII.    Notice

65.    In accordance with Order establishing notice and service procedures in the Bankruptcy Cases [Docket No. 78], notice of this Motion has been provided to (i) the Pre-Petition Agent, (ii) the Office of the United States Trustee for the District of Delaware, (iii) the creditors holding the twenty (20) largest unsecured claims against the Defendant on a consolidated basis as identified in the Debtors' *Schedules of Liabilities*, and (iv) those parties who have filed a notice of appearance and request for service of pleadings in the Bankruptcy Cases pursuant to Bankruptcy Rule 2002.  Due to the nature of the relief requested herein, the Parties respectfully submit that no further notice of this Motion is required.

## VIII.    Conclusion

**WHEREFORE**, for the foregoing reasons, the Parties respectfully request that the Bankruptcy Court enter Orders, substantially in the proposed form annexed to the Settlement Agreement as **Exhibit 2** hereto: (i) approving the Settlement Agreement pursuant to Bankruptcy Rule 9019; (ii) certifying the Class for settlement purposes only, appointing Class Counsel and Class Representatives and preliminarily approving the Settlement Agreement; (iii) approving the form and manner of the Class Notice; (iv) scheduling a Fairness Hearing to consider final approval of the Settlement Agreement; (v) approving the Settlement Agreement on a final basis; (vi) granting related relief; and (vii) granting such other relief as the Court deems necessary and appropriate.

DATED:  April 5, 2019

**KLEHR HARRISON HARVEY BRANZBURG LLP**

By: */s/ Sally E. Veghte*
Sally E. Veghte (DE Bar No. 4762)
919 Market Street, Suite 1000
Wilmington, DE  19801
Telephone: (302) 552-5503
sveghte@klehr.com

-And-

Charles A. Ercole, Esquire
1835 Market Street, Suite 1400
Philadelphia, PA  19103
Telephone:  (215) 569-4282
Email:  cercole@klehr.com

*Attorneys for Class Plaintiffs and the Putative Class*

**MORRIS JAMES, LLP**

By:     */s/ Carl N. Kunz, III*
Carl N. Kunz, III (DE Bar No. 3201)
500 Delaware Avenue, Suite 1500
Wilmington, Delaware  19801
Telephone: (302) 888-6811
Facsimile:  (302) 571-1750

**KILPATRICK TOWNSEND & STOCKTON LLP**
David Posner
The Grace Building
1114 Avenue of the Americas
New York, New York  10036
Telephone: (212) 775-8764
Facsimile:  (212) 658-9523

*Attorneys for PNI Litigation Trust, Litigation Trustee and Defendant*