## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* <br><br> **PATRIOT NATIONAL, INC.,** *et al.,*[1] <br><br> **Debtors.** | Chapter 11 <br><br> Case No. 18-10189 (KG) <br><br> (Jointly Administered) <br><br> Re: D.I. 18 |

## INTERIM ORDER GRANTING DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING POSTPETITION FINANCING; (II) AUTHORIZING USE OF CASH COLLATERAL; (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES; (IV) SCHEDULING A FINAL HEARING; AND (V) GRANTING RELATED RELIEF

This matter is before the Court on the motion dated January 30, 2018 [D.I. 18] (the "Motion")[2] of the above-captioned debtors and debtors-in-possession (the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), seeking the entry of an interim order (this "Interim Order") and a final order (the "Final Order"), pursuant to sections 105, 361, 362, 363, 364, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 4001-2 and 4001-3 of the Local Rules of Bankruptcy Procedure of the United

---

1.  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors' federal tax identification number, are: Patriot National, Inc. (1376); Patriot Services, LLC (1695); TriGen Insurance Solutions, Inc. (2501); Patriot Captive Management, LLC (2341); Patriot Underwriters, Inc. (0045); TriGen Hospitality Group, Inc. (6557); Patriot Risk Consultants, LLC (0844); Patriot Audit Services, LLC (5793); Patriot Claim Services, Inc. (9147); Patriot Risk Services, Inc. (7189); Corporate Claims Management, Inc. (6760); CWIBenefits, Inc. (0204); Forza Lien, LLC (7153); Contego Investigative Services, Inc. (0330); Contego Services Group, LLC (0012); Patriot Care Management, LLC (2808); Radar Post-Closing Holding Company, Inc. (2049); Patriot Technology Solutions, LLC (6855); and Decision UR, LLC (1826). The Debtors' headquarters are located at 401 East Las Olas Boulevard, Suite 1650, Fort Lauderdale, Florida 33301.

2.  All defined terms shall have the meaning ascribed to them in the DIP Agreement (as defined below) unless otherwise defined herein.

States Bankruptcy Court for the District of Delaware (the "Local Rules"), providing for the following:

  (a)  authorization for the Debtors to obtain or guaranty obligations in respect of secured postpetition financing on a superpriority basis in the form of a multi-draw term loan facility in the principal amount of up to $15,500,000 (the "DIP Facility," and the loans provided thereunder, the "DIP Loans"), of which a maximum of $5,000,000 shall be made available on an interim basis, pursuant to the terms and conditions of that certain Senior Secured Super-Priority Debtor-in-Possession Financing Agreement (as the same may be amended, supplemented, restated, or otherwise modified from time to time, the "DIP Agreement") (substantially in the form attached hereto as **Exhibit "A"**), by and among (i) Patriot National, Inc. ("Parent"), as Borrower, and each of its subsidiaries party thereto, as Guarantors; (ii) Cerberus Business Finance, LLC, as collateral agent and administrative agent (the "DIP Agent"), and (iii) the lenders from time to time party thereto (such lenders in such capacities, the "DIP Lenders" and together with the DIP Agent, the "DIP Parties");

  (b)  authorization for the Debtors to execute the DIP Agreement and all other documents, agreements and instruments delivered pursuant thereto or executed or filed in connection therewith, all as may be reasonably requested by the DIP Parties (as the same may be amended, restated, supplemented or otherwise modified from time to time, and collectively with the DIP Agreement, the "DIP Documents"), and for the Debtors to perform any and all of their obligations thereunder and such other and further acts as may be necessary or appropriate in connection therewith;

  (c)  authorization for the grant of the DIP Superpriority Claims and the DIP Liens (each as defined below) to the DIP Parties on all of the Collateral (as defined below) to secure

the DIP Facility and all obligations owing and outstanding thereunder and under the DIP Documents, as applicable, this Interim Order and the Final Order, as applicable (collectively, and including all "Obligations" as defined in the DIP Agreement, the "DIP Obligations"), subject only to certain liens, if any, permitted under the DIP Documents[3] and the Carve-Out (as defined below);

(d)      authorization for the DIP Agent to exercise all rights and remedies under the DIP Documents upon the occurrence and during the continuance of an Event of Default (as defined in the DIP Agreement), subject to the terms of this Interim Order or the Final Order, as applicable;

(e)      authorization for the Debtors to use "Cash Collateral" (as such term is defined in section 363(a) of the Bankruptcy Code) of the Prepetition Secured Parties (as defined below), subject to the Approved Budget (as defined below) as contemplated hereunder and under the DIP Documents through the earlier of (i) the occurrence of a Termination Date (as defined below) and (ii) the date of the Final Hearing (as defined below) (such period of time, the "Interim Period"), pursuant to the terms and conditions set forth in this Interim Order (and thereafter as may be permitted by the Final Order);

(f)      authorization to provide adequate protection, including the Adequate Protection Liens and the Adequate Protection Superpriority Claims (each as defined below), on account of the prepetition secured debt obligations due and owing on account of that certain Financing Agreement, dated as of November 9, 2016 (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "Prepetition Loan Agreement," and

---

3.  Nothing herein shall constitute a finding or ruling by this Court that any such permitted liens, if any, are valid, enforceable, perfected, non-avoidable or senior to the DIP Liens (as defined below) or Prepetition Liens (as defined below). Nothing herein shall prejudice the rights of any party in interest including, but not limited to, the Debtors, the Prepetition Secured Parties, the DIP Parties and any official committee, if appointed, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, extent or any other aspect of any such permitted liens.

together with all security, pledge and guaranty agreements and all other documentation executed prior to the Petition Date in connection with any of the foregoing, the "Prepetition Loan Documents"), by and among the Parent as borrower, its subsidiaries party thereto as guarantors, the lenders from time to time party thereto (such lenders in such capacities, the "Prepetition Secured Lenders"), and Cerberus Business Finance, LLC, as collateral agent and administrative agent (in such capacities, the "Prepetition Agent," and together with the Prepetition Secured Lenders, the "Prepetition Secured Parties"); and on account of the incurrence of the DIP Obligations and the granting of the DIP Liens, the use of Cash Collateral, the imposition of the automatic stay imposed under section 362 of the Bankruptcy Code (the "Automatic Stay"), and to compensate the Prepetition Secured Parties for any diminution in the value of the interests of the Prepetition Secured Parties in the Prepetition Collateral (as defined below), as more fully set forth in this Interim Order;

(g)      upon entry of a Final Order, authorization for the Debtor to borrow under the DIP Facility and immediately repay the $4.955 million in Prepetition Collateral Agent Advances (as defined in the Motion) plus all fees, expenses, and accrued and unpaid interest (including default interest) thereon;

(h)      upon entry of a Final Order, the waiver of (i) any right to surcharge the Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code and (ii) any rights under the "equities of the case" exception in section 552 of the Bankruptcy Code;

(i)      modification of the Automatic Stay to the extent set forth herein and in the DIP Documents, and the waiver of any applicable stay (including under Bankruptcy Rules 4001 or 6004) and provision for immediate effectiveness of this Interim Order; and

(j)    the scheduling by the Court of a final hearing (the "Final Hearing") on the Motion to consider entry of a Final Order authorizing the Debtors to access the full amount of the DIP Facility and use Cash Collateral on a final basis and approving the form of notice procedures with respect thereto.

This Court having held a hearing on February 1, 2018 (the "Interim Hearing") to consider the Motion and the relief requested therein; and the Final Hearing on the Motion having been scheduled for February 28], 2018; and after considering all of the pleadings filed with this Court; and after consideration of the evidence presented on the record at the Interim Hearing including without limitation, the admission into evidence of the *Declaration of James S. Feltman, Chief Restructuring Officer of Patriot National, Inc., in Support of First Day Relief* [D.I. 4]; and the Court having found that, under the circumstances, due and sufficient notice of the Motion and the Interim Hearing was provided by the Debtors in accordance with Bankruptcy Rules 2002 and 4001(b)(1), and the Local Rules; and it appearing that approval of the relief requested in the Motion is fair and reasonable and in the best interests of the Debtors' estates, their creditors, and all parties-in-interest, and is a sound and prudent exercise of the Debtors' business judgment; and the Court having determined that the relief requested in the Motion is necessary to avoid immediate and irreparable harm; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**BASED ON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]**

A.    **Petition Date**.    On January 30, 2018 (the "Petition Date"), the Debtors commenced their bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  No trustee, examiner or creditors' committee has been appointed in these Chapter 11 Cases.  The Debtors are operating their respective businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.    **Jurisdiction; Venue**.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference of the United States District Court for the District of Delaware* dated as February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    **Notice**.  Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided to: (i) the U.S. Trustee; (ii) counsel for Cerberus Business Finance, LLC, as the DIP Agent and the Prepetition Agent; (iii) all other parties holding secured claims against the Debtors; (iv) those parties listed on the list of creditors holding the twenty (20) largest

---

4.  Findings of fact shall be construed as conclusions of law, and conclusions of law be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

unsecured claims against the Debtors (on a consolidated basis), as identified in their chapter 11 petitions; (v) the Securities and Exchange Commission; (vi) the United States Attorney's Office for the District of Delaware; (vii) the Internal Revenue Service; and (viii) all the parties that have requested notice in this proceeding pursuant to Bankruptcy Rule 2002. Under the circumstances, such notice of the Motion, the relief requested therein and the Interim Hearing complies with Bankruptcy Rules 2002 and 4001(b) and (c) and the Local Rules.

D.    **Stipulations with Respect to Prepetition Secured Obligations**. Subject to the reservation set forth in Paragraph 15 of this Interim Order, the Debtors hereby admit, acknowledge, agree and stipulate as follows:

(i)    As of the Petition Date, the Debtors were truly and justly indebted to the Prepetition Secured Parties under the Prepetition Loan Documents, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $213.8 million in respect of loans and other extensions of credit made, together with all accrued and unpaid interest (including default interest) with respect thereto, and any additional fees, costs, expenses, indemnities, and other obligations incurred in connection therewith (including any applicable premium, payment-in-kind obligations and any attorneys', financial advisors' and other professionals' fees and expenses that are chargeable or reimbursable under the Prepetition Loan Documents) now or hereafter due under the Prepetition Loan Documents. All obligations of the Debtors arising under the Prepetition Loan Documents (including, without limitation, the "Obligations" as defined in the Prepetition Loan Agreement) shall collectively be referred to herein as the "Prepetition Secured Obligations."

(ii)    Pursuant to the Prepetition Loan Documents, the Debtors granted to the Prepetition Agent for the benefit of themselves and the Prepetition Secured Lenders a first priority valid, perfected and enforceable security interest (subject only to the Permitted Liens (as defined in the Prepetition Loan Documents)) (the "Prepetition Liens") in substantially all of the Debtors' personal property and Fixtures, both tangible and intangible, including, without limitation, Accounts, Chattel Paper, Commercial Tort Claims Deposit Accounts (other than Excluded Accounts), Documents, General Intangibles, Goods, Instruments, Investment Property, Intellectual Property, Letter-of-Credit Rights, Pledged Interests, Supporting Obligations, and Additional Collateral (each as defined in the Prepetition Loan Documents) and the proceeds and recoveries of the foregoing, all as

specifically set forth in the Prepetition Loan Documents (the "Prepetition Collateral").

(iii)     (1) The Prepetition Secured Obligations constitute legal, valid and binding obligations of the Debtors; (2) no offsets, rights of recoupment, defenses or counterclaims to the Prepetition Secured Obligations exist; (3) no portion of the Prepetition Secured Obligations is subject to challenge or defense, avoidance, recharacterization, disallowance, reduction or subordination (whether equitable, contractual or otherwise), claims, counterclaims, cross-claims, offsets, defenses or any other challenges pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity; (4) the Prepetition Loan Documents are valid and enforceable by the Prepetition Agent for the benefit of the Prepetition Secured Parties against the Debtors in accordance with their terms (subject only to the Automatic Stay); (5) the liens and security interests of the Prepetition Agent and the other Prepetition Secured Parties constitute valid, binding, enforceable and perfected liens in and to the Prepetition Collateral, having the priority set forth in the Prepetition Loan Documents and subject only to certain liens, if any, permitted under the Prepetition Loan Documents and as otherwise set forth in this Interim Order and are not subject to avoidance, reduction, disallowance, disgorgement, counterclaim, surcharge or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (6) the Prepetition Secured Obligations constitute allowed claims against the Debtors' estates and are secured claims to the extent of the value of the Prepetition Secured Parties' Liens in the Prepetition Collateral; and (7) no claim of or cause of action in favor of the Debtors or the Debtors estates exists against the Prepetition Secured Parties (or any of them or their agents, each solely in such capacity), whether arising under applicable state or federal law (including, without limitation, any "lender liability" causes of action or recharacterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510 or 542 through 553 of the Bankruptcy Code), or whether arising under or in connection with any of the Prepetition Loan Documents (or the transactions contemplated thereunder), Prepetition Secured Obligations or Prepetition Liens, including without limitation, any right to assert any claim for disgorgement or recovery.

E.     **Stipulations with Respect to Subordination Agreement.**

(i)     The Prepetition Agent and the Debtors are party to that certain Intercompany Subordination Agreement, dated as of November 9, 2016 (as amended, restated, supplemented or otherwise modified from time to time and in effect on the date hereof, the "Prepetition Subordination Agreement"), which sets forth subordination and other provisions governing the rights of the parties thereto.

F.   **Stipulations with Respect to the Approved Budget**.

    (i)   Attached hereto as **Exhibit "B"** is a 13-week cash-flow budget setting forth all projected cash receipts and cash disbursements (by line item) on a weekly basis (the "Initial Budget"). The Initial Budget shall be updated from time to time in accordance with Section 7.01(a)(ii) of the DIP Agreement (any such budget provided to the DIP Agent, an "Updated Budget"). The Initial Budget shall be the "Approved Budget" for all purposes under this Interim Order until such time as the DIP Agent and the Required Lenders approve, in their sole discretion, any Updated Budget as the Approved Budget. The Debtors shall provide a copy of any Updated Budget that becomes the Approved Budget to the Prepetition Agent and counsel for any official committee (if appointed).

    (ii)   The Debtors shall furnish to the DIP Agent the Compliance Certificate in accordance with Section 7.01(a)(iv) of the DIP Agreement and the Budget Variance Reports in accordance with Section 7.01(a)(iii) of the DIP Agreement.

    (iii)   Compliance with the Approved Budget (i.e., a determination of whether a Material Adverse Deviation has occurred) shall be tested in accordance with the DIP Agreement. The Debtors hereby confirm, acknowledge, and agree that, unless waived in writing by the DIP Agent (at the direction of the Required Lenders), (x) the occurrence of a Material Adverse Deviation shall constitute an Event of Default, and (y) the failure to timely deliver any Compliance Certificate or Budget Variance Reports shall constitute an Event of Default, in accordance with the DIP Agreement.

    (iv)   The Approved Budget is an integral part of this Interim Order and has been relied upon by the DIP Parties and the Prepetition Secured Parties in consenting to this Interim Order, providing the DIP Facility, and consenting to the use of Cash Collateral. The Debtors represent that the Approved Budget (a) includes and contains the Debtors' best estimates of receipts and all anticipated disbursements, fees, costs and other expenses that will be payable during the period covered by the Approved Budget, and (b) based on the Debtors' projections, is achievable and will allow the Debtors to continue to operate and pay certain postpetition obligations during the period covered by the Approved Budget.

    (v)   The consent of the DIP Agent to any Approved Budget shall not be construed as a commitment of the DIP Lenders to provide DIP Loans or of the DIP Parties or the Prepetition Secured Parties to permit the use of Cash Collateral after the occurrence of the Termination Date (as defined below).

    (vi)   The DIP Agent and Prepetition Agent (a) may assume the Debtors will comply with the Approved Budget, (b) shall have no duty to monitor such compliance, and (c) shall not be obligated to pay (directly or indirectly

from the Collateral (as defined below)) any unpaid expenses incurred or authorized to be incurred pursuant to any Approved Budget. All advances and extensions of credit shall be based upon the terms and conditions of the DIP Documents, as the same may be adjusted from time to time with the consent of the DIP Parties. Subject to the terms and conditions of this Interim Order, the DIP Lenders shall have the right, but not the obligation, to extend credit independent of any Approved Budget line item restrictions on loan availability set forth in the DIP Documents, and all such DIP Loans shall be entitled to the benefits and protections of this Interim Order.

G.  **Immediate Need for Funding**.  Based upon the pleadings and proceedings of record in the Chapter 11 Cases, and given the Debtors' current financial condition, financing arrangements, and capital structure, the Debtors have an immediate need to obtain the DIP Facility and to use Cash Collateral to permit the Debtors to, among other things, continue the orderly operation of their businesses, maximize and preserve their going concern value pending the consummation of a chapter 11 plan, make payroll and satisfy other working capital and general corporate purposes, and pay other costs, fees and expenses associated with administration of the Chapter 11 Cases. In the absence of the authority of this Court to borrow under the DIP Agreement and use Cash Collateral, the Debtors' estates would suffer immediate and irreparable harm.

H.  **No Credit on More Favorable Terms**.  Based upon the pleadings and proceedings of record in the Chapter 11 Cases, the Debtors are unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facility and are unable to obtain adequate unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code. The Debtors also are unable to obtain unsecured credit with administrative priority under section 364(c)(1) or 364(d) of the Bankruptcy Code. The Debtors are unable to obtain the DIP Facility and the Prepetition Secured Parties' consent to use of Cash Collateral without granting the DIP Liens, the Adequate Protection Liens, the DIP Superpriority

Claims and the Adequate Protection Superpriority Claims (each as defined below).   After considering all alternatives, the Debtors have concluded, in the exercise of their sound business judgment, that the DIP Facility, represents the best financing available to the Debtors at this time.

I.      **Reasonable; Good Faith**.  Based upon the pleadings and proceedings of record in the Chapter 11 Cases, the terms of the DIP Documents and the use of Cash Collateral described in this Interim Order, including, without limitation, the interest rates and fees payable pursuant to the DIP Documents, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with the Debtors' fiduciary duties, and are supported by reasonably equivalent value and fair consideration.  The terms concerning the borrowing under the DIP Facility and use of Cash Collateral as provided for in this Interim Order were negotiated in good faith and at arms' length between the Debtors and the DIP Parties, and have been consented to by the Prepetition Secured Parties.  Any DIP Loans and other financial accommodations made by the DIP Parties pursuant to the DIP Documents and this Interim Order, and the DIP Parties' and Prepetition Secured Parties' consent to the use of Cash Collateral under the terms of this Interim Order, shall be deemed to have been made in "good faith" as that term is used in section 364(e) of the Bankruptcy Code, and the DIP Parties and the Prepetition Secured Parties are entitled to the benefits attendant to such finding in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

J.      **Consent to Use of Cash Collateral**.  The DIP Parties and the Prepetition Secured Parties have consented to the Debtors' proposed use of Cash Collateral on the terms and conditions set forth in this Interim Order, and such consent is binding on all the DIP Parties and the Prepetition Secured Parties.  The consent of the Prepetition Secured Parties to the Debtors'

use of Cash Collateral is expressly limited to the postpetition financing being provided by the DIP Lenders and the use of Cash Collateral (as contemplated by this Interim Order, the DIP Documents, and the Approved Budget) and the provision of adequate protection herein, and shall not extend to any other postpetition financing.

K.    **Liens and Superpriority Claims**.  The liens and claims provided to the Prepetition Secured Parties and the DIP Parties for the incurrence of the DIP Obligations, the use of Cash Collateral, the use of other Collateral (as defined below), and any diminution in the value of the Prepetition Secured Parties' interests in the Prepetition Collateral from and after the Petition Date, including, without limitation, from the incurrence of the DIP Obligations and the granting of the DIP Liens, the Carve-Out (as defined below), the use of Cash Collateral and implementation of the Automatic Stay, pursuant to the provisions of this Interim Order, is consistent with and authorized by the Bankruptcy Code and is offered by the Debtors to protect such parties' interests in the Collateral in accordance with sections 361, 362, 363, 364, and 507 of the Bankruptcy Code.  The liens and claims provided herein and the other benefits and privileges contained herein are necessary in order to, among other things, obtain the DIP Facility and the foregoing consents and agreements, and protect the Prepetition Secured Parties from any diminution in the value of their interests in the Prepetition Collateral.

L.    **Good Cause Shown; Best Interest**.  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and the Local Rules.  Absent the financing under the DIP Facility, the use of Cash Collateral, and the entry of this Interim Order, the Debtors' estates will be immediately and irreparably harmed.  This Court concludes that good cause has been shown and that entry of this Interim Order is in the best interest of the Debtors' estates, creditors, and all other parties in interest.

M.    **No Deemed Control**.  Subject to the reservation set forth in Paragraph 15 of this Interim Order, the Debtors stipulate that none of the DIP Parties or the Prepetition Secured Parties is or shall be deemed to be in control of the Debtors' estates or be acting as a "responsible person" or "owner or operator" under any applicable law, including without limitation, any environmental law, with respect to the operation or management of the Debtors or any prepetition or postpetition activities of the Debtors solely by virtue of providing the DIP Facility, administering the DIP Loans, making the decision to collect the indebtedness and obligations owing thereunder, permitting the Debtors to use Cash Collateral, rejecting any proposed budget, accepting any Approved Budget, or taking any other actions expressly permitted or contemplated by this Interim Order.

N.    **Section 552**.  Each of the Prepetition Secured Parties is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, upon the entry of the Final Order, the "equities of the case" exception shall not apply.

Based on the foregoing, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    **Approval of Interim Order**.  The Motion is approved on an interim basis on the terms and conditions set forth in this Interim Order.  All objections to the entry of this Interim Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled on the merits.  This Interim Order shall become effective immediately upon its entry.

2.    **Authorization for DIP Financing**.   The Debtors are authorized to execute and deliver the DIP Documents, and to take such actions as may be necessary or

appropriate to cause the Debtors to perform any and all obligations thereunder. During the Interim Period, in accordance with and pursuant to the terms and provisions of this Interim Order, the Debtors are immediately authorized to incur DIP Obligations in the aggregate principal amount of up to a maximum of $5,000,000 (the "<u>Initial Availability</u>") in accordance with and subject to the terms of this Interim Order, the Approved Budget, and the DIP Documents. Notwithstanding the foregoing, the DIP Lenders shall have no obligation to make any loan or advance under the DIP Documents unless all of the conditions precedent to the making of such extension of credit under the DIP Documents and this Interim Order have been satisfied in full or waived in accordance with the DIP Documents.

3.    **Valid and Binding Obligations**.    All obligations under the DIP Documents and this Interim Order shall constitute valid and binding obligations of the Debtors' estates, enforceable against the Debtors' estates and each of their representatives, successors and assigns (including, without limitation, any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estates of the Debtors or any other fiduciary appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors), in accordance with their terms and the terms of this Interim Order, and no obligation, payment, transfer, or grant of a lien or security interest under the DIP Documents or this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code) or subject to any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity. Subject to Paragraph 15 of this Interim Order, the terms and provisions of this Interim Order shall also be

binding on all of the Debtors' creditors, equity holders, statutory committees, trustees, and all other parties-in-interest.

      4.    **Authorization for Payment of DIP Financing Fees and Expenses**.  All fees paid and payable, and all reasonable costs and expenses reimbursed or reimbursable (including, without limitation, all fees, costs and expenses referred to in the DIP Documents and the DIP Parties' reasonable attorneys' fees and expenses) as set forth in the DIP Documents are hereby approved.  The Debtors are hereby authorized and directed to pay all such fees, costs, and expenses in accordance with the terms of the DIP Documents and this Interim Order, without any requirement that the Debtors, the DIP Parties or the DIP Parties' attorneys file any further application or other pleading, notice, or document with the Court for approval or payment of such fees, costs or expenses.  The Debtors shall pay all reasonable out of pocket costs and expenses of the DIP Parties (in their capacity as such) (including all reasonable fees, expenses and disbursements of counsel, including, without limitation, the professional fees and expenses of Schulte Roth & Zabel LLP, Landis Rath & Cobb LLP, and a financial advisor engaged by the DIP Parties) in connection with the Chapter 11 Cases, including, without limitation, in connection with (a) the preparation, negotiation, execution and delivery of the DIP Documents, this Interim Order, and any Final Order, and the funding of all DIP Loans under the DIP Facility (whether incurred prior to, on, or after the Petition Date), (b) the administration of the DIP Facility and any amendment or waiver of any provision of the DIP Documents, this Interim Order, and any Final Order, and (c) the enforcement or protection of the DIP Parties' rights and remedies under the DIP Documents, this Interim Order, and any Final Order.  Notwithstanding anything to the contrary herein, the fees, costs and expenses of the DIP Parties payable under the DIP Documents, including, without limitation, all fees referred to in the DIP Documents and all

reasonable attorneys' fees and expenses payable thereunder, shall (i) be deemed fully earned, non-refundable, and irrevocable as of the date of this Interim Order, (ii) not be subject to the Approved Budget, underlined provided that the payment of such fees, costs and expenses shall not be included for the purpose of calculating a Material Adverse Deviation, (iii) be secured by the Collateral, and (iv) be afforded all of the priorities and protections afforded to the DIP Obligations under this Interim Order and the DIP Documents.  The DIP Agent and the DIP Lenders shall receive payments in cash from the Debtors on a current basis of all fees, costs and expenses of and payable to the DIP Agent and the DIP Lenders under the DIP Documents, including but not limited to, the reasonable fees and disbursements of counsel, financial and other third party advisors, appraisers and consultants for the DIP Agent and the DIP Lenders, within ten (10) business days (if no written objection is received within ten (10) business days) after such professional has delivered an invoice to the Debtors (subject in all respects to applicable privilege or work product doctrines) and without the necessity of filing motions or fee applications.  Copies of all such invoices to the Debtors shall also be sent simultaneously to the U.S. Trustee and counsel for any official committee (if appointed).  If an objection to a professional's invoice is received within ten (10) business days from a party-in-interest after such professional's invoice has been delivered to the Debtors, the U.S. Trustee, and counsel for any official committee (if appointed), the Debtors shall only be required to pay the undisputed amount of the invoice and the Court shall have jurisdiction, upon a motion filed by the Debtors or such professional, to resolve all objections with respect to the disputed portion of such invoice.

     5.    **Payment of Prepetition Collateral Agent Advances**.  Upon entry of a Final Order, and subject to the rights of the parties set forth in Paragraph 15, the Debtors are

authorized to use the proceeds of the DIP Collateral and advances under the DIP Agreement to repay the $4.955 million in Prepetition Collateral Agent Advances plus all fees, expenses, and accrued and unpaid interest (including default interest) thereon.

6.    **Budget**.  (i) The Approved Budget annexed hereto as **Exhibit "B"** (as updated from time to time in accordance with the terms of the DIP Documents and this Interim Order) is hereby approved.  Proceeds of the DIP Facility and Cash Collateral under this Interim Order shall be used by the Debtors only in accordance with the Approved Budget, the DIP Documents and this Interim Order as provided herein and therein.  The DIP Parties and the Prepetition Secured Parties are relying upon the Debtors' compliance with the Approved Budget in determining to provide the DIP Facility and consent to the use of Cash Collateral.  If the Debtors have any reason to believe that a Material Adverse Deviation has occurred or will occur, the Debtors shall promptly notify the DIP Agent and the Prepetition Agent.  The DIP Agent shall be permitted to approve any Updated Budget as the Approved Budget without further order of this Court.

(ii)    For the avoidance of doubt, no Retained Professionals shall be entitled to any compensation, reimbursement, or payment from proceeds of Collateral in excess of the amounts set forth for such Retained Professional in the Approved Budget.

7.    **Reporting**.  The Debtors shall timely provide all reports and notices as set forth herein, the Prepetition Loan Documents and the DIP Documents, including, without limitation, the Compliance Certificates (as defined in the DIP Agreement) and Budget Variance Reports to the DIP Agent and the Prepetition Agent.

8. **Payment Provisions**.  The Debtors shall comply, without further order of this Court, with all of the provisions of the DIP Documents regarding the timing and application of all payments and prepayments (including any mandatory prepayment).

9. **Authorization to Use Cash Collateral**.  During the Interim Period, in accordance with and pursuant to the terms and provisions of this Interim Order, the Debtors are authorized to use Cash Collateral for such purposes as may be contemplated hereunder and by the Approved Budget, provided that any such use of Cash Collateral is in accordance with the terms of the Approved Budget and this Interim Order.

10. **Deposit Accounts**.  All cash receipts, Cash Collateral and all proceeds from the sale, transfer or other disposition of the Collateral (as defined below) and all other proceeds of such Collateral of any kind which is now or shall come into the possession or control of the Debtors, or to which the Debtors are now or shall become entitled, shall be promptly deposited into bank accounts under the control of the Debtors and identified to the Prepetition Agent and DIP Agent in writing (the "Deposit Accounts").  The Prepetition Agent and DIP Agent shall have perfected, valid and enforceable security interests in such Deposit Accounts, including (subject to the entry of a Final Order) any proceeds of actions the Debtors and/or any estate representative may bring under Sections 542, 544, 545, 547, 548, 549, 550, 551, 553(b) or 724(a) of the Bankruptcy Code or under similar laws of any other jurisdiction ("Avoidance Actions"), and such collections and proceeds shall be subject to, and shall be treated in accordance with, this Interim Order.  For the avoidance of doubt, the Deposit Accounts in existence prior to the Petition Date have been identified to the Prepetition Agent and DIP Agent and shall remain in place, subject to any cash management orders consented to by the DIP Agent and Prepetition Agent and entered by this Court.

11.    **Perfection in Cash**.  The DIP Lenders' and Prepetition Secured Parties' security interests and liens in Cash Collateral shall, pursuant to this Interim Order, be, and hereby are, valid, enforceable, and perfected, effective as of the date of the entry of this Interim Order, and (notwithstanding any provisions of any agreement, instrument, document, the Uniform Commercial Code or any other relevant law or regulation of any jurisdiction) no further notice, filing or other act shall be required to effect such perfection.

12.    **DIP Liens and DIP Superpriority Claims**.  Until the indefeasible repayment in full in cash of the DIP Obligations, the DIP Parties are hereby granted the following:

a.    DIP Liens.  To secure the DIP Loan Obligations, the DIP Agent, on behalf and for the benefit of itself and the DIP Lenders, is hereby granted valid, enforceable, unavoidable and fully perfected (i) first priority liens and security interests pursuant to section 364(c)(2) of the Bankruptcy Code, (ii) junior priority liens and security interests pursuant to section 364(c)(3) of the Bankruptcy Code to the extent of certain liens, if any, permitted under the DIP Documents, and (iii) first priority priming liens and security interests pursuant to section 364(d)(1) on all Prepetition Collateral ((i), (ii) and (iii) being, collectively, the "DIP Liens"), in all prepetition and postpetition property, assets or interests in property or assets of the Debtors' estates of any kind or nature whatsoever, real or personal, tangible or intangible or mixed, now existing or hereafter acquired or created, including, without limitation, all "property of the estate" (within the meaning of section 541 of the Bankruptcy Code) of the Debtors, including any and all (x) accounts, inventory, goods, general intangibles, Patents, Trademarks, Copyrights, intangibles, payment intangibles, letters of credit, letter-of-credit rights, securities, money, securities accounts, supporting obligations, machinery and equipment, real property, fixtures, leases, all of the Equity Interests of each Subsidiary of the Debtors, all of the Equity Interests of all other Persons directly owned by the Debtors, money, investment property, deposit accounts, and all commercial tort claims, (y) to the extent such grant is not contrary to any applicable law, does not require the consent of any Person party thereto, or will not result in a default thereunder, contract rights, instruments, documents, documents of title, chattel paper, and licenses (provided that notwithstanding the foregoing, such grant shall be effective to the extent any such legal prohibition or term has been waived or would be rendered ineffective pursuant to Section 9-406, 9-408 or 9-409 of the Uniform

*subject to entry of the Final Order,*

Commercial Code or other applicable law, and provided further that the DIP Liens and DIP Collateral shall in all cases include the proceeds thereof), and (z) all causes of action arising under the Bankruptcy Code or otherwise (including, without limitation, all proceeds of Avoidance Actions), and all cash and non-cash proceeds, rents, products and profits of any or all of the collateral described above (all such property of the Debtors' estates subject to the security interest referred hereto being hereafter collectively referred to as the "DIP Collateral," and together with the Prepetition Collateral, the "Collateral"). The term "Collateral" shall be subject to the exclusions set forth in Section 3.01(a) of the DIP Agreement. The DIP Liens shall be deemed to be legal, valid, binding, enforceable, perfected liens, not subject to subordination or avoidance, for all purposes in the Chapter 11 Cases. The DIP Liens shall be effective immediately upon the entry of this Interim Order and shall not at any time be made subject or subordinated to, or made *pari passu* with, any other lien, security interest or claim existing as of the Petition Date or created thereafter, including under sections 363 or 364(d) of the Bankruptcy Code or otherwise, other than certain liens, if any, permitted under the DIP Documents and the Carve-Out (as defined below). The DIP Liens shall be deemed to be perfected automatically in accordance with Paragraph 32 of this Interim Order.

b.    DIP Superpriority Claims. The DIP Agent, on behalf and for the benefit of itself and the DIP Lenders, is hereby granted allowed superpriority administrative expense claims (the "DIP Superpriority Claims") under section 364(c)(1) of the Bankruptcy Code against the Debtors' estates for all DIP Obligations, which DIP Superpriority Claims shall have priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to the entry of the Final Order), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114, or otherwise, provided, however, that the DIP Superpriority Claims shall be subject to and subordinate to, but exclusively to, the Carve-Out.

13.    **Adequate Protection for the Prepetition Secured Parties**.    In

consideration for the use of the Prepetition Collateral (including Cash Collateral) and the priming

of the Prepetition Liens by the DIP Liens, among other things, the Prepetition Secured Parties are

entitled to adequate protection against any diminution in the value of their interests in the

Prepetition Collateral as a result of (a) the Debtors' use of Cash Collateral; (b) the imposition of

the Automatic Stay; (c) the granting of the DIP Superpriority Claims and the DIP Liens and the

subordination of their Prepetition Liens thereto and to the Carve-Out; or (d) otherwise, pursuant to sections 361(a), 363(c) and 363(e) of the Bankruptcy Code until the indefeasible repayment in full in cash of the Prepetition Secured Obligations. The Prepetition Agent, on behalf and for the benefit of the Prepetition Secured Parties, is hereby granted, to the extent of the diminution in value of the Prepetition Collateral from and after the Petition Date as provided above, all of the following (collectively, the "Adequate Protection Obligations"):

a.  Adequate Protection Liens. The Prepetition Agent, on behalf and for the benefit of itself and the Prepetition Secured Parties, is hereby granted valid, enforceable, unavoidable and fully perfected replacement liens and security interests (the "Adequate Protection Liens") in all Collateral, including Cash Collateral. The Adequate Protection Liens shall be supplemental to and in addition to the Prepetition Liens. The Adequate Protection Liens shall be deemed to be legal, valid, binding, enforceable, perfected liens, not subject to subordination or avoidance, for all purposes in the Chapter 11 Cases. The Adequate Protection Liens shall not be subordinated or be made *pari passu* with any other lien under sections 363 and 364 of the Bankruptcy Code or otherwise, provided, however, that the Adequate Protection Liens shall remain subject to and subordinate to, but exclusively to, subject only to certain liens, if any, permitted under the DIP Documents and the Prepetition Loan Documents, the Carve-Out and the DIP Liens, and subject further to the terms of this Interim Order. The Adequate Protection Liens shall be deemed to be perfected automatically in accordance with Paragraph 32 of this Interim Order.

b.  Adequate Protection Superpriority Claims. The Prepetition Agent, on behalf and for the benefit of itself and the Prepetition Secured Lenders, is hereby granted superpriority administrative expense claims (the "Adequate Protection Superpriority Claims") under sections 503 and 507 of the Bankruptcy Code against the Debtors' estates to the extent that the Adequate Protection Liens do not adequately protect against the diminution in value of the Prepetition Collateral, which Adequate Protection Superpriority Claims, if any, shall have priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to the entry of the Final Order), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114, or otherwise, provided, however, that the Adequate Protection Superpriority Claims shall remain subject to and junior to, but exclusively to, the Carve-Out and the DIP Superpriority Claims.

c.    <u>Fees and Expenses</u>. The Debtors are authorized and directed to pay, as adequate protection to the Prepetition Agent, all accrued and unpaid fees and disbursements owing to the Prepetition Agent under the Prepetition Loan Documents, whether accrued prior to or following the Petition Date, as and when such fees and disbursements become due and payable (but for the commencement of the Chapter 11 Cases) in accordance therewith. As additional adequate protection, the Debtors shall also pay to the Prepetition Agent all reasonable and documented fees and out-of-pocket expenses of its professionals in accordance with the terms of the Prepetition Loan Documents, <u>provided</u> that the payment of such fees and expenses shall not be included for the purpose of calculating a Material Adverse Deviation. The Prepetition Agent shall receive payments in cash from the Debtors on a current basis of all fees, costs and expenses of and payable to the Prepetition Agent under the Prepetition Loan Documents, including but not limited to, the reasonable and documented fees and out-of-pocket expenses of counsel, financial and other third party advisors, appraisers and consultants for the Prepetition Agent, within ten (10) business days (if no written objection is received within ten (10) business days) after such professional has delivered an invoice to the Debtors (subject in all respects to applicable privilege or work product doctrines) and without the necessity of filing motions or fee applications. Copies of all such invoices to the Debtors shall also be sent simultaneously to the U.S. Trustee and counsel for any official committee (if appointed). If an objection to a professional's invoice is received within ten (10) business days from a party-in-interest after such professional's invoice has been delivered to the Debtors, the U.S. Trustee, and counsel for any official committee (if appointed), the Debtors shall only be required to pay the undisputed amount of the invoice and the Court shall have jurisdiction, upon a motion filed by the Debtors or such professional, to resolve all objections with respect to the disputed portion of such invoice.

14.    **Right to Seek Additional Adequate Protection**. This Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of any of the Prepetition Secured Parties to seek additional forms of adequate protection or additional or further restrictions on the Debtors' use of Cash Collateral at any time, provided, however, that any such additional adequate protection, as applicable, shall be subject to the same relative priority as such party's Adequate Protection Liens and Adequate Protection Superpriority Claims as provided in this Interim Order.

DOC ID - 26859928.17

DOCS_DE:217681.1 69353/002

15.     **Reservation of Certain Third Party Rights and Bar of Challenges and Claims**.  The Debtors' stipulations, admissions, and releases set forth in Paragraph D of this Interim Order shall be binding upon the Debtors upon entry of this Interim Order.  Any party-in-interest with standing (other than the Debtors) shall have until the earliest of (i) sixty (60) calendar days from the date of ~~the~~ its formation, and (y) with respect to all parties in interest ~~of an official creditors' committee or~~ seventy-five (75) calendar days from the date of the entry of this Interim Order ~~if no official creditors' committee is appointed~~; (ii) the date of the commencement of a hearing to consider the entry of an order authorizing procedures for the sale of all or substantially all of the assets of the Debtors; and (iii) the date of the commencement of a hearing to consider confirmation of a chapter 11 plan in these Chapter 11 Cases (each, a "Challenge Period," and the last day of any such Challenge Period, the "Challenge Termination Date"), to commence an appropriate contested matter or adversary proceeding asserting any Challenge (as defined in Paragraph 23 below).  The applicable Challenge Period may only be extended with the written consent of the party against whom such Challenge is to be asserted or by the Court for cause following notice and a hearing.  If a Challenge is not filed on or before the Challenge Termination Date, then: (a) the agreements, acknowledgements and stipulations contained in Paragraph D of this Interim Order shall be irrevocably binding on the Debtors' estates and all parties-in-interest and any and all successors-in-interest as to any of the foregoing (including, without limitation, any official committee or trustee) without further action by any party or this Court, and any other party-in-interest and any and all successors-in-interest as to any of the foregoing shall thereafter be forever barred from bringing any Challenge; (b) the Prepetition Liens shall be deemed to constitute valid, binding, enforceable and perfected liens and security interests not subject to avoidance or disallowance pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (c) the Prepetition Secured

*[handwritten marginal note:] (x) with respect to any official creditors committee*

DOC ID - 26859928.17

DOCS_DE:217681.1 69353/002

Obligations shall be deemed to be, as of the Petition Date, finally allowed claims, secured to the extent of the value of the Prepetition Secured Parties' Liens in the Prepetition Collateral, for all purposes against the Debtors, and shall not be subject to challenge by any party-in-interest as to amount, validity, priority or otherwise; and (d) the Debtors and the Debtors' estates shall be deemed to have released, waived and discharged the Prepetition Secured Parties, together with each of their respective affiliates, parents, subsidiaries, partners, controlling persons, agents, attorneys, advisors, professionals, officers, directors and employees, each in such capacity, from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, the Prepetition Secured Obligations, the Prepetition Loan Documents, or any action or failure to act by any Prepetition Secured Party in connection  therewith.  Notwithstanding anything to the contrary herein: (1) if any Challenge is timely commenced, the stipulations, admissions, and releases contained in Paragraph D of this Interim Order shall nonetheless remain binding and preclusive on all parties-in-interest (other than the party that has timely brought (and only to the extent asserted) a Challenge in connection therewith) except to the extent that such stipulations are successfully challenged in such Challenge; (2) if a chapter 7 or chapter 11 trustee is appointed prior to the expiration of the Challenge Period, such trustee shall have until the later of the expiration of the Challenge Period or ten (10) business days from the date of such trustee's appointment to file any Challenge; (3) to the extent any Challenge was timely commenced by an official creditors' committee prior to the chapter 7 trustee's appointment, the chapter 7 trustee shall succeed to the committee with respect to any such Challenge; (4) the Prepetition Secured Parties and the DIP Parties reserve all of their rights to contest on any grounds any Challenge; and (5) the Prepetition Secured Parties and the DIP Parties shall comply with any and all orders of the Bankruptcy Court in connection with a successful Challenge; provided, however, that the

Prepetition Secured Parties and the DIP Parties preserve any and all of their rights to appeal and seek a stay of any orders of the Bankruptcy Court issued in connection with such successful Challenge. For the avoidance of doubt, nothing in this Interim Order vests or confers on any "person" (as defined in the Bankruptcy Code) standing or authority to bring, pursue or settle any cause of action belonging to the Debtors or their estates.

16. **Carve-Out**.

a. Carve-Out. Subject to the terms and conditions contained in this Paragraph 16, each of the DIP Liens, the DIP Superpriority Claims, the Prepetition Liens, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims shall be subject and subordinate to the "**Carve-Out**" which shall be limited to: (i) all unpaid fees required to be paid in these Chapter 11 Cases to the clerk of the Bankruptcy Court and to the Office of the U.S. Trustee under 28 U.S.C. § 1930(a)(6); (ii) all reasonable fees and expenses incurred by a chapter 7 trustee under section 726(b) of the Bankruptcy Code not to exceed $50,000; (iii) subject to the Approved Budget and the terms and conditions of this Interim Order, all unpaid fees, costs, and disbursements (exclusive of any success or similar fee) of professionals retained by the Debtors pursuant to section 327, 328, 330, 331, or 363 of the Bankruptcy Code or any official committee of unsecured creditors pursuant to section 1103 of the Bankruptcy Code (collectively, the "**Retained Professionals**") that are incurred on and prior to the business day immediately following the date of delivery by the DIP Agent of an Enforcement Notice (as defined below) (a "**Carve-Out Trigger Date**") and that are allowed, whether before or after the applicable Carve-Out Trigger Date, pursuant to an order of the Court under sections 327, 328, 330, 331, 363, or 1103 of the Bankruptcy Code and remain unpaid after application of any prepetition retainers being held by such Retained Professionals; and (iv) subject to the

DOC ID - 26859928.17

DOCS_DE:217681.1 69353/002

Approved Budget and the terms and conditions of this Interim Order, the unpaid fees, costs, and disbursements of the Retained Professionals that are incurred after a Carve-Out Trigger Date and prior to the applicable Event of Default being cured in accordance with the DIP Documents and this Interim Order (such period, the "**Carve-Out Expense Reduction Period**"), and that are allowed at any time by the Court under sections 327, 328, 330, 331, 363, or 1103 of the Bankruptcy Code, in an aggregate amount not to exceed $200,000 (which amount shall be reduced on a dollar-for-dollar basis to the extent of all prepetition retainers held by any Retained Professionals and not applied pursuant to clause (iii) or otherwise); provided, that for the avoidance of doubt, so long as no Carve-Out Expense Reduction Period shall be continuing, the payment of such fees, costs, and disbursements of the Retained Professionals shall not reduce the remaining amount available under clause (iv) (the amount set forth in this clause (iv), plus the amount set forth in clause (iii), the "**Professional Fee Carve-Out Cap**"). The term "**Enforcement Notice**" shall mean a written notice (which may be by electronic mail) of the occurrence and continuance of an Event of Default under the DIP Agreement delivered by the DIP Agent to the Debtors, the Prepetition Agent, counsel to any official committee, and the U.S. Trustee.

b.      No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees. Neither the DIP Parties nor the Prepetition Secured Parties shall be responsible for the direct payment or reimbursement of any fees or disbursements of any of the Retained Professionals incurred in connection with the Chapter 11 Cases or any successor case under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed (i) to obligate the DIP Parties or the Prepetition Secured Parties in any way to pay compensation to, or to reimburse expenses of, any of the Retained Professionals or to guarantee that the

Debtors have sufficient funds to pay such compensation or reimbursement or (ii) to increase the Carve-Out if actual allowed fees and expenses of the Retained Professionals exceed the Professional Fee Carve-Out Cap. Notwithstanding any provision in this Paragraph 16 to the contrary, no portion of the Carve-Out, Cash Collateral, Collateral or proceeds of the DIP Facility shall be utilized for the payment of professional fees and disbursements to the extent restricted under Paragraph 23 hereof.

17. **No Waiver of Prepetition Loan Agreement Provisions; Reservation of Rights**. Except as otherwise specifically provided in this Interim Order, nothing contained in this Interim Order shall be deemed a waiver or constitute a consent to the modification of any provision contained in the Prepetition Loan Documents or the Prepetition Subordination Agreement by the Prepetition Secured Parties, including, but not limited to, the incurrence of any lien in connection therewith or the making of any payment by any Debtor. Further, except as may be expressly provided for in this Interim Order, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the rights of the Prepetition Secured Parties to seek any other or supplemental relief in respect of the Debtors' estates, (b) the rights of the Prepetition Secured Parties under the Prepetition Loan Documents (excluding any rights that the Prepetition Secured Parties may have solely as a result of the commencement of these Chapter 11 Cases and subject to the Automatic Stay), the Prepetition Subordination Agreement (including, without limitation, the turnover provisions contained therein), the Bankruptcy Code or other applicable law, or (c) any rights, claims or privileges (whether legal, equitable or otherwise) of the Prepetition Secured Parties.

18. **Termination**. Notwithstanding anything in this Interim Order to the contrary, (a) the DIP Lenders' commitments and obligations under the DIP Documents,

including the DIP Loans made pursuant to this Interim Order and the DIP Documents, will mature, and together with all interest thereon and any other obligations accruing under the DIP Documents, become due and payable (unless such obligations become due and payable earlier pursuant to the terms of the DIP Documents and this Interim Order by way of acceleration or otherwise), and (b) the Debtors' right to draw on the DIP Facility and use Cash Collateral as herein authorized, shall terminate (a "Termination") on the earliest of: (i) the delivery of an Enforcement Notice upon the occurrence of an Event of Default in accordance with the DIP Documents; (ii) the date which is thirty-five (35) days after the Petition Date if the Court has not entered the Final Order on or prior to such date (or such later date as may be agreed by the Debtors and the DIP Agent); (iii) May 30, 2018; (iv) the date on which the sale, transfer or other disposition of all or substantially all of the Debtors' assets is consummated; (v) the date on which the DIP Obligations have been indefeasibly paid in full in cash; (vi) the date of the substantial consummation (as defined in Section 1101(2) of the Bankruptcy Code) of a plan of reorganization in the Chapter 11 Cases that has been confirmed by an order of the Court; or (viii) as otherwise ordered by the Court (each, a "Termination Date").  Any Termination shall not affect the validity, priority or enforceability of any and all rights, remedies, benefits and protections provided to the DIP Parties or the Prepetition Secured Parties under the DIP Documents and this Interim Order as of the Termination Date, which rights, remedies, benefits and protections shall survive such Termination.

19.     **Remedies and Stay Modification**.

a.      The Automatic Stay, to the extent applicable, is vacated and modified without further application or motion to, or order from, the Court, to the extent necessary to permit the following, and neither section 105 of the Bankruptcy Code nor any other provision of

the Bankruptcy Code or applicable law shall be utilized to prohibit the exercise, enjoyment and enforcement of any of such rights, benefits, privileges and remedies ~~regardless of any change in circumstances (whether or not foreseeable)~~, whether or not an Event of Default (as defined in the DIP Agreement) under the DIP Documents or a default by the Debtors of any of their obligations under this Interim Order has occurred including, without limitation, (i) to require all cash, checks or other collections or proceeds from DIP Collateral received by the Debtors to be deposited in accordance with the requirements of the DIP Documents or written instructions of the DIP Agent, and to apply any amounts so deposited and other amounts paid to or received by the DIP Agent under the DIP Documents in accordance with any requirements of the DIP Documents, (ii) the right to file or record any financing statements, mortgages or other instruments or other documents to evidence the security interests in and liens upon the DIP Collateral, (iii) the right to charge and collect any interest, fees, costs and other expenses accruing at any time under the DIP Documents as provided therein, and (iv) the right to give the Debtors any notice provided for in any of the DIP Documents or this Interim Order.

b.    Subject to Paragraph 19(d) below, the Automatic Stay is vacated and modified without the need for further Court order to permit the DIP Agent, upon the occurrence and during the continuance of an Event of Default or a violation of the terms of or a default under this Interim Order, and without any interference from the Debtors or any other party in interest, to (i) (A) cease making DIP Loans and/or suspend or terminate the commitments under the DIP Documents, and (B) declare all DIP Obligations to be immediately due and payable, and (ii) subject to the passage of five (5) days following delivery of an Enforcement Notice (which may be delivered by electronic mail) (the "Remedies Notice Period") to the Debtors, the Prepetition Agent, counsel to any official committee, and the U.S. Trustee, to exercise all rights

and remedies provided for in the DIP Documents, this Interim Order or under other applicable bankruptcy and non-bankruptcy law including, without limitation, the right to (A) take any actions reasonably calculated to preserve or safeguard the DIP Collateral or to prepare the DIP Collateral for sale; (B) foreclose or otherwise enforce the DIP Liens on any or all of the DIP Collateral; (C) set off any amounts held as Cash Collateral (including, without limitation, in any Cash Collateral account held for the benefit of the DIP Lender); and/or (D) exercise any other default-related rights and remedies under the DIP Documents or this Interim Order. The Remedies Notice Period shall run concurrently with any notice period provided for herein and under the DIP Documents.

c.    Notwithstanding anything herein to the contrary, immediately upon the Termination Date or a default by the Debtors of any of their obligations under the DIP Documents or this Interim Order, the DIP Parties may charge interest at the default rate set forth in the DIP Documents without being subject to the Remedies Notice Period.

d.    The Automatic Stay, to the extent applicable, shall be deemed terminated without the necessity of any further action by the Court in the event that the Debtors, any official committee, the U.S. Trustee, and/or party in interest has not obtained an order from this Court to the contrary prior to the expiration of the Remedies Notice Period. The sole issue that may be raised by the Debtors, any official committee, the U.S. Trustee, and/or party-in-interest at any hearing to re-impose or continue the Automatic Stay or to obtain any other injunctive or other relief shall be limited to whether or not an Event of Default has occurred and is continuing under the DIP Documents. In any hearing seeking to re-impose the Automatic Stay, the party seeking such relief shall bear the burden of proof that no Event of Default had occurred or is continuing.

*Subject to the entry of the Final Order,*

DOC ID - 26859928.17

DOCS_DE:217681.1 69353/002

e.    If the DIP Agent is entitled, and has elected in accordance with the provisions hereof, to enforce its liens or security interests or exercise any other default-related remedies following expiration of the Remedies Notice Period, the Debtors shall cooperate with the DIP Agent in connection with such enforcement by, among other things, (i) providing at all reasonable times access to the Debtors' premises to representatives or agents of the DIP Agent (including any collateral liquidator or consultant), (ii) providing the DIP Agent and its representatives or agents, at all reasonable times access to the Debtors' books and records and any information or documents requested by the DIP Agent or its representatives, (iii) performing all other obligations set forth in the DIP Documents, and (iv) taking reasonable steps to safeguard and protect the DIP Collateral, and the Debtors shall not otherwise interfere with or actively encourage others to interfere with the DIP Agent's enforcement of rights.

f.    Upon the occurrence and during the continuance of an Event of Default under the DIP Documents, a violation of the terms of or a default under this Interim Order, or the occurrence of the Termination Date, the DIP Agent may collect and sweep cash as provided herein or as provided in the DIP Documents.

h.    This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this Interim Order and relating to the application, re-imposition or continuance of the Automatic Stay or other injunctive relief requested, subject to the limitations on any such request as set forth in Paragraph 19(d).

i.    Upon the payment in full in cash of all DIP Obligations and termination of the commitments under the DIP Documents, the Prepetition Secured Parties shall be entitled to ~~pursue any rights and remedies against any remaining Collateral existing at such time~~ (on the same basis the DIP Parties are authorized to pursue remedies under this Order) unless the continue any sale or disposition previously commenced by the DIP Parties prior to - 31 - such payment in full

Debtors are then in full compliance with the terms of this Interim Order or the Prepetition Secured Obligations have been indefeasibly paid in cash in full.

20.    **Collateral Rights**.  Without limiting any of the provisions of this Interim Order, until all of the Prepetition Secured Obligations and DIP Obligations have been indefeasibly paid and satisfied in full in cash: (a) no party other than the DIP Agent (or the Prepetition Agent after the payment and indefeasible satisfaction in full in cash of the DIP Obligations) shall foreclose or otherwise seek to enforce any junior lien or claim in any Collateral, and (b) upon and after the occurrence of an Event of Default, and the DIP Agent (or the Prepetition Agent after the payment and indefeasible satisfaction in full in cash of the DIP Obligations) obtaining relief from the Automatic Stay as provided for herein, in connection with a liquidation of any of the Collateral, the Prepetition Agent or the DIP Agent (or any of their employees, agents, consultants, contractors or other professionals), as applicable, shall have the right to: (i) enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by the Debtors, and (ii) use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of the Debtors' estates, which are owned by or subject to a lien of any third party and which were used by the Debtors in their businesses.  The DIP Parties or Prepetition Secured Parties, as applicable, will be responsible for the payment of any applicable fees, rentals, royalties or other amounts due such lessor, licensor or owner of such property for the period of time that the Prepetition Agent or DIP Agent actually uses the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals or other amounts due for any period prior to the date that the Prepetition Agent or DIP Agent actually occupies or uses such assets or properties), which amounts shall be subject to reimbursement by the Debtors' estates and treated as a portion of the

Prepetition Secured Obligations or DIP Obligations (as applicable). The Debtors shall cooperate with any reasonable requests of the Prepetition Agent or DIP Agent to facilitate the sale, transfer, lease or disposition of any Collateral contemplated above, including, but not limited to, prosecuting motions to sell, transfer, lease, or dispose of the Collateral and establish bidding and sale procedures, auction dates, and other sale-related milestones.

21.   **Disposition of Collateral.**   Unless such disposition will result in the indefeasible payment in full in cash of the DIP Facility and the Prepetition Secured Obligations, the Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral in any way inconsistent with the terms and conditions of this Interim Order, the DIP Documents, or the Prepetition Loan Documents without the prior written consent of the Prepetition Agent and the DIP Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Agent, any DIP Lender, the Prepetition Agent or the Prepetition Secured Lenders, as applicable) and an order of this Court. As a condition to the execution and delivery of the DIP Documents, the extension of credit under the DIP Facility, and the authorization to use Cash Collateral, the Debtors agree that as of and commencing on the date of this Interim Order, the Debtors shall apply all proceeds of Collateral in accordance with the DIP Documents, the Approved Budget, and this Interim Order.

22.   **Rights of Access and Information**.   Upon reasonable notice, the Debtors shall permit employees, legal counsel, financial advisors, representatives, agents, and other professionals of the DIP Agent or the Prepetition Agent to have reasonable access to the Debtors' premises, non-privileged books and records, and the Debtors' professionals during normal business hours for purposes of conducting detailed due diligence with respect to the Debtors' administration of the estate, and the Debtors and the Debtors' advisors and

representatives shall reasonably cooperate and consult with, and provide to such persons all such non-privileged information as they may reasonably request.

23. **Restriction on Use of Funds**.  Notwithstanding anything herein to the contrary, no proceeds of the DIP Facility, Collateral, or Cash Collateral may be used by the Debtors, any official committee, or any other person or entity without the consent of the DIP Parties and/or the Prepetition Secured Parties in connection with any of the following (each, a "Challenge"): (a) the investigation (including by way of examinations or discovery proceedings), initiation, assertion, joining, commencement, support or prosecution of any claims, causes of action, adversary proceedings, or other litigation against any of the DIP Parties, including the DIP Agent and DIP Lenders, or Prepetition Secured Parties, or any of their respective officers, directors, employees, agents, attorneys, consultants, financial advisors, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, action or other matter in any way related to the DIP Documents or the Prepetition Loan Documents (including formal discovery proceedings in anticipation thereof), including, without limitation, (i) investigating or challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the DIP Obligations, DIP Superpriority Claims or the DIP Liens; (ii) investigating or challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the Prepetition Secured Obligations, Prepetition Liens, Adequate Protection Superpriority Claims or Adequate Protection Liens; (iii) investigating or asserting any claims or causes of action arising under chapter 5 of the Bankruptcy Code or under similar laws of any jurisdiction against any of the Prepetition Secured Parties; (iv) investigating or asserting any so-called "lender liability" claims and causes of action against any of the Prepetition Secured Parties or the DIP Parties; and (v) any

action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the Prepetition

Secured Obligations, the DIP Obligations, the DIP Superpriority Claim, the Adequate Protection

Superpriority Claim; the DIP Liens or the Adequate Protection Liens; (b) asserting any claims or

causes of action against the DIP Parties or the Prepetition Secured Parties in such capacity,

including, without limitation, claims or actions to object to or contest in any manner the DIP

Parties' or the Prepetition Secured Parties' assertion or enforcement of any lien, claim, right or

security interest or realization upon any Collateral in accordance with the terms and conditions of

the DIP Documents, the Prepetition Loan Documents, or this Interim Order; (c) seeking to

modify any of the rights, remedies, priorities, privileges, protections and benefits granted to the

DIP Parties or the Prepetition Secured Parties hereunder or under the DIP Documents or

Prepetition Loan Documents (as applicable), in each of the foregoing cases without such

applicable parties' prior written consent; provided, however, that the proceeds of the DIP

Facility, Collateral, or Cash Collateral shall be available for payment of any fees or expenses

incurred by any official committee (if appointed) to investigate, but not prosecute, any potential

Challenge with respect to the Prepetition Secured Obligations and the validity and perfection of

the Prepetition Liens in an amount not to exceed $25,000.  In addition, no proceeds of the DIP

Facility, Collateral, or Cash Collateral may be used by the Debtors, any official committee, or

any other person or entity without the consent of the DIP Parties and/or the Prepetition Secured

Parties:  (x) to pay any amount on account of any claims arising prior to the Petition Date unless

such payments are (I) approved by an order of the Bankruptcy Court and (II) in accordance with

the DIP Agreement and the Approved Budget or this Interim Order; (y) for any purpose that is

prohibited under the Bankruptcy Code; or (z) to seek or obtain financing or other financial

accommodation from a source other than the Prepetition Secured Parties or the DIP Parties

unless such financing or financial accommodation would cause each of the DIP Obligations and the Prepetition Secured Obligations to be indefeasibly satisfied in full in cash.

24.   **Avoided Payments.**   In the event that the Prepetition Secured Parties are required to repay or disgorge to the Debtors or any representative of the Debtors' estates, and have repaid, all or any portion of the Prepetition Secured Obligations authorized and directed to be repaid pursuant to any Bankruptcy Order (as defined in the DIP Agreement), as the case may be, or any payment on account of the Prepetition Secured Obligations made to any Prepetition Secured Lender is rescinded for any reason whatsoever, including, but not limited to, as a result of any Avoidance Action, or any other action, suit, proceeding or claim brought under any other provision of the Bankruptcy Code or any applicable state law, or any other similar provisions under any other state or federal statutory or common law (all such amounts actually received by the Debtors or any representative of the Debtors' estates being hereafter referred to as the "Avoided Payments"), then, in such event, the Debtors shall, subject to the entry of a Final Order, prepay the DIP Loans in an amount equal to the lesser of (A) the outstanding principal amount of the Loans and (B) 100% of such Avoided Payments (with a corresponding permanent reduction in any undrawn Total Commitment (as defined in the DIP Agreement) to the extent that such Avoided Payments exceed the outstanding principal amount of the Loans) immediately upon receipt of the Avoided Payments by the Debtors or any representative of the Debtors' estates.

25.   **Further Assurances**.   The Debtors are authorized to negotiate, prepare, enter into, execute and deliver to the DIP Parties and the Prepetition Secured Parties, all such agreements, financing statements, instruments and other documents as the DIP Parties or the Prepetition Secured Parties may reasonably request to evidence, confirm, validate or perfect the

DIP Liens or Adequate Protection Liens granted pursuant hereto. Further, the Debtors are authorized to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of additional security agreements, pledge agreements, control agreements, mortgages and financing statements), and to pay all fees and expenses, that may be required or necessary for the Debtors' performance under the DIP Documents (including this Interim Order).

26.    **Good Faith Under Section 364(e)**. Based upon the record before the Court, the DIP Parties and the Prepetition Secured Parties have acted in good faith and at arm's length in connection with this Interim Order and are entitled to rely upon the protections granted herein and by section 364(e) of the Bankruptcy Code. Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all provisions of this Interim Order are hereafter reargued, reconsidered, reversed, modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Parties and the Prepetition Secured Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code through and including the date upon which the DIP Agent and the Prepetition Agent receive written notice of the entry of such subsequent order.

27.    **Indemnification**. The Debtors shall indemnify and hold harmless the Indemnitees (as defined in the DIP Agreement) in accordance with the terms and conditions of the DIP Agreement. The Bankruptcy Court shall retain jurisdiction with respect to the allowance (or disallowance) of any claim for indemnification asserted by any Indemnitee and the amount, if any, of any such liability.

28.    **Amendments, Consents, Waivers, and Modifications**.  The Debtors and the DIP Agent, in accordance with the terms and conditions of the DIP Documents, may enter into any amendments, consents, waivers or modifications to the DIP Documents (in accordance with the terms of the applicable DIP Document(s)) without the need for further notice and hearing or any order of this Court; provided, that, a copy of any amendment, consent, waiver or modification that (a) increases the aggregate principal amount of the DIP Obligations, (b) increases the interest rate or the fees payable, (c) extends the final maturity date, or (d) imposes covenants or defaults on the Debtors additional to and/or more onerous (including the addition of any additional Event of Default) than such covenants or defaults set forth in Article VII and Article IX of the DIP Agreement filed herewith shall be provided by the Debtors to the Prepetition Agent, the U.S. Trustee, and counsel for any official committee (if appointed), and shall become effective after the passage of ten (10) business days, if no written objection is received prior thereto, or if a written objection is timely received, upon entry of an order of this Court. ~~[handwritten: (and entry of an order submitted upon certification of no objection) KG]~~

29.    **506(c) Waiver; No Marshaling**.  (i) The Debtors irrevocably waive the right to assert any surcharge claim under section 506(c) of the Bankruptcy Code, or otherwise, for any costs and expenses incurred in connection with the preservation, protection, or enhancement of, or realization by the DIP Parties upon, the DIP Collateral.  None of the DIP Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to the DIP Collateral.  Without limiting the generality of the immediately preceding sentence, no party (other than the DIP Parties) shall be entitled, directly or indirectly, to direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of the DIP Collateral after an Event of Default.

(ii)     Upon the entry of the Final Order, the Debtors shall irrevocably waive the right to assert any surcharge claim under section 506(c) of the Bankruptcy Code or otherwise, for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the Prepetition Secured Parties upon, the Collateral.  Upon the entry of the Final Order, none of the Prepetition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to the Prepetition Collateral.  Without limiting the generality of the immediately preceding sentence, no party (other than the Prepetition Secured Parties) shall be entitled, directly or indirectly, to direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of the Prepetition Collateral after an Event of Default.

30.     **Section 552(b)**.  (i) The DIP Parties are entitled to all of the rights and benefits of section 552 of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Parties, with respect to proceeds, product, offspring, or profits of any of the DIP Collateral.

(ii)     Upon entry of the Final Order, the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552 of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties, with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

31.     **Restrictions on Granting Post-Petition Liens**.  Other than as otherwise provided in this Interim Order or permitted under the DIP Documents, it shall constitute an Event of Default under the DIP Documents if any claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order to the DIP Parties or the Prepetition Secured

Parties is granted or permitted by any order of this Court entered in the Chapter 11 Cases while any portion of the DIP Obligations, the Prepetition Secured Obligations, or the Adequate Protection Obligations are outstanding.

32.    **Automatic Effectiveness of Liens.**  The DIP Liens and (subject to the provisions of Paragraph 15 of this Interim Order) the Adequate Protection Liens shall not be subject to a challenge and shall attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law as of the Petition Date without any further action by the Debtors, the DIP Parties, or the Prepetition Secured Parties and without the necessity of execution by the Debtors or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, filings with the U.S. Patent and Trademark Office or the Library of Congress or any other applicable filing or registry in any applicable jurisdiction, or other documents or the taking of any other actions.  If the DIP Agent or the Prepetition Agent hereafter requests that the Debtors execute and deliver to the DIP Agent or the Prepetition Agent financing statements, security agreements, collateral assignments, mortgages, or other instruments and documents considered by such agent to be reasonably necessary or desirable to further evidence the perfection of the DIP Liens or the Adequate Protection Liens, the Debtors are hereby authorized to execute and deliver such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents, and the DIP Agent and the Prepetition Agent are hereby authorized to file or record such documents in their discretion without seeking modification of the Automatic Stay, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order.

33.    **Proofs of Claim**.    None of the DIP Lenders, the DIP Agent, the Prepetition Agent nor the Prepetition Secured Lenders will be required to file proofs of claim or requests for payment of administrative expenses on account of all or any portion of the Prepetition Secured Obligations, the DIP Obligations, or the Adequate Protection Obligations and all rights, defenses, rights of offset or recoupment that the DIP Parties or the Prepetition Secured Parties may have are expressly preserved.

34.    **Binding Effect**.    The provisions of this Interim Order shall not be stayed and shall be binding upon and inure to the benefit of the DIP Parties, the Prepetition Secured Parties, the Debtors, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estates of the Debtors) or any other fiduciary appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors. Such binding effect is an integral part of this Interim Order.

35.    **Survival**.    The provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any order converting or dismissing the Chapter 11 Cases, and the terms and provisions of this Interim Order as well as the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens and the Adequate Protection Superpriority Claims granted pursuant to this Interim Order shall continue in full force and effect notwithstanding the entry of any such order. Such claims and liens shall maintain their priority as provided by this Interim Order and to the maximum extent permitted by law, until all of the DIP Obligations and Prepetition Secured Obligations are indefeasibly paid in full in cash and discharged, as applicable. To the extent provided in section 364(e) of the Bankruptcy Code, if any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect the validity, priority or

enforceability of the DIP Liens, the DIP Obligations, Prepetition Liens, the Prepetition Secured Obligations, the Adequate Protection Liens or the Adequate Protection Superpriority Claims incurred prior to actual receipt of written notice to the DIP Agent or Prepetition Agent (as applicable) of the effective date of such reversal, stay, modification or vacatur.  Prior to actual receipt of written notice by the DIP Agent or the Prepetition Agent of the effective date of any reversal, stay, modification or vacatur, any use of the DIP Facility, Collateral (including Cash Collateral) or any DIP Liens, DIP Obligations, Adequate Protection Liens and Adequate Protection Superpriority Claims incurred by the Debtors hereunder, as the case may be, shall be governed in all respects by the original provisions of this Interim Order and the DIP Parties and the Prepetition Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits provided thereunder.

36.    **Power to Waive Rights; Duties to Third Parties**.  Regardless of whether such right is explicitly stated herein, (a) the Prepetition Agent shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Interim Order in respect of the Prepetition Secured Parties (the "Prepetition Secured Party Rights"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any Prepetition Secured Party Rights (other than as may be provided in the Prepetition Loan Documents); and (b) the DIP Agent shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Interim Order or the DIP Documents in respect of the DIP Parties (the "DIP Party Rights").  Any waiver by the Prepetition Agent of any Prepetition Secured Party Rights or the DIP Agent of any DIP Party Rights shall not be or constitute a continuing waiver.  Any delay in or failure to exercise or enforce any Prepetition Secured Party Right or DIP Party Right shall neither constitute a waiver of such Prepetition

Secured Party Right or DIP Party Right, subject the DIP Agent, any DIP Lender, the Prepetition Agent, or any Prepetition Secured Lender to any liability to any other party, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to the DIP Agent, any DIP Lenders, the Prepetition Agent, or any Prepetition Secured Lender.

37.    **Limits on Lenders' Liability**.    Nothing in this Interim Order, the *(subject to entry of the Final order)* Prepetition Loan Documents, the DIP Documents or any other documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition upon any of the DIP Parties or the Prepetition Secured Parties of any liability for any claims arising from any and all activities by the Debtors or any of their subsidiaries or affiliates.

38.    **Effect of Conversion or Dismissal of Chapter 11 Cases**.    If any of the Chapter 11 Cases are converted or dismissed, then neither the entry of this Interim Order nor the conversion or dismissal of any such Chapter 11 Case(s) shall affect the rights of the Prepetition Secured Parties under the Prepetition Loan Documents or this Interim Order or the DIP Parties under the DIP Documents or this Interim Order, and all of the respective rights and remedies thereunder of the DIP Parties and the Prepetition Secured Parties shall remain in full force and effect as if such Chapter 11 Case(s) had not been converted or dismissed.

39.    **Right to Credit Bid**.    Subject to Sections 363(f) and 363(k) of the Bankruptcy Code, (a) the DIP Agent, on behalf of itself and the DIP Lenders, and (b) the Prepetition Agent, on behalf of itself and the Prepetition Secured Lenders, shall have the right to "credit bid" the amount of each their respective claims during any sale of all or any portion of the Debtors' assets, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code.

40.    **Retention of Jurisdiction**.  The Bankruptcy Court shall retain exclusive jurisdiction to hear and determine any and all disputes or matters under, or arising out of or in connection with, this Interim Order.

41.    **Order Effective**.  This Interim Order shall be effective as of the date of the signature by the Court and, notwithstanding anything to the contrary in Bankruptcy Rule 4001(a)(3), shall not be stayed absent the grant of a stay under Bankruptcy Rule 8005 after a hearing upon notice to the Debtors, the DIP Agent, and the Prepetition Agent.

42.    **No Third Party Beneficiary**.  Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

43.    **Controlling Effect of Interim Order**.  To the extent any provision of this Interim Order conflicts or is inconsistent with any provision of the Motion, the DIP Documents, or the Prepetition Loan Documents, the provisions of this Interim Order shall control.

44.    **Objections**.  Any responses or objections to the Motion and entry of the Final Order must:  (a) be made in writing; (b) state with particularity the grounds therefor; (c) conform to the Bankruptcy Rules and the Local Bankruptcy Rules for the District of Delaware; (d) be filed with the United States Bankruptcy Court for the District of Delaware; and (e) be served upon (i) Patriot National, Inc., 401 East Las Olas Blvd., Suite 1650, Fort Lauderdale, FL 33301 (Attn: Gex F. Richardson); (ii) proposed counsel to the Debtors, Hughes Hubbard & Reed LLP, One Battery Park Plaza, New York, NY 10004 (Attn: Kathryn A. Coleman, Esq.) (katie.coleman@hugheshubbard.com) and Pachulski Stang Ziehl & Jones, 919 North Market Street, 17th Floor, Wilmington, DE 19801 (Attn:  Laura Davis Jones, Esq.) (ljones@pszjlaw.com); (iii) the Office of the U.S. Trustee, 844 King Street, Suite 2207, Lockbox

35, Wilmington, DE 19801 (Attn: Linda Casey, Esq.); and (iv) Schulte Roth & Zabel LLP, 919

Third Avenue, New York, NY 10022 (Attn:   Adam C. Harris, Esq. and Eliot Relles, Esq.)

(adam.harris@srz.com; eliot.relles@srz.com) and Landis Rath & Cobb LLP, 919 Market Street,

Suite 1800, Wilmington DE 19801 (Attn:   Adam G. Landis, Esq.), as counsel to Cerberus

Business Finance, LLC, as Prepetition Agent and DIP Agent. The deadline by which objections

to the Motion and the Final Order must be filed and received by counsel to the Debtors is

[~~Feb. 21~~], 2018 at ~~4~~:00 p.m. (prevailing Eastern Time) (the "Objection Deadline").

      45.    **Final Hearing**.  A final hearing on the Motion shall be heard before this

Court on [~~Feb. 28~~], 2018 at ~~10~~:00 ~~a~~.m. (prevailing Eastern Time) in Courtroom [~~3~~]

of the United States Bankruptcy Court for the District of Delaware at 824 Market Street North,

Wilmington, Delaware.  On or before [~~Feb. 6~~], 2018, the Debtors shall serve this Interim

Order, containing notice of the Final Hearing (the "Final Hearing Notice") on: (a) the U.S.

Trustee; (b) counsel for Cerberus Business Finance, LLC, as the administrative agent for the DIP

Lenders and for the prepetition secured lenders; (c) all other parties holding secured claims

against the Debtors; (d) those parties listed on the list of creditors holding the twenty (20) largest

unsecured claims against the Debtors (on a consolidated basis), as identified in their chapter 11

petitions; (e) the Securities and Exchange Commission; (f) the United States Attorney's Office

for the District of Delaware; (g) the Internal Revenue Service; and (h) all the parties that have

requested notice in this proceeding pursuant to Bankruptcy Rule 2002. If no objections to the relief sought in the Final Hearing are filed and served in accordance with this Interim Order, no Final Hearing may be held, and a separate Final Order may be presented by the Debtor and entered by this Court.

Dated: February 1 , 2018
      Wilmington, Delaware

_____
THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE