## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 18-10189 (KG) |
| Patriot National, Inc., *et al.*,[1] | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date: TBD** |
| Debtors. | ) | **Objection Deadline: TBD** |

## MOTION FOR ENTRY OF AN ORDER MODIFYING THE AUTOMATIC STAY, TO THE EXTENT APPLICABLE, TO ALLOW PAYMENT AND/OR ADVANCEMENT OF DEFENSE COSTS UNDER DIRECTORS AND OFFICERS LIABILITY POLICIES

Certain current and former members of the board of directors and officers (the "Movants")[2] of Patriot National, Inc. ("Patriot"), hereby file this motion (this "Motion"), pursuant to 11 U.S.C. §§ 362(d), 541(a), and 105(a), and Rules 4001(a) and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), for entry of an order modifying the automatic stay, to the extent applicable, to allow for the payment and/or advancement of defense costs under certain directors and officers liability policies. In support of this Motion, the Movants respectfully state as follows:

## INTRODUCTION

1.      Patriot is the policyholder and named insured under various directors and officers liability policies (the "Policies") issued by Argonaut Insurance Company ("Argonaut") and En-

---

[1] The above-captioned debtors (the "Debtors") in these Chapter 11 Cases, along with the last four digits of each Debtors' federal tax identification number, are: Patriot National, Inc. (1376), Patriot Services, LLC (1695); TriGen Insurance Solutions, Inc. (2501); Patriot Captive Management, LLC (2341); Patriot Underwriters, Inc. (0045); Tri-Gen Hospitality Group, Inc. (6557); Patriot Risk Consultants, LLC (0844); Patriot Audit Services, LLC (5793); Patriot Claim Services, Inc. (9147); Patriot Risk Services, Inc. (7189); Corporate Claims Management, Inc. (6760); CWIBenefits, Inc. (0204); Forza Lien, LLC (7153); Contego Investigative Services, Inc. (0330); Contego Services Group, LLC (0012); Patriot Care Management, LLC (2808); Radar Post-Closing Holding Company, Inc. (2049); Patriot Technology Solutions, LLC (6855); and Decision UR, LLC (1826). The Debtors' headquarters are located at 401 East Las Olas Boulevard, Suite 1650, Fort Lauderdale, Florida 33301.

[2] The Movants are Sean M. Bidic, M.D., Terry L. Coleman, Ernst N. Csiszar, Glenn T. Hibler, and Thomas C. Shields.

durance Reinsurance Corporation of America ("Endurance") (together, the "Insurers"), among other insurance companies.

2. Various current and former members of the board of directors and officers of Patriot (the "D&Os") are covered by the Policies, and the Movants bring this Motion on their own behalf, but also for the benefit of all covered D&Os, for entry of an Order: (1) finding that the proceeds from the Policies are not property of Patriot's bankruptcy estate and, therefore, that the automatic stay imposed by 11 U.S.C. § 362(a) is not applicable to the Insurers' advancement and/or reimbursement of Defense Costs (as defined in the Policies)[3] of the D&Os with respect to the various statutory and common-law claims made or threatened against them, or that may be asserted, including by the Litigation Trust contemplated by the Debtors' proposed chapter 11 plan of reorganization, individually or collectively as current or former board members or officers, and whether asserted in pending litigation matters in various courts (collectively, the "Lawsuits", described in greater detail below), or in demands on the board with respect to actions, transactions, or failures to act (collectively, with the Lawsuits, the "Claims"), in accordance with and subject to the terms and conditions of the Policies; or, in the alternative, (2) finding, to the extent applicable, that the automatic stay imposed by 11 U.S.C. § 362(a) is modified as necessary so as to permit the Insurers to make such advancement and/or reimbursement of Defense Costs to the D&Os with respect to the Claims; and (3) for such other and further relief as is just and proper under the circumstances.

---

[3] Any description or summary of the Policies' provisions set forth herein is subject to the actual language contained therein, and capitalized terms utilized in connection with the description of the Policies and not defined herein shall have the meanings ascribed to such terms in the Policies.

3.      The Insurers have informed the Movants that they support the relief requested herein, and, based on statements made in this Court at the hearing held on February 28, 2018, related to the *Debtors' Motion to (I) Compel Mediation of Claims Against the Debtors' Directors and Officers and (II) Temporarily Stay Related Litigation Pending the Outcome of Mediation* [D.I. 93] ("Motion to Compel Mediation"), the Movants do not expect the Debtors or other parties active in these cases to oppose it either.

## JURISDICTION AND VENUE

4.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The statutory bases for the relief requested herein are sections 105(a) and 362(d) of title 11 of the United States Code ("Bankruptcy Code"), Bankruptcy Rules 4001(a) and 9014, and Rule 4001-1 of the Local Rules of Practice & Procedure of the United States Bankruptcy Court for the District of Delaware.

## BACKGROUND

A.      **The Chapter 11 Cases.**

7.      Each of the above-captioned debtors (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on January 30, 2018. The Debtors' chapter 11 cases have been consolidated and are being jointly administered pursuant to Bankruptcy Rule 1015(b). [Docket No. 44].

B.      **The Policies.**

8.      Prior to the commencement of these jointly administered bankruptcy cases, Patriot entered into various agreements providing for directors and officers liability coverage with several insurance providers, including Argonaut and Endurance.  Copies of the relevant policies are attached hereto as **Exhibit A** and **Exhibit B**, respectively.

9.      Argonaut issued Policy No. MLX 7601240-01 (the "Argo Policy") for the policy period January 16, 2016 to January 16, 2017, listing Patriot as the Named Insured and providing for a $10,000,000 excess liability limit.  [Exhibit A, Argo Policy 1-2].  By its terms, the Argo Policy provides excess directors and officers liability coverage with respect to claims exceeding the coverage provided by the underlying policies listed therein, which include a $10,000,000 policy issued by National Union Fire Insurance Company of Pittsburgh (Policy No. 06-185-94-19) (the "Primary Policy") and a $10,000,000 policy issued by RSUI Indemnity Company (Policy No. NHS666236) (the "Secondary Policy").  [Exhibit A, Argo Policy 11].

10.     Endurance issued Policy No. FIX10006316401 (the "Endurance Policy") for the policy period January 16, 2016 to January 16, 2017, listing Patriot as the Named Insured and providing for a $10,000,000 excess liability limit.  [Exhibit B, Endurance Policy 1].  By its terms, the Endurance Policy provides excess directors and officers liability coverage with respect to claims exceeding the coverage provided by the underlying policies listed therein, which include the Primary Policy, the Secondary Policy, and the Argo Policy.  *Id*.

11.     There are additional policies potentially applicable to cover Defense Costs and other matters that are not addressed in this Motion, and the Movants reserve all of their rights with respect thereto.

12.     Each of the Policies is expressly subject to the terms, conditions, representations and limitations set forth in the Primary Policy (a copy of which is attached hereto as **EXHIBIT C**), which is also a D&O policy.  The Primary Policy lists Patriot as the Named Entity and provides a liability limit of $10,000,000 for the policy period January 16, 2016 to January 16, 2017.  [Exhibit C, Primary Policy, 3].  The Primary Policy provides for claims-made coverage, thereby generally limiting liability to "(i) Claims first made against Insureds, (ii) Inquiries that an Insured Person first received, and (iii) Crises first occurring, in each case, during the Policy Period or, if applicable, the Discovery Period."  *Id*.

13.     Section 1 of the Primary Policy provides for combination coverage through three separate insuring agreements.  [Exhibit C, Primary Policy, 8].  First, Insuring Agreement A provides "Insured Person Coverage," thereby offering coverage directly to the directors and officers of Patriot for claims made against these individuals in their capacity as directors and officers.  *Id*.  Second, Insuring Agreement B provides "Indemnification of Insured Person Coverage," thereby offering coverage to Patriot for claims that Patriot is required or permitted to pay on behalf of its directors and officers, thus providing indemnification for such payments.  *Id*.  Third, Insuring Agreement C provides "Organization Coverage," thereby offering entity coverage to Patriot for certain claims made against Patriot directly.  *Id*.

14.     The Primary Policy includes Defense Costs in its definition of covered Loss.  [Exhibit C, Primary Policy, 28].  Loss is defined as "damages, settlements, judgments (including pre/post-judgment interest on a covered judgment), Defense Costs, Crisis Loss, Derivative Investigation Costs, Liberty Protection Costs and Pre-Claim Inquiry Costs."  *Id*.  Defense Costs are further defined by the Primary Policy to include, in relevant part, "reasonable and necessary fees, costs, and expenses  . . . resulting solely from (1) the investigation, adjustment, defense and/or

appeal of a Claim against an Insured. . . ." [Exhibit C, Primary Policy, 25]. Covered Defense Costs reduce the Limit of Liability available to pay judgments or settlements, and are applied against the retention amount. [Exhibit C, Primary Policy, 3].

15.     Further, the Primary Policy contains an Order of Payments provision, whereby the Insurer is required to "[f]irst, pay all Loss covered under Insuring Agreement A" directly to the directors and officers. [Exhibit C, Primary Policy, 10]. To the "extent that any amount of the Limit of Liability shall remain available" following the payment of losses covered by Insuring Agreement A, the Insurer may then provide payment to Patriot for losses covered under Insuring Agreement B. *Id.* Finally, to the "extent that any amount of the Limit of Liability shall remain available" following payments made pursuant to Insuring Agreements A and B, the Insurer may then provide payment to Patriot for losses covered under Insuring Agreement C. *Id.* Notably, losses incurred under Insuring Agreement A (i.e., coverage of the individual directors and officers) are given absolute priority in right of payment over losses incurred under Insuring Agreement B and Insuring Agreement C (i.e., coverage of Patriot). Thus, any losses incurred under Insuring Agreement A must be paid in full to the directors and officers before any policy proceeds are available to Patriot directly.

16.     Finally, the Primary Policy explicitly contemplates the impact of bankruptcy or insolvency with respect to the applicability of the policy terms, expressly stating that such events "shall not relieve the Insurer of any of its obligations under [the] policy." [Exhibit C, Primary Policy, 10]. Further, "the Insurer and each Organization and Insured Person agree to cooperate in any efforts by the Insurer or any Organization or Insured Person to obtain relief for the benefit of the Insured Persons from any stay or injunction applicable to the distribution of the policy proceeds." *Id.*

17.    The $10,000,000 coverage provided by the Primary Policy has been exhausted, as has the coverage provided by the Secondary Policy, thereby implicating the need for excess coverage under the Argo Policy, and, once exhausted, the Endurance Policy.

C.    **The Lawsuits**

18.    Prior to the commencement of these jointly administered bankruptcy cases, the D&Os were, and they currently are, defendants in one or more of the Lawsuits, including matters styled as *Hudson Bay Master Fund Ltd.* v. *Patriot National, et al.*, Case No. 16-cv-02767 (S.D.N.Y.); *CVI Invs., Inc.* v. *Patriot National, Inc.*, Case No. 16-cv-02787 (S.D.N.Y.); *Hudson Bay Master Fund Ltd.* v. *Del Pizzo et al.*, Case No. 17-cv-06204 (S.D.N.Y.); *Wasik et al.* v. *Mariano et al.*, Case No. 12953 (Del. Ch.); *Gingello* v. *Patriot National, Inc. et al.*, Case No.17-cv-01866 (S.D.N.Y.); *Kayce* v. *Patriot National, Inc. et al.*, Case No. 17-cv-07164 (S.D.N.Y.); and *McIntire et al.* v. *Mariano et al.*, Case. No. 18-cv-60075 (S.D. Fl.).  Details regarding the specific allegations set forth in each of the Lawsuits, including the particular defendants in each, as well as other of the Claims, can be found in the *Debtors' Motion to (I) Compel Mediation of Claims Against the Debtors' Directors and Officers and (II) Temporarily Stay Related Litigation Pending the Outcome of Mediation.*  [D.I. 93].

19.    The D&Os have denied any liability in connection with the Claims (including the Lawsuits) and have been defending the Lawsuits vigorously with the assistance of counsel, and have incurred and will continue to incur Defense Costs in connection with the Claims, such as attorney's fees and costs, which are subject to reimbursement under the Policies.

20.    Notice of the Lawsuits and certain other of the Claims has been provided to the Insurers under the Policies, and the Insurers, subject to a reservation of rights, have agreed to advance Defense Costs incurred by the D&Os in connection with certain of the Claims (and may

do so in the future with respect to other of the Claims), subject to entry of an order of the Court approving the relief requested here.  Indeed, the Insurers were routinely advancing such Defense Costs prior to Patriot's announcement in November 2017 that it was going to commence bankruptcy proceedings, at which point the Insurers halted payments on the outstanding invoices for Defense Costs.

21.     The Insurers are now prepared to resume reimbursing and advancing Defense Costs as reasonable and necessary to defend the Lawsuits and other of the Claims, but they have requested that the D&Os confirm that such reimbursements and advances will not violate the automatic stay or otherwise be challenged by the Debtors or other parties-in-interest.

## DISCUSSION

**A.     The Policies' Proceeds for Defense Costs Are Not and Should Not be Deemed to be Property of Patriot's Bankruptcy Estate**

22.     When a policy provides direct coverage to directors and officers that is superior to that of the debtor, as is the case here, the prevailing view is that the policy proceeds will *not* be considered property of the estate.  *See e.g.*, *In re Downey Fin. Corp.*, 428 B.R. 595, 608 (Bankr. D. Del. 2010); *In re World Health Alternatives, Inc.,* 369 B.R. 805, 811 (Bankr. D. Del. 2007); *In re Allied Digital Techs. Corp.*, 306 B.R. 505, 510 (Bankr. D. Del. 2004).

23.     This principle is particularly applicable if the policy contains an Order of Payments provision, like here, which expressly subordinates the debtor's rights to policy proceeds to those of the debtor's directors and officers, and effectively allows the directors and officers to exhaust the policy's coverage.  *See, e.g., In re World Health Alternatives, Inc.,* 369 B.R. 805, 808 (Bankr. D. Del. 2007) (finding that order of payment provision rendered subordinated coverage for debtor so remote that it was not reasonably probable that trustee would succeed on merits

asserting that proceeds of policy were property of estate, in that "Trustee is no different than any third party plaintiff suing defendants covered by a wasting Policy"); *In re TierOne Corp.*, 2012 WL 4513554, at *3 (Bankr. D. Neb. Oct. 2, 2013) (finding that, "[t]he directors and officers have a right to make claims under the policies and to receive payment of the policy proceeds to the exclusion of the bankruptcy estate since they are the insureds who are first in line," and therefore, proceeds of D&O policy were not property of estate).

24.     Under the Policies and the factual circumstances presented herein, the Policies' proceeds are not property of Patriot's estate. Consistent with the purpose of directors and officers liability policies, Patriot purchased the Policies first and foremost to provide insurance coverage to its officers and directors, including the D&Os. *See In re Laminate Kingdom*, 2008 WL 1766637, at *4 (S.D. Fla March 13, 2008) (finding "cause" to grant insurer relief from stay to reimburse defense costs to covered directors and officers given that "D&O policies are obtained for the protection of individual directors and officers . . . . [I]n essence and at its core, a D&O policy remains a safeguard of officer and director interests and not a vehicle for corporate protection") (quoting *In re First Central Financial Corp.*, 238 B.R. 9, 16 (Bankr. E.D.N.Y 1999)). Further, Patriot's interest in the Policies' proceeds is expressly subordinated to those of its directors and officers insofar as the Order of Payments clause of the Primary Policy requires payment in full for any and all outstanding claims against the directors and officers under Insuring Agreement A before any proceeds are available for direct claims made against, or of any indemnification expenses incurred by, Patriot. *See In re Downey Fin. Corp.*, 428 B.R. 595, 608 (Bankr. D. Del. 2010) (adhering to the "clear chain of priority among the three types of coverage" to find that "entity and indemnification coverage, respectively—are, under all circumstances, junior to [Insuring Agreement A], which provides direct coverage to the [directors and offic-

ers]"); *In re Beach First Nat'l Bancshares, Inc.,* 451 B.R. 406, 411 (Bankr. D.S.C. 2011) ("[directors and officers] cannot now be prevented from using the Policy for its intended purpose simply because Debtor wishes to save the policy limit for any potential claims of his own").

25.     Moreover, to the extent that Patriot may argue that it has an equal interest in the Policies' proceeds, the proceeds should nevertheless not be considered property of Patriot's estate because the Order of Payments provision expressly subordinates Patriot's interest in such proceeds to that of its directors and officers.  [Exhibit C, Primary Policy, 10].

26.     Based upon the foregoing, the proceeds payable to the D&Os as advancement and/or reimbursement of Defense Costs and/or other Loss in accordance with the terms of the Policies are not property of Patriot's estate, and the automatic stay, therefore, cannot prevent such advancement and/or reimbursement from the Policies under their terms and conditions.

**B.     Even In the Event That The Policy's Proceeds Are Deemed To Be Property Of The Estate, Adequate Cause Exists To Grant Relief From The Stay**

27.     Alternatively, even if Patriot's estate has some property interest in the Policies, relief from the stay is nonetheless appropriate where, as here, the Order of Payments provision mandates that Patriot's interest in any policy proceeds is subordinate to the interest of the D&Os. Accordingly, to the extent that the automatic stay is applicable, the stay should be modified as necessary to ensure that rights of the D&Os are not substantially and irreparably harmed by the inability to obtain advancement and/or reimbursement of the policy proceeds in accordance with the terms and conditions of the Policies, which were procured above all for their benefit and protection.

28.     Section 362(d) of the Bankruptcy Code provides that the Court may grant relief from the automatic stay on request from a party in interest "for cause."  11 U.S. C. § 362(d).  In

determining whether "cause" exists to grant relief from the stay, courts conduct a case-by-case inquiry and should consider the totality of the circumstances. *See, e.g.*, *Baldino v. Wilson* (*In re Wilson*), 116 F.3d 87, 90 (3d Cir. 1997). The decision to grant such relief is within the discretion of the bankruptcy court after considering, among other factors, the impact of the stay on the parties' interests and the balance of harm if the stay is lifted. *See e.g.*, *In re W.R. Grace & Co.*, 2007 WL 1129170, *1, at *3 (Bankr. D. Del. April 13, 2007).

29.    In circumstances similar to the present case, courts have entered orders granting relief from the automatic stay to allow payment by an insurance company to directors and officers who have a separate and independent property right to the proceeds of a liability insurance policy. *See, e.g., In re Laminate Kingdom*, 2008 WL 1766637, at *3 (S.D. Fla March 13, 2008) (finding a policy's order of payments provision "specifically requires that the proceeds be used *first* to pay non-indemnifiable loss under [Insuring Agreement A] of the Policy, which coverage includes Costs of Defense" thereby providing the estate with "only a contingent and residual interest in the Policy's proceeds"); *see also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 463 (S.D.N.Y. 2004) (holding that where a policy provides direct coverage to both the debtor and the debtor's officers and directors, "the individual insureds have a right to use the policies' proceeds to cover their defense and settlement costs in litigation").

30.    Further, the Insuring Agreements of the Primary Policy should, at a minimum, operate within bankruptcy just as they would outside the bankruptcy context to allow the directors and officers access to the policy proceeds that belong first and foremost to them. *Accord Butner v. United States,* 440 U.S. 48, 55 (1977) ("Unless some federal interest requires a different result, there is no reason why [property] interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."). In other words, Patriot's es-

tate is bound by the terms of the Policies, which expressly contemplate the impact of bankruptcy on the applicability of the Policies. [Exhibit C, Primary Policy, 10]. Thus, Patriot's estate does not have any greater interest in the policy proceeds than Patriot did prior to the bankruptcy filing. Allowing the automatic stay to prevent the advancement and/or reimbursement of Defense Costs would infringe on the D&Os' direct property interests in the Policies and, in effect, improperly grant Patriot's estate greater rights to the proceeds of the Policies than Patriot would have outside the bankruptcy context. *In re Downey Fin. Corp.*, 428 B.R. 595, 608 (Bankr. D. Del. 2010) ("were the Court to hold that the Policy proceeds are property of the estate and, thus, subject to the automatic stay, the trustee would have 'greater rights in the [Policy proceeds] than the debtor had before filing for bankruptcy.'") (citation omitted).

31.     Another consideration weighing in favor of relief is the impact of the automatic stay and the relative harm to the directors and officers, in particular the D&Os involved in the Claims, if it were not lifted. In this case, the D&Os already have incurred and/or will continue to incur substantial Defense Costs. Without the reimbursement and/or advancement of Defense Costs, the D&Os may "be prevented from conducting a meaningful defense . . . and may suffer substantial and irreparable harm." *Allied,* 306 B.R. at 514; *see also In re Downey Fin. Corp.*, 428 B.R. 595, 609-10 (Bankr. D. Del. 2010) (finding that the insured parties "would suffer a very real—and easily identifiable—hardship" if required to pay substantial defense costs out of pocket); *In re CyberMedica, Inc.*, 280 B.R. 12, 18 (Bankr. D. Del. 2002).

32.     Based on the forgoing, to the extent that the automatic stay is applicable, the D&Os respectfully submit that "cause" exists under Bankruptcy Code section 362(d) to warrant relief from the stay to permit the Insurers to advance and/or reimburse Defense Costs in accordance with and subject to the terms and conditions of the Policies.

**C.** **Permitting the Advancement and/or Reimbursement of Defense Costs Using Policy Proceeds is an Appropriate Exercise of the Court's Powers**

33.     Finally, Section 105 of the Bankruptcy Code authorizes this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The purpose of Section 105 is to assure the bankruptcy court's power to take whatever action is appropriate or necessary in aid of the exercise of its jurisdiction. *2 Collier on Bankruptcy* ¶ 105.01 at 105-5 through 105-6 (15th ed. Rev. 2000).

34.     Permitting the Insurers to advance and/or reimburse of Defense Costs, in accordance with and subject to the terms and conditions of the Policies, is clearly an appropriate exercise of the Court's powers in these factual circumstances, particularly in light of this Court's Order [D.I. 256] granting the Motion to Compel Mediation, and compelling the D&Os to participate in mediation where they will be entitled to be represented by counsel, as recognized by the Court and the parties at the hearing on the Debtors' Motion to Compel Mediation. Moreover, no relevant party will be prejudiced by the relief requested herein.

## REQUEST FOR WAIVER OF BANKRUPTCY RULE 4001 STAY

35.     Due to the significant delay that the D&Os have already experienced with respect to the advancement and reimbursement of outstanding amounts to which they are entitled, and the routine nature of the relief requested herein, the Movants hereby request that this Court waive the 14-day stay period related to orders granting motions for relief from the automatic stay pursuant to Bankruptcy Rule 4001(c)(3).

## **CONCLUSION**

**WHEREFORE,** for all of the reasons set forth above, the Movants respectfully request that the Court enter the proposed Order annexed hereto as **EXHIBIT D** granting this Motion in its entirety and providing that the automatic stay imposed by 11 U.S.C. § 362(a) is not applicable and/or if applicable, shall be lifted to allow the Insurers to advance and/or reimburse Defense Costs in accordance with and subject to the terms and conditions of the Policies, together with such other and further relief for the benefit of the Movants as is just and proper under the circumstances.

Dated:  March 12, 2018

CONNOLLY GALLAGHER LLP

*/s/ Jeffrey C. Wisler*
Henry E. Gallagher, Esq. (#495)
Jeffrey C. Wisler, Esq.  (#2795)
1000 West Street, Suite 1400
Wilmington, DE 19801
Telephone: (302) 757-7300
Facsimile: (302) 658-0380
Email:  jwisler@connollygallagher.com


and

Joel H. Levitin, Esq.
Richard A. Stieglitz Jr., Esq.
John M. Schoolman, Esq.
Cahill Gordon & Reindel LLP
80 Pine Street
New York, New York 10005
Telephone:  (212) 701-3000
Facsimile: (212) 269-5420
Email:     jlevitin@cahill.com
            rstieglitz@cahill.com
            jschoolman@cahill.com

*Attorneys for the Movants*