## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| *In re* | ) | Chapter 11 |
| | ) | |
| **PATRIOT NATIONAL, INC.** *et al.*[1] | ) | Case No. 18-10189 (KG) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

## DEBTORS' SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION

> THIS IS NOT A SOLICITATION OF AN ACCEPTANCE OR REJECTION OF THE FOLLOWING CHAPTER 11 PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. A DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL, BUT HAS NOT BEEN APPROVED BY THE COURT.

Kathryn A. Coleman
Christopher Gartman
Dustin P. Smith
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004-1482

*Attorneys for Debtors and Debtors in Possession*

Laura Davis Jones
James E. O'Neill
Peter J. Keane
PACHULSKI STANG
ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)

*Attorneys for Debtors and Debtors in Possession*

Dated: March 13, 2018
      Wilmington, Delaware

---

1. The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors' federal tax identification number, are: Patriot National, Inc. (1376); Patriot Services, LLC (1695); TriGen Insurance Solutions, Inc. (2501); Patriot Captive Management, LLC (2341); Patriot Underwriters, Inc. (0045); TriGen Hospitality Group, Inc. (6557); Patriot Risk Consultants, LLC (0844); Patriot Audit Services, LLC (5793); Patriot Claim Services, Inc. (9147); Patriot Risk Services, Inc. (7189); Corporate Claims Management, Inc. (6760); CWIBenefits, Inc. (0204); Forza Lien, LLC (7153); Contego Investigative Services, Inc. (0330); Contego Services Group, LLC (0012); Patriot Care Management, LLC (2808); Radar Post-Closing Holding Company, Inc. (2049); Patriot Technology Solutions, LLC (6855); and Decision UR, LLC (1826). The Debtors' headquarters are located at 401 East Las Olas Boulevard, Suite 1650, Fort Lauderdale, Florida 33301.

# Table of Contents

**ARTICLE I.** DEFINED TERMS, RULES OF CONSTRUCTION, AND GOVERNING LAW ......................................................................................................2
- A. Defined Terms ...............................................................................2
- B. Rules of Construction ...................................................................15
- C. Governing Law .............................................................................16

**ARTICLE II.** CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS .........................16
- A. Introduction....................................................................................16
- B. Unclassified Claims.......................................................................16
- C. Classified Claims and Equity Interests .......................................16

**ARTICLE III.** TREATMENT OF CLAIMS AND EQUITY INTERESTS.............................17
- A. Unclassified Claims.......................................................................17
- B. Treatment of Claims and Equity Interests ..................................18
- C. Reservation of Rights Regarding Claims and Equity Interests............................20

**ARTICLE IV.** ACCEPTANCE OR REJECTION OF THE PLAN ..........................................21
- A. Impaired Classes Entitled to Vote................................................21
- B. Acceptance by an Impaired Class.................................................21
- C. Presumed Acceptances by Unimpaired Classes ..........................21
- D. Presumed Rejection by Impaired Voting Class of Claims and Equity Interests....21
- E. Elimination of Vacant Classes ....................................................21
- F. Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ..........................................................................21

**ARTICLE V.** MEANS FOR IMPLEMENTATION OF THE PLAN......................................22
- A. Issuance of New Equity Interests.................................................22
- B. Continued Corporate Existence and Vesting of Assets in the Reorganized Debtors ........................................................................22
- C. Restructuring Transactions .........................................................23
- D. Funding of Distributions under the Plan.....................................24
- E. Cancellation of Old Equity Interests and Other Agreements.................................24
- F. Corporate Action; Effectuating Documents.................................25
- G. Plan Administrator........................................................................25
- H. Equity Purchase Agreement.........................................................26
- I. Exemption from Certain Transfer Taxes ......................................26
- J. Plan Supplement ...........................................................................26
- K. Committee.....................................................................................27
- L. Preservation of Causes of Action................................................27

**ARTICLE VI.** LITIGATION TRUST ...................................................................................27
- A. The Litigation Trustee...................................................................28
- B. The Litigation Trust .....................................................................29

    C.      The Litigation Trust Oversight Committee.............................................30
    D.     Litigation Proceeds Waterfall.............................................................30
    E.     Closing the Chapter 11 Cases ...........................................................31

**ARTICLE VII.** TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
    LEASES.......................................................................................................31
    A.     Rejection of Executory Contracts and Unexpired Leases......................31
    B.     Claims Based on Rejection of Executory Contracts of Unexpired Leases............32
    C.     Assumption and Assignment of Contracts and Leases .........................32
    D.     Payments Related to the Assumption and Assignment of Executory Contracts
           and Unexpired Leases........................................................................33
    E.     Extension of Time to Assume or Reject ...............................................34
    F.     Insurance Policies .............................................................................34
    G.    Pre-existing Obligations to the Debtors Under Executory Contracts and
           Unexpired Leases..............................................................................34

**ARTICLE VIII.** PROVISIONS GOVERNING DISTRIBUTIONS ..........................................35
    A.     Determination of Allowability of Claims and Rights to Distributions.................35
    B.     Procedures for Making Distributions to Holders of Allowed Claims....................35
    C.     Consolidation for Distribution Purposes Only......................................36
    D.     Application of Distribution Record Date..............................................36
    E.     Provisions Related to Disputed Claims................................................37
    F.     Adjustment of Claims Without Objection .............................................38
    G.    Surrender of Cancelled Old Securities.................................................38
    H.    Withholding and Reporting Requirements ...........................................38
    I.      Setoffs .............................................................................................39
    J.      Prepayment ......................................................................................39
    K.    No Fractional Shares of New Equity Interests......................................39
    L.     No Distribution in Excess of Allowed Amount of Claim......................39
    M.   Amendments to Claims......................................................................39

**ARTICLE IX.** CONDITIONS PRECEDENT TO CONFIRMATION AND
    CONSUMMATION OF THE PLAN .................................................................40
    A.     Conditions to Confirmation ................................................................40
    B.     Conditions to Effective Date...............................................................40
    C.     Waiver of Conditions.........................................................................41
    D.     Operations of the Debtors Between the Confirmation Date and the Effective
           Date .................................................................................................42
    E.     Effective Date ...................................................................................42

**ARTICLE X.** RETENTION OF JURISDICTION........................................................42
    A.     Scope of Retention of Jurisdiction......................................................42
    B.     Failure of the Bankruptcy Court to Exercise Jurisdiction......................43

**ARTICLE XI.** MISCELLANEOUS PROVISIONS .......................................................44
    A.     Administrative Expense Claims and Professional Fee Claims .............44
    B.     Payment of Statutory Fees .................................................................44

| | | |
|---|---|---|
| C. | Successors and Assigns and Binding Effect | 44 |
| D. | Preservation of Subordination Rights | 45 |
| E. | Discharge of Claims and Equity Interests | 45 |
| F. | Compromise and Settlement | 45 |
| G. | Releases | 46 |
| H. | Exculpation and Limitation of Liability | 47 |
| I. | Injunction | 47 |
| J. | No Release of Any Claims Held by the United States | 48 |
| K. | Term of Injunctions or Stays | 48 |
| L. | Modifications and Amendments | 49 |
| M. | Substantial Consummation | 49 |
| N. | Severability of Plan Provisions | 49 |
| O. | Revocation, Withdrawal, or Non-Consummation | 49 |
| P. | Notices | 50 |
| Q. | Request for Expedited Determination of Taxes | 51 |
| R. | Conflicts | 52 |

# INTRODUCTION

The Debtors propose this Plan for resolution and satisfaction of all Claims against and Equity Interests in the Debtors. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

Reference is made to the Disclosure Statement accompanying the Plan, including the exhibits thereto, for a discussion of the Debtors' organizational structure, business operations, and assets and liabilities, the events leading to the Chapter 11 Cases, the major events during the Chapter 11 Cases, a summary and analysis of the Plan, and a description of the Causes of Action to be prosecuted by the Litigation Trust. All Holders of Claims entitled to vote on the Plan are encouraged to consult the Disclosure Statement and to read the Plan carefully before voting to accept or reject the Plan.

NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH AS APPROVED BY THE BANKRUPTCY COURT, HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THE PLAN.

# ARTICLE I.
## DEFINED TERMS, RULES OF CONSTRUCTION, AND GOVERNING LAW

A.    **Defined Terms**

1.    "<u>510(b) Claim</u>" means any Claim against a Debtor (a) arising from rescission of a purchase or sale of a security of the Debtors or an Affiliate, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under Bankruptcy Code Section 502 on account of such a Claim, or (b) any other claim subject to subordination under Bankruptcy Code Section 510.

2.    "<u>Adequate Protection Claims</u>" means the superpriority administrative expense claims granted under section 364(c)(1) of the Bankruptcy Code pursuant to the DIP Order.

3.    "<u>Administrative Expense Claim</u>" means any Claim for costs and expenses of administration of these Chapter 11 Cases with priority under section 507(a)(2) of the Bankruptcy Code, including, without limitation, (a) costs and expenses allowed under section 503(b) of the Bankruptcy Code, (b) the actual and necessary costs and expenses of preserving the Estates of the Debtors, (c) any Claim arising under section 503(b)(9) of the Bankruptcy Code, (d) any Claim relating to the right of reclamation to the extent afforded such priority under the Bankruptcy Code, (e), any Professional Fee Claims, (f) any fees or charges assessed against the Estates of the Debtors under 28 U.S.C. § 1930, or (g) any indebtedness or obligations under any Executory Contracts and Unexpired Leases that are assumed by the Debtors in connection with the conduct of their businesses.

4.    "<u>Administrative Expense Claim Bar Date</u>" means the date set forth in Article XI.A.1 of the Plan by which all Persons (other than governmental entities to the extent provided in section 503(b)(1)(D) of the Bankruptcy Code) asserting an Administrative Expense Claim (other than a Professional Fee Claim, but including any Claim pursuant to section 503(b) of the Bankruptcy Code) against the Debtors must have filed a Claim or be forever barred from doing so.

5.    "<u>Affiliate</u>" means an "affiliate" as such term is defined in section 101(2) of the Bankruptcy Code.

6.    "<u>Allowed</u>" means with respect to a Claim against any Debtor, (a) a Claim that is (i) listed in the Schedules as of the Effective Date as neither disputed, contingent nor unliquidated, or (ii) evidenced by a valid Proof of Claim or request for payment of Administrative Claim, as applicable, Filed by the applicable Bar Date, and as to which the Debtors or other parties-in-interest have not Filed an objection to the allowance thereof by the Claims Objection Deadline, or (b) a Claim that is deemed "Allowed" under the Plan or by any stipulation or settlement approved by, or Final Order of, the Bankruptcy Court; <u>provided</u>, <u>however</u>, that any Claim allowed pursuant to an order of the Bankruptcy Court or an express agreement between the Holder of such Claim and the Debtors solely for the purpose of voting to accept or reject the Plan will not be considered an "Allowed Claim" under the Plan; <u>provided further</u>, <u>however</u>, that any Claim expunged or disallowed under the Plan or otherwise shall not be an Allowed Claim.  If a Claim is "Allowed" only in part, references to "Allowed Claims" include

and are limited to the portion of such Claim that is Allowed. Notwithstanding anything to the contrary herein, no Claim that is disallowed in accordance with section 502(d) of the Bankruptcy Code is Allowed, and each such Claim shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.

7. "<u>Assumption Schedule</u>" means the schedule, attached as an exhibit to the Plan Supplement, listing (a) the Executory Contracts and Unexpired Leases that will be assumed or assumed and assigned pursuant to the Plan and (b) the proposed amount to be paid on account of an associated Cure Claim.

8. "<u>Available Cash</u>" means the Debtors' Cash on hand on the Effective Date.

9. "<u>Bankruptcy Code</u>" means sections 101 *et seq.* of title 11 of the United States Code, as now in effect or hereafter amended and applicable to the Chapter 11 Cases.

10. "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the District of Delaware or such other court as may have jurisdiction over the Chapter 11 Cases or any aspect thereof.

11. "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under 28 U.S.C. § 2075, and the general, local, and chambers rules of the Bankruptcy Court, as the context may require.

12. "<u>Bar Date</u>" means (a) with respect to entities other than governmental units, 4:00 p.m. (prevailing Eastern Time) on April 30, 2018, (b) with respect to governmental units, 4:00 p.m. (prevailing Eastern Time on July 30, 2018, and (c) such other date(s) fixed by order(s) of the Bankruptcy Court or as set forth in this Plan, by which all Persons, including governmental units, asserting a Claim against the Debtors, must have filed a Proof of Claim or be forever barred from asserting such Claim.

13. "<u>Bar Date Order</u>" means that certain order of the Bankruptcy Court entered on March 8, 2018 [Docket No. 317], establishing the Bar Date for filing Proofs of Claim, with only those exceptions permitted thereby.

14. "<u>Business Day</u>" means any day, excluding Saturdays, Sundays, or "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in New York, New York.

15. "<u>Captive</u>" means Patriot Captive Management, LLC, a Delaware limited liability company, one of the above-captioned Debtors.

16. "<u>Care Management</u>" means Patriot Care Management, LLC, a Delaware limited liability company, one of the above-captioned Debtors.

17. "<u>Cash</u>" means legal tender of the United States or equivalents thereof.

18. "<u>Causes of Action</u>" means any and all Claims, actions, causes of action, choses in action, rights, demands, suits, claims, liabilities, encumbrances, lawsuits, adverse consequences,

debts, damages, dues, sums of money, accounts, reckonings, deficiencies, bonds, bills, disbursements, expenses, losses, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross-claims (including those of the Debtors and/or the Estates), including, without limitation, any claims, causes of action, objections, rights, remedies arising under Chapter 5 of the Bankruptcy Code pursuant to, among others, sections 502, 510, 542 through 545 and 547 through 553 or 558 thereof, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, and whether held in a personal or representative capacity, that are or may be pending as of the date of the Plan or instituted hereafter against any Person, based in law or equity, including under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise, and whether asserted or unasserted as of the date of the Plan.

19.     "<u>CCM</u>" means Corporate Claims Management, Inc., a Delaware corporation, one of the above-captioned Debtors.

20.     "<u>Chapter 11 Cases</u>" means the above-captioned, jointly-administered chapter 11 cases of the Debtors pending in the Bankruptcy Court under Case No. 18-10189 (KG).

21.     "<u>CIS</u>" means Contego Investigative Services, Inc., a Delaware corporation, one of the above-captioned Debtors.

22.     "<u>Claim</u>" means a claim as such term is defined in Bankruptcy Code Section 101(5) against the Debtors, whether arising before or after the Petition Date.

23.     "<u>Claims and Noticing Agent</u>" means Prime Clerk LLC.

24.     "<u>Claims Objection</u>" means any objection, application, motion, complaint or any other legal proceeding seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify, expunge, subordinate, estimate, or establish the priority of, any Claim.

25.     "<u>Claim Objection Deadline</u>" means the last day for filing objections to Claims in the Bankruptcy Court, which shall be the latest of (a) sixty (60) days after the Effective Date, (b) sixty (60) days after the applicable Proof of Claim or Request for Payment is filed (except as otherwise provided in Article XI.A of the Plan), and (c) such other later date as is established by order of the Bankruptcy Court upon motion of the Plan Administrator. The Plan Administrator may, in its discretion, move the Bankruptcy Court to enter an order extending the Claim Objection Deadline at any time prior to the expiration of the Claim Objection Deadline.

26.     "<u>Claims Register</u>" means the official claims registers in the Debtors' Chapter 11 Cases maintained by the Claims and Noticing Agent on behalf of the Clerk of the Bankruptcy Court.

27.     "<u>Class</u>" means a category of Holders of Claims or Equity Interests, as described in Article II of the Plan.

28.     "<u>Committee</u>" means the official committee of unsecured creditors formed by the U.S. Trustee to serve in the Chapter 11 Cases.

29.     "<u>Confirmation</u>" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

30.     "<u>Confirmation Date</u>" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

31.     "<u>Confirmation Hearing</u>" means the hearing before the Bankruptcy Court under section 1128 of the Bankruptcy Code to consider confirmation of the Plan, as the same may be continued from time to time.

32.     "<u>Confirmation Order</u>" means the order of the Bankruptcy Court confirming the Plan, as amended, supplemented, or modified, under, among others, section 1129 of the Bankruptcy Code, which shall be in form and substance reasonably satisfactory to the First Lien Agents and First Lien Lenders.

33.     "<u>Continuing Retail Agent</u>" means a retail agent (a) deemed critical by the First Lien Agents and First Lien Lenders to the continuing business and operations of the Reorganized Debtors and (b) who has entered into a Continuing Retail Agent Agreement with the Debtors prior to the Record Date.

34.     "<u>Continuing Retail Agent Agreement</u>" means an agreement between a Continuing Retail Agent and one or more of the Reorganized Debtors, pursuant to which such Continuing Retail Agent agrees and commits to continue its business relationship with such Reorganized Debtors on the terms set forth in such agreement, which agreement shall be in form and substance acceptable to the First Lien Agents and First Lien Lenders.

35.     "<u>Continuing Retail Agent Claim</u>" means the Claim of a Continuing Retail Agent, that has not already been paid in full pursuant to a Critical Vendor Order or by the assumption of an Executory Contract between a Debtor and such retail agent.

36.     "<u>Continuing Vendor</u>" means a vendor (a) deemed critical by the First Lien Agents and First Lien Lenders to the continuing business and operations of the Reorganized Debtors and (b) who has entered into a Continuing Vendor Agreement with the Debtors prior to the Record Date.

37.     "<u>Continuing Vendor Agreement</u>" means an agreement between a Continuing Vendor and one or more of the Reorganized Debtors, pursuant to which such Continuing Vendor agrees and commits to continue its business relationship with such Reorganized Debtors on the terms set forth in such agreement, which agreement shall be in form and substance acceptable to the First Lien Agent and First Lien Lenders.

38.     "<u>Continuing Vendor Claim</u>" means the Claim of a Continuing Vendor that has not already been paid in full pursuant to a Critical Vendor Order or by the assumption of an Executory Contract between a Debtor and such vendor.

39. "Critical Vendor Order" means an order of the Bankruptcy Court authorizing the Debtors to pay the prepetition Claim of a creditor (which may include one or more vendors or retail agents) the Debtors (with the consent of the First Lien Agents and First Lien Lenders) have determined is a "critical vendor."

40. "CSG" means Contego Services Group, LLC, a Delaware limited liability company, one of the above-captioned Debtors.

41. "Cure Claim" means a Claim based upon a monetary default, if any, by a Debtor under an Executory Contract or Unexpired Lease as of the time such contract or lease is assumed by such Debtor under sections 365 or 1123 of the Bankruptcy Code, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

42. "CWI" means CWIBenefits, Inc., a Delaware corporation, one of the above-captioned Debtors.

43. "Debtors" means PNI, Patriot Services, Captive, Care Management, CCM, CIS, CSG, CWI, Decision, Forza, Hospitality, PAS, PCS, PTS, Radar, Risk Consultants, Risk Services, TriGen, and Underwriters, including in their capacities as debtors and debtors in possession pursuant to Bankruptcy Code Sections 1107 and 1108.

44. "Decision" means Decision UR, LLC, LLC, a Delaware limited liability company, one of the above-captioned Debtors.

45. "DIP Agent" has the same meaning as in the DIP Order

46. "DIP Claim" means any claim resulting from or related to the "Obligations" as that term is defined in the DIP Credit Agreement.

47. "DIP Collateral" has the same meaning as in the DIP Order.

48. "DIP Credit Agreement" has the same meaning as in the DIP Order.

49. "DIP Facility" has the same meaning as in the DIP Order.

50. "DIP Lenders" has the same meaning as in the DIP Order.

51. "DIP Order" means that certain order of the Bankruptcy Court entered on March 6, 2018 [Docket No. 297], as amended, supplemented, or modified.

52. "Disclosure Statement" means the written disclosure statement that relates to the Plan, as amended, supplemented, or otherwise modified from time to time, and that is prepared, approved and distributed in accordance with Bankruptcy Code Section 1125 and Bankruptcy Rule 3018.

53. "Disputed" means any Claim or portion thereof which (a) was scheduled as "disputed", "contingent," or "unliquidated"; in the Schedules or (b) is subject to a filed Claims

Objection (or similar challenge to a Claim included in any timely filed adversary proceeding) prior to the Claim Objection Deadline that has not been resolved by settlement or Final Order.

54. "<u>Disputed Claims Reserve</u>" means the reserve fund created pursuant to Article VIII.A of the Plan.

55. "<u>Distribution Date</u>" means, subject to the provisions of Article VIII.A of the Plan, unless a later date is established by order of the Bankruptcy Court upon motion of the Debtors, the Plan Administrator, or any other party, the later of (a) the Effective Date or as soon as practicable thereafter, (b) the date such Claim becomes an Allowed Claim or as soon as practicable thereafter, or (c) as soon as practicable following a determination by the Plan Administrator that that there is sufficient Cash to make a distribution to the Holder of such Claim pursuant to the terms of this Plan.

56. "<u>Distribution Record Date</u>" means the record date for determining entitlement to receive distributions under the Plan on account of Allowed Claims, which date shall be the Business Day immediately preceding the Effective Date, at 5:00 p.m. prevailing Eastern time on such Business Day.

57. "<u>Effective Date</u>" means the first Business Day upon which all conditions to the consummation of the Plan as set forth in Article IX.B of the Plan have been satisfied or waived as provided in Article IX.C of the Plan, and is the date on which the Plan becomes effective.

58. "<u>Equity Interest</u>" means any "equity security" as defined in section 101(16) of the Bankruptcy Code, of a Debtor existing immediately prior to the Effective Date, or any other instrument evidencing an ownership interest in any of the Debtors, whether or not transferable, and any option, warrant, or right, contractual or otherwise, to acquire, sell, or subscribe for any such interest.

59. "<u>Equity Purchase Agreement</u>" means the agreement, pursuant to which the Holders of the First Lien Lender Claims have agreed to exchange a portion of the First Lien Lender Claims for the New Equity Interests, a copy of which will be filed with the Plan Supplement.

60. "<u>Exchange Act</u>" means the Securities and Exchange Act of 1934, as amended, and the rules and regulations promulgated thereunder.

61. "<u>Exculpated Parties</u>" means (a) the Committee and its members (solely in their capacities as such), (b) the Debtors and their current officers, directors, and employees (c) Conway MacKenzie Management Services, LLC, and its current officers and employees (d) the Debtors' chief restructuring officer, (e) the Debtors' independent director, and (f) with respect to the Persons identified in clauses (a) and (b), to the extent retained in the Chapter 11 Cases, their respective financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and all other retained professionals.

62. "<u>Executory Contract</u>" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

63.     "Exit Facility" means the new working capital facility entered into by the Reorganized Debtors on the Effective Date, which shall be sufficient (after taking into account Available Cash) to (a) repay in full all amounts outstanding under the DIP Facility, (b) make the Cash distributions contemplated by the Plan, (c) provide working capital for the ongoing business operations of the Reorganized Debtors, and (d) pay all related transaction costs and expenses.

64.     "Exit Lenders" means the lenders under the Exit Facility.

65.     "Estates" means the estates of the Debtors in the Chapter 11 Cases, created pursuant to Bankruptcy Code Section 541.

66.     "File," "Filed," or "Filing" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases, or, in the case of a Proof of Claim, filed with the Claims and Noticing Agent or evidenced by a Request for Payment.

67.     "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Chapter 11 Cases, or the docket of any such other court, the operation or effect of which has not been stayed, reversed, or amended, and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal, petition for certiorari, or seek review or rehearing or leave to appeal has expired and as to which no appeal, petition for certiorari or petition for review or rehearing was filed or, if filed, remains pending or as to which any right to appeal, petition for certiorari, reargument, or rehearing shall have been waived in writing by all Persons possessing such right, or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or from which reargument or rehearing was sought or certiorari has been denied, and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be filed with respect to such order shall not cause such order not to be a Final Order.

68.     "First Lien Agents" means Cerberus Business Finance, LLC, in its capacity as Collateral Agent and Administrative Agent under the First Lien Credit Agreement, and its respective successors and assigns.

69.     "First Lien Credit Agreement" means that certain Financing Agreement, dated as of November 9, 2016, by and among (a) PNI as borrower, and each of its subsidiaries party thereto, as guarantors, (b) the First Lien Lenders, and (c) the First Lien Agents (as amended, modified, or otherwise supplemented from time to time prior to the date hereof).

70.     "First Lien Credit Agreement Claims" means the Claims held by the First Lien Lenders pursuant to the First Lien Credit Agreement. The First Lien Credit Agreement Claims shall constitute Allowed Claims for purposes of the Plan.

71.     "First Lien Lender" means each lender under the First Lien Credit Agreement as identified on the signature pages thereto.

72.     "First Lien Lender Claims" means the First Lien Credit Agreement Claims and the Adequate Protection Claims.

73.     "First Lien Lender Deficiency Claims" means that portion of the First Lien Lender Claims that do not constitute Secured First Lien Lender Claims.

74.     "First Lien Obligations" means obligations arising under the First Lien Credit Agreement.

75.     "First Lien Required Lenders" means the Required Lenders under (and as defined in) the First Lien Credit Agreement.

76.     "Forza" means Forza Lien, LLC, a Delaware limited liability company, one of the above-captioned Debtors.

77.     "General Unsecured Claim" shall mean any Claim that is not (a) a DIP Claim, (b) an Administrative Expense Claim, (c) a Priority Tax Claim, (d) a Priority Claim, (e) a First Lien Lender Claim, (f) a 510(b) Claim, (g) an Other Secured Claim, or (h) an Intercompany Claim.

78.     "Governmental Unit" means a "governmental unit" as such term is defined in section 101(27) of the Bankruptcy Code.

79.      "Holder" means any Person holding a Claim or an Equity Interest.

80.     "Hospitality" means TriGen Hospitality Group, Inc., a Delaware corporation, one of the above-captioned Debtors.

81.     "Impaired" means, with respect to any Claim or Equity Interest, that such Claim or Equity Interest is impaired within the meaning of Bankruptcy Code Section 1124.

82.     "Insurance Policies" means any insurance policies of the Debtors.

83.     "Intercompany Claim" means a Claim of any Debtor against any other Debtor.

84.     "Lien" means a lien as such term is defined in Bankruptcy Code Section 101(37).

85.     "Litigation Claims" means all Causes of Action belonging to the Debtors' Estates.

86.     "Litigation Proceeds Waterfall" means the manner in which the proceeds of any recovery on account of the Litigation Claims are to be distributed as set forth in Article VI.D of the Plan.

87.     "Litigation Trust" means the trust established pursuant to the Litigation Trust Agreement.

88.     "Litigation Trust Agreement" means that certain agreement made by and among the Debtors, as depositor of the Litigation Claims and the Litigation Trustee, establishing and delineating the terms and conditions of the Litigation Trust, substantially in the form to be filed as part of the Plan Supplement.

89.     "<u>Litigation Trust Assets</u>" means all assets held from time to time by the Litigation Trust (including the Litigation Claims), the proceeds of which shall be distributed pursuant to the Litigation Proceeds Waterfall.

90.     "<u>Litigation Trust Beneficiaries</u>" means the Litigation Trust Lenders and Holders of Allowed First Lien Lender Deficiency Claims and Allowed General Unsecured Claims.

91.     "<u>Litigation Trust Budget</u>" means the quarterly budget of expenses for administering the Litigation Trust, which shall be approved by the Litigation Trust Oversight Committee.

92.     "<u>Litigation Trust Expenses</u>" means the fees and expenses of the Litigation Trust, including, without limitation, professional fees and expenses incurred in connection with the prosecution of the Litigation Claims.

93.     "<u>Litigation Trust Facility</u>" means a financing facility to be provided by the Litigation Trust Lenders, the proceeds of which will be used, subject to the Litigation Trust Budget, to satisfy reasonable costs and expenses related to the administration of the Litigation Trust and other obligations incurred or reasonably anticipated by the Litigation Trust in accordance with the Plan Documents, including, without limitation, fees and costs incurred in connection with (a) implementation of the Plan, (b) the liquidation of the Litigation Trust Assets (including prosecution of the Litigation Claims), and (c) compensation for the Litigation Trust, the Litigation Trust Oversight Committee and the employees, professionals, advisors and other agents of the Litigation Trust.

94.     "<u>Litigation Trust Interests</u>" means the interests to be issued to the Litigation Trust Lenders and Holders of Allowed First Lien Lender Deficiency Claims, and Allowed General Unsecured Claims evidencing their interests in the Litigation Trust and the right to receive certain distributions therefrom in accordance with the Litigation Proceeds Waterfall.

95.     "<u>Litigation Trust Lenders</u>" means the Reorganized Debtors or such other source of funding as may be approved by the Litigation Trust Oversight Committee.

96.     "<u>Litigation Trustee</u>" means the trustee appointed by the Litigation Trust Oversight Committee to administer the Litigation Trust.

97.     "<u>New Equity Interests</u>" means the newly issued Equity Interests in each of the Reorganized Debtors, which shall be distributed to the First Lien Lenders (or their designee) on account of a portion of the Secured First Lien Lender Claims pursuant to the Equity Purchase Agreement.

98.     "<u>Litigation Trust Oversight Committee</u>" means the committee formed pursuant to Article VI.C of the Plan to, among other things, select the Litigation Trustee and oversee the Litigation Trust, the work of the Litigation Trustee, and the prosecution of the Litigation Claims.

99.     "<u>New Term Loan Facility</u>" means the new term loan facility in the amount of $50 million (or such greater or lesser amount as may be agreed between the Holders of the Allowed

First Lien Secured Claims and the Reorganized Debtors) entered into by the Reorganized Debtors on the Effective Date.

100.    "Old Equity Interests" means, collectively, any common equity or membership interests in any of the Debtors outstanding prior to the Effective Date, including, without limitation, any stock option or other right to purchase the common stock of any of the Debtors, together with any warrant, conversion right, restricted stock unit, right of first refusal, subscription, commitment, agreement, or other right to acquire or receive any such common stock in any of the Debtors that have been fully exercised prior to the Effective Date.

101.    "Other Secured Claim" means any Secured Claim other than a Secured First Lien Lender Claim.

102.    "PAS" means Patriot Audit Services, LLC, a Delaware limited liability company, one of the above-captioned Debtors.

103.    "Patriot Services" means Patriot Services, LLC, a Delaware limited liability company, one of the above-captioned Debtors.

104.    "PCS" means Patriot Claim Services, Inc., a Delaware corporation, one of the above-captioned Debtors.

105.    "Person" means any person, individual, firm, partnership, corporation, trust, association, company, limited liability company, joint stock company, joint venture, governmental unit, or other Person or enterprise.

106.    "Petition Date" means January 30, 2018.

107.    "Plan" means this plan proposed by the Debtors under Chapter 11 of the Bankruptcy Code, including all exhibits, addenda, schedules or other attachments hereto, and the Plan Supplement, each of which is incorporated herein by reference, as may be amended, modified, or supplemented from time.

108.    "Plan Administrator" means the Person designated as the Litigation Trustee by the Litigation Trust Oversight Committee in accordance with the Litigation Trust Agreement.

109.    "Plan Documents" means the agreements, instruments, and documents to be executed, delivered, assumed, and/or performed in conjunction with the consummation of the Plan on and after the Effective Date, including, without limitation, any other instruments and documents listed in the Plan Supplement,

110.    "Plan Supplement" means the supplement to the Plan, which may be filed in parts pursuant to Article V.J of the Plan, containing, without limitation, (a) the Equity Purchase Agreement, (b) the Litigation Trust Agreement; (c) the Assumption Schedule; (d) documentation for the Exit Facility; (e) documentation for the New Term Loan Facility; (f) documentation for the Litigation Trust Facility, and (g) the Reorganized Debtors Governing Documents, each in substantially final form.

111. "PNI" means Patriot National, Inc. a Delaware corporation, one of the above-captioned Debtors.

112. "Priority Claim" means a Claim against the Debtors entitled to priority pursuant to Bankruptcy Code Section 507(a), other than a Priority Tax Claim or an Administrative Expense Claim.

113. "Priority Tax Claim" means a Claim that is entitled to priority pursuant to Bankruptcy Code Section 507(a)(8).

114. "Professional" means any Person: (a) employed in the Chapter 11 Cases under a Final Order in accordance with sections 327, 328, or 1103 of the Bankruptcy Code and compensated for services rendered prior to or on the Effective Date under sections 327, 328, 329, 330, or 331 of the Bankruptcy Code or (b) for which the Bankruptcy Court has allowed compensation and reimbursement of expenses under section 503(b)(4) of the Bankruptcy Code.

115. "Professional Fee Claim" means a Claim of a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred from and after the Petition Date and prior to and including the Effective Date, subject to any limitations imposed by order of the Bankruptcy Court.

116. "Proof of Claim" means a Claim Filed in accordance with the Bar Date Order.

117. "Pro Rata" means, at any time, as applicable, the proportion that (a) the amount of a Claim in a particular Class or Classes (or portions thereof, as applicable) bears to the aggregate amount of all Claims (including Disputed Claims), as applicable, in such Class or Classes, (b) the amount of an Allowed Claim in a particular Class or Classes (or portions thereof, as applicable) bears to the aggregate amount of all Allowed Claims in such Class or Classes, or (c) the amount of an Allowed Claim in a particular Class or Classes (or portions thereof, as applicable) bears to the aggregate amount of all Claims (including Disputed Claims), as applicable, in such Class or Classes.

118. "PTS" means Patriot Technology Solutions, LLC, a Delaware limited liability company, one of the above-captioned Debtors.

119. "Radar" means Radar Post-Closing Holding Company, Inc. (f/k/a Global HR Research, Inc.), a Delaware corporation, one of the above-captioned Debtors.

120. "Record Date" means the date set by the Bankruptcy Court for the purposes of establishing which eligible holders of Claim are entitled to vote on the Plan.

121. "Rejection Damages Claim" means a Claim arising from the Debtors' rejection of a contract or lease, which Claim shall be limited in amount by any applicable provision of the Bankruptcy Code, including, without limitation, Bankruptcy Code Section 502, subsection 502(b)(6) thereof with respect to a Claim of a lessor for damages resulting from the rejection of a lease of real property, subsection 502(b)(7) thereof with respect to a Claim of an employee for damages resulting from the rejection of an employment contract, or any other subsection thereof.

122. "Released Parties" means (a) the Debtors' and the Reorganized Debtors' professionals that were retained in the Chapter 11 Cases, including the Debtors' chief restructuring officer, attorneys, financial advisors, investment bankers, consultants, representatives and other professionals, (b) the First Lien Agents, (c) the First Lien Lenders, (d) the DIP Agent, (e) the DIP Lenders, (f) any professionals of the DIP Agent or DIP Lenders, (g) the members of the Committee, but only in their capacity as such, (h) Conway MacKenzie Management Services, LLC, (i) the Debtors' independent director, and (j) with respect to the Persons identified in clauses (b) through (e), their respective directors, officers, principals, shareholders, partners, employees, members, participants, agents, representatives, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, management companies, fund advisors, other professionals, advisory board members, subsidiaries, affiliates, managed accounts or funds, other advisors, predecessors, successors or assigns, in each case in their capacity as such.

123. "Reorganized" means, (a) when used in reference to a particular Debtor, such Debtor on and after the Effective Date, and (b) when used in reference to the Debtors collectively, then all of the Debtors on and after the Effective Date.

124. "Reorganized Debtor Governing Documents" means the amended and restated charter, bylaws and other organizational documents of each of the Debtors consistent with section 1123(a)(6) of the Bankruptcy Code and in form and substance satisfactory to the First Lien Agents and the First Lien Lenders.

125. "Request for Payment" means a request for payment of an Administrative Expense Claim filed with the Bankruptcy Court in connection with the Chapter 11 Cases.

126. "Restructuring Support Agreement" means that certain agreement, dated as of November 27, 2017, between the Debtors, the First Lien Agents and the First Lien Lenders, evidencing support of the Plan and governing the conduct of the parties thereto through the Effective Date.

127. "Restructuring Transactions" means, collectively, those mergers, consolidations, conversions, restructurings, dispositions, liquidations or dissolutions that the Debtors determine to be necessary or appropriate to effect an organizational restructuring of their business or otherwise to simplify the overall organizational structure of the Reorganized Debtors, as described in greater detail in Article V.C.

128. "Risk Consultants" means Patriot Risk Consultants, LLC, a Delaware limited liability company, one of the above-captioned Debtors.

129. "Risk Services" means Patriot Risk Services, Inc., a Delaware corporation, one of the above-captioned Debtors.

130. "Schedules" means the Statements of Financial Affairs and Schedules of Assets and Liabilities filed by the Debtors with the Bankruptcy Court in the Chapter 11 Cases under Bankruptcy Rule 1007, as such Statements of Financial Affairs and Schedules of Assets and Liabilities have been or may be amended or supplemented from time to time.

131.  "Secured Claim" means a Claim (a) that is secured by a Lien on property in which the Estates have an interest, which lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, or a Claim that is subject to a valid right of the creditor of setoff against amounts owed to the Debtors; (b) to the extent of the value of the Holder's interest in the Estates' interest in such property or to the extent of the amount subject to a valid right of setoff, as applicable; and (c) the amount of which (i) is undisputed by the Debtors or (ii) if disputed by the Debtors, such dispute is settled by written agreement between the Debtors or the Plan Administrator and the Holder of such Claim or determined, resolved, or adjudicated by Final Order.

132.  "Secured First Lien Lender Claim" means that portion of the First Lien Lender Claims that constitutes a Secured Claim.

133.  "Securities Act" means the Securities Act of 1933, as amended and the rules and regulations promulgated thereunder.

134.  "Securities Exchange Act" means the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78nn, as now in effect and hereafter amended, or any similar federal, state, or local law.

135.  ""Taxes" means (a) any taxes and assessments imposed by any Governmental Unit, including net income, gross income, profits, gross receipts, license, employment, stamp, occupation, premium, alternative or add-on minimum, ad valorem, real property, personal property, transfer, real property transfer, value added, sales, use, environmental (including taxes under Internal Revenue Service Code Section 59A), customs, duties, capital stock, franchise, excise, withholding, social security (or similar), unemployment, disability, payroll, fuel, excess profits, windfall profit, severance, estimated or other tax, including any interest, penalty or addition thereto, whether disputed or not, and any expenses incurred in connection with the determination, settlement or litigation of the Tax liability, (b) any obligations under any agreements or arrangements with respect to Taxes described in clause (a) above, and (c) any transferee liability in respect of Taxes described in clauses (a) and (b) above or payable by reason of assumption, transferee liability, operation of Law, Treasury Regulation Section 1.1502-6(a) (or any predecessor or successor thereof or any analogous or similar provision under Law) or otherwise.

136.  "Treasury Regulations" means the Regulations of the Treasury Department of the United States issued pursuant to the Internal Revenue Code of 1986, as amended.

137.  "TriGen" means TriGen Insurance Solutions, Inc., a Delaware corporation, one of the above-captioned Debtors.

138.  "Underwriters" means Patriot Underwriters, Inc., a Delaware corporation, one of the above-captioned Debtors.

139.  "Unexpired Lease" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

140.  "Unimpaired" means, with respect to any Claim, that such Claim is not impaired within the meaning of Bankruptcy Code Section 1124.

141. "U.S. Trustee" means the Office of the United States Trustee for the District of Delaware.

142. "U.S. Trustee Fees" means fees owing to the U.S. Trustee arising under 28 U.S.C. § 1930, and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

## B. Rules of Construction

1. For purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms used in the Plan and not otherwise defined in the Plan shall have the meanings ascribed to them in Article I.A of the Plan. Any capitalized term used in the Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

2. Whenever the context requires, terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

3. Any reference in the Plan to (a) a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, or as otherwise specified in this Plan, and (b) an existing document, exhibit, or other agreement means such document, exhibit, or other agreement as it may have been, or may hereafter be, amended, modified, or supplemented from time to time, as the case may be, and as in effect at any relevant point.

4. Unless otherwise specified, all references in the Plan to sections, articles, schedules, and exhibits are references to sections, articles, schedules, and exhibits of or to the Plan.

5. The words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan.

6. Captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.

7. The rules of construction set forth in Bankruptcy Code Section 102 and in the Bankruptcy Rules shall apply.

8. References to a specific article, section, or subsection of any statute, rule, or regulation expressly referenced herein shall, unless otherwise specified, include any amendments to or successor provisions of such article, section, or subsection.

9. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

10.     All references in the Plan to monetary figures refer to the lawful currency of the United States of America.

## C.     Governing Law

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan will be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof other than section 5-1401 and section 5-1402 of the New York General Obligations Law.

## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

## A.     Introduction

Except for Claims addressed in Article III.A, all Claims and Equity Interests are classified in accordance with section 1122 of the Bankruptcy Code.  A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Equity Interest qualifies within the description of such other Classes.  A Claim or Equity Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Equity Interest is an Allowed Claim or Allowed Equity Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.  In no event shall any Holder of an Allowed Claim be entitled to receive payments under the Plan that, in the aggregate, exceed the Allowed amount of such Holder's Claim.

## B.     Unclassified Claims

In accordance with Bankruptcy Code Section 1123(a)(1), DIP Claims, Administrative Expense Claims, Priority Tax Claims, and U.S. Trustee Fees have not been classified.

## C.     Classified Claims and Equity Interests

The following table assigns each Class a number designation for purposes of identifying each separate Class, a description of whether that Class is Impaired, and the voting rights of each Class:

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| 1A | Secured First Lien Lender Claims | Impaired | Yes |
| 1B | First Lien Lender Deficiency Claims | Impaired | Yes |
| 2 | Other Secured Claims | Unimpaired | No (presumed to accept) |
| 3 | Priority Claims | Unimpaired | No (presumed to accept) |
| 4 | Continuing Vendor Claims and Continuing Retail Agent Claims | Impaired | Yes |
| 5 | General Unsecured Claims | Impaired | Yes |
| 6 | 510(b) Claims | Impaired | No (deemed to reject) |
| 7 | Intercompany Claims | Impaired | No (deemed to reject) |
| 8 | Equity Interests | Impaired | No (deemed to reject) |

## ARTICLE III.
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

A.    **Unclassified Claims**

1.    **DIP Claims**

The DIP Claims shall be deemed satisfied if the Holder of any Allowed DIP Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed DIP Claim on the Effective Date (A) Cash equal to the unpaid portion of such Allowed DIP Claim or (B) such different treatment as to which such Holder, the Debtors, and the First Lien Agents shall have agreed upon in writing.

2.    **Administrative Expense Claims**

With respect to each Allowed Administrative Expense Claim, except as otherwise provided for in Article XI.A of the Plan or unless the Holder of such Allowed Administrative Expense Claim agrees in writing to a different treatment with the Debtors and First Lien Agents, the Holder of each such Allowed Administrative Expense Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Administrative Expense Claim, Cash equal to the unpaid portion of such Allowed Administrative Expense Claim (A) if the Administrative Expense Claim is Allowed before the Effective Date, on the Effective Date, or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Expense Claim is due, or as soon as practicable thereafter); or (b) if the Administrative Expense Claim is Allowed on or after the Effective Date, on the date such Administrative Claim is Allowed, or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due, or as soon as practicable thereafter); provided, however, that Allowed Administrative Expense Claims other than Professional Claims that arise in the ordinary course of the Debtors' business shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions. On or after the Effective Date, the Reorganized Debtors may settle and pay any Administrative Expense Claim in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

3.      **Priority Tax Claims**

Each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, as determined by the Debtors and the First Lien Agents, either (a) on the Effective Date, Cash equal to the due and unpaid portion of such Allowed Priority Tax Claim, (b) treatment in a manner consistent with Bankruptcy Code Section 1129(a)(9)(C), or (c) such different treatment as to which such Holder, the Debtors and the First Lien Agents shall have agreed upon in writing.

4.      **U.S. Trustee Fees**

On the Effective Date or as soon as practicable thereafter, the Litigation Trust shall pay all U.S. Trustee Fees that are due and owing on of the Effective Date. For the avoidance of doubt, nothing in the Plan shall release the Reorganized Debtors or the Litigation Trust from the obligation to pay all U.S. Trustee Fees arising from and after the Effective Date before a Final Order is entered by the Bankruptcy Court concluding or closing the Chapter 11 Cases.

B.      **Treatment of Claims and Equity Interests**

1.      **Class 1A: Secured First Lien Lender Claims**

a)      <u>Classification</u>:  Class 1A consists of all Secured First Lien Lender Claims. The Secured First Lien Lender Claims shall constitute Allowed Claims for purposes of the Plan.

b)      <u>Treatment</u>:  On the Effective Date, each Holder of an Allowed Secured First Lien Lender Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Secured First Lien Lender Claim its Pro Rata share of: (i) the New Equity Interests in accordance with the Equity Purchase Agreement and (ii) the New Term Loan Facility.  All Holders of Secured First Lien Lender Claims have committed to vote to accept the Plan upon the terms and conditions set forth in the Restructuring Support Agreement.

2.      **Class 1B: First Lien Lender Deficiency Claims**

a)      <u>Classification</u>:  Class 1B consists of all First Lien Lender Deficiency Claims.  The First Lien Lender Deficiency Claims shall constitute Allowed Claims for purposes of the Plan.

b)      <u>Treatment</u>:  From and after the Effective Date, each Holder of an Allowed First Lien Lender Deficiency Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed First Lien Lender Deficiency Claim its Pro Rata share of the Litigation Trust Interests in the Litigation Trust distributable to Holders of First Lien Lender Deficiency Claims representing a right to receive distributions from the Litigation Trust in accordance with the Litigation Proceeds Waterfall.  All Holders of First Lien Lender Deficiency Claims have committed to vote to accept the Plan upon the terms and conditions set forth in the Restructuring Support Agreement.

3.      **Class 2: Other Secured Claims**

   a)      <u>Classification</u>:  Class 2 consists of all Other Secured Claims.

   b)      <u>Treatment</u>:  On the Effective Date, except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, each Holder of an Allowed Other Secured Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Other Secured Claim, at the option of the Debtors and the First Lien Agents: (1) Cash equal to the amount of such Allowed Other Secured Claim on or as soon as practicable after the later of the (x) the Effective Date and (y) the date that such Other Secured Claim becomes Allowed; (2) reinstatement of such Other Secured Claim; or (3) the property securing such Allowed Other Secured Claim, with any deficiency to result in a Class 5 General Unsecured Claim.

4.      **Class 3: Priority Claims**

   a)      <u>Classification</u>:  Class 3 consists of all Priority Claims.

   b)      <u>Treatment</u>:   On the Effective Date (or such later date on which such Priority Claim is Allowed), each Holder of an Allowed Priority Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Claim, either (a) Cash equal to the unpaid portion of such Allowed Priority Claim or (b) such different treatment as to which such Holder, the Debtors and the First Lien Agents shall have agreed upon in writing.

5.      **Class 4:  Continuing Vendor Claims and Continuing Retail Agent Claims**

   a)      <u>Classification</u>:   Class 4 consists of all Continuing Vendor Claims and Continuing Retail Agent Claims.

   b)      <u>Treatment</u>:  Holders of Continuing Vendor Claims and Continuing Retail Agent Claims will be paid in full in Cash either (a) in the ordinary course of business in accordance with any invoice, contract or other agreement governing the terms of such payment or (b) if such amounts are overdue as of the Effective Date, in two equal installments with the first such installment being made on the Effective Date and the second being made on the date that is the six month anniversary of the Effective Date assuming compliance by the Holder of the Continuing Vendor Claim or Continuing Retail Agent Claim with its Continuing Vendor Agreement or Continuing Retail Agent Agreement, as applicable. If the Holder of a Continuing Vendor Claim or Continuing Retail Agent Claim fails to comply with its applicable Continuing Vendor Agreement or Continuing Retail Agent Agreement, distributions, if any, will be governed by the terms of the applicable Continuing Vendor Agreement or Continuing Retail Agent Agreement.

6.      **Class 5: General Unsecured Claims**

   a)      <u>Classification</u>:  Class 5 consists of all General Unsecured Claims.

b)     Treatment:  Each Holder of an Allowed General Unsecured Claim against any of the Debtors shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such General Unsecured Claim, its Pro Rata share of the Litigation Trust Interests in the Litigation Trust distributable to Holders of Allowed General Unsecured Claims representing a right to receive distributions from the Litigation Trust in accordance with the Litigation Proceeds Waterfall.

7.     **Class 6:  510(b) Claims**

a)     Classification:  Class 6 consists of all 510(b) Claims.

b)     Treatment:  Each Holder of a 510(b) Claim shall not receive or retain any distribution under the Plan on account of such 510(b) Claim, and all such 510(b) Claims shall be eliminated and discharged.

8.     **Class 7: Intercompany Claims**

a)     Classification:  Class 7 consists of all Intercompany Claims.

b)     Treatment:  Each Holder of an Intercompany Claim shall not receive or retain any distribution under the Plan on account of such Intercompany Claim, and all such Intercompany Claims shall be eliminated and extinguished, *provided however*, that the Reorganized Debtors may determine to preserve Intercompany Claims to the extent extinguishment would result in adverse tax consequences.

9.     **Class 8: Old Equity Interests**

a)     Classification:  Class 8 consists of all Old Equity Interests.

b)     Treatment:  Holders of Old Equity Interests in each of the Debtors shall not receive or retain any distribution under the Plan on account of their Old Equity Interests, and all Old Equity Interests shall be cancelled as set forth in Article V.E of the Plan.

C.     **Reservation of Rights Regarding Claims and Equity Interests**

Except as otherwise explicitly provided in the Plan, nothing shall affect the Debtors' rights and defenses, both legal and equitable, with respect to any Claims or Equity Interests, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.  Similarly, nothing herein shall prejudice or be deemed to prejudice creditors' rights of setoff or recoupment.

# ARTICLE IV.
## ACCEPTANCE OR REJECTION OF THE PLAN

A.      **Impaired Classes Entitled to Vote**

Holders of Claims in the Impaired voting classes of Claims are each entitled to vote as a Class to accept or reject the Plan.  Accordingly, the votes of Holders of Claims in Classes 1A, 1B, 4, and 5 and shall be solicited with respect to the Plan.

B.      **Acceptance by an Impaired Class**

In accordance with Bankruptcy Code Section 1126(c), and except as provided in Bankruptcy Code Section 1126(e), the Impaired Classes of Claims shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.  If holders of Claims in a particular Impaired Class of Claims were given the opportunity to vote to accept or reject the Plan, but no holders of Claims in such Impaired Class of Claims voted to accept or reject the Plan, then such Class of Claims shall be deemed to have accepted the Plan.

C.      **Presumed Acceptances by Unimpaired Classes**

Claims in Classes 2 and 3 are Unimpaired under the Plan.  Under Bankruptcy Code Section 1126(f), Holders of such Unimpaired Claims are conclusively presumed to have accepted the Plan, and the votes of the Holders of such Unimpaired Claim shall not be solicited.

D.      **Presumed Rejection by Impaired Voting Class of Claims and Equity Interests**

510(b) Claims in Class 6, Intercompany Claims in Class 7 and Old Equity Interests in Class 8 are Impaired under the Plan and not entitled to a distribution under the Plan.  Under Bankruptcy Code Section 1126(g), Holders of such Impaired Claims and Equity Interests are conclusively presumed to have rejected the Plan, and the votes of Holders of such Impaired Claim and Equity Interests shall not be solicited.

E.      **Elimination of Vacant Classes**

Any Class of Claims or Equity Interests that does not have a holder of an Allowed Claim or Allowed Equity Interest or a Claim or Equity Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan solely for purposes of (i) voting to accept or reject the Plan and (ii) determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

F.      **Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code**

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied.  If any Impaired Class of Claims entitled to vote shall not accept the Plan by the requisite statutory majority required by section 1126(c) of the Bankruptcy Code, the Debtors reserve the right to (i) re-classify any Claim or Equity Interest, including re-classifying any Impaired Claim or Equity Interest as Unimpaired,

(ii) amend the Plan in accordance with in accordance with Article XI.L hereof, and/or (iii) undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code. To the extent necessary, the Debtors hereby request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims.

## ARTICLE V.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A. **Issuance of New Equity Interests**

On the Effective Date, each of the Reorganized Debtors shall issue or execute and deliver to the Holders of Allowed Secured First Lien Lender Claims (or their designee) its respective New Equity Interests in accordance with the applicable Reorganized Debtor Governing Documents. All such New Equity Interests issued pursuant to the Plan shall be duly authorized, validly issued, and, if applicable, fully paid and non-assessable.

The issuance or execution and delivery of the New Equity Interests and the Reorganized Debtor Governing Documents, as applicable, and the distribution thereof under this Plan shall be exempt from registration under applicable securities laws pursuant to Bankruptcy Code Section 1145(a) and/or any other applicable exemptions.

Without limiting the effect of Bankruptcy Code section 1145, all documents, agreements, and instruments entered into and delivered on or as of the Effective Date contemplated by or in furtherance of this Plan shall become and shall remain effective and binding in accordance with their respective terms and conditions upon the parties thereto, in each case, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person (other than as expressly required by such applicable agreement).

The Reorganized Debtors shall not be (1) obligated to list the New Equity Interests on a national securities exchange, (2) reporting companies under the Securities Exchange Act, (3) required to file reports with the Securities and Exchange Commission or any other Person or party, or (4) required to file monthly operating reports, or any other type of report, with the Bankruptcy Court after the Effective Date.

B. **Continued Corporate Existence and Vesting of Assets in the Reorganized Debtors**

Except as otherwise provided herein (including with respect to the Restructuring Transactions described in Article V.C): (1) subject to the Restructuring Transactions, each of the Debtors shall, as a Reorganized Debtor, continue to exist after the Effective Date as a separate legal Person, with all of the powers of such a legal Person under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger, conversion, dissolution or otherwise) under applicable law; and (2) on the Effective Date, all property of each Debtor's Estate and any property acquired by a Debtor or Reorganized Debtor under this Plan (other than any Litigation Trust Assets), shall vest, subject to the Restructuring Transactions, in the applicable Reorganized Debtors, free and clear of all Claims, liens, charges, other encumbrances, Equity Interests, and other interests (except for (x) any liens granted to secure the

Exit Facility and New Term Loan Facility and any rights of any of the parties under the documents related thereto, (y) any rights of any of the parties under any of the Reorganized Debtors Governing Documents, or (z) any other rights specifically granted pursuant to the Plan) without further notice to, or action, order, or approval of, the Bankruptcy Court or any other Person.

On and after the Effective Date, each Reorganized Debtor may operate its business and may use, acquire and dispose of property without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan or the Confirmation Order. Without limiting the foregoing, each Reorganized Debtor may pay the charges that it incurs on or after the Effective Date for appropriate Professionals' fees, disbursements, expenses, or related support services (including fees relating to the preparation of Professional fee applications) without application to, or the approval of, the Bankruptcy Court.

In accordance with section 1129(a)(5) of the Bankruptcy Code, to the extent not already disclosed, the Debtors shall disclose the following at, or prior to, the Confirmation Hearing: (1) the identities and affiliations of any Person proposed to serve as a director or officer of the Reorganized Debtors and (2) the nature of compensation for any officer employed or retained by the Reorganized Debtors who is an "insider" under section 101(31) of the Bankruptcy Code.

## C. **Restructuring Transactions**

On or after the Effective Date, the Reorganized Debtors shall undertake such Restructuring Transactions as may be necessary or appropriate to effect, in accordance with applicable non-bankruptcy law, a restructuring of the Debtors' or Reorganized Debtors' respective business or simplify the overall organizational structure of the Reorganized Debtors, all to the extent not inconsistent with any other terms of this Plan, including any such Restructuring Transactions described in any Restructuring Transactions documents.

Without limiting the foregoing, unless otherwise provided by the terms of a Restructuring Transaction, all such Restructuring Transactions will be deemed to occur on the Effective Date and may include one or more mergers, conversions, or consolidations, restructurings, dispositions, liquidations or dissolutions, as may be determined by the Debtors or the Reorganized Debtors to be necessary or appropriate.

The actions taken by the Debtors or the Reorganized Debtors, as applicable, to effect the Restructuring Transactions may include: (i) the execution, delivery, adoption, and/or amendment of appropriate agreements or other documents of merger, conversion, consolidation, restructuring, disposition, liquidation or dissolution containing terms that are consistent with the terms of this Plan, the Restructuring Transactions documents, and any ancillary documents and that satisfy the applicable requirements of applicable state law; (ii) the execution, delivery, adoption, and/or amendment of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of this Plan, the Disclosure Statement, the Restructuring Support Agreement, the Restructuring Transactions documents, and any ancillary documents; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, formation, conversion,

merger, consolidation, dissolution or change in corporate form pursuant to applicable state law; (iv) the cancellation of shares, membership interests and warrants; and (v) all other actions that the Debtors or the Reorganized Debtors, as applicable, determine to be necessary, desirable, or appropriate to implement, effectuate, and consummate this Plan or the Restructuring Transactions contemplated hereby, including making filings or recordings that may be required by applicable state law in connection with the Restructuring Transactions.

D.     **Funding of Distributions under the Plan**

1.     **Sources of Funds**

Distributions under the Plan shall be made from Available Cash, the proceeds of the Exit Facility and proceeds from the Litigation Trust pursuant to the Litigation Proceeds Waterfall.

2.     **Exit Facility**

On the Effective Date, the Reorganized Debtors will enter into the Exit Facility with the Exit Lenders.  The Exit Facility shall be secured by a valid, enforceable, fully perfected first priority lien on and security interest in substantially all of the assets of the Reorganized Debtors. Proceeds of the Exit Facility will be used to fund certain Cash distributions under the Plan (including repayment of the DIP Facility), and will also be used to fund the ongoing business operations of the Reorganized Debtors.

3.     **New Term Loan Facility**

On the Effective Date, the Reorganized Debtors will enter into the New Term Loan Facility, which shall be issued Pro Rata to Holders of Secured First Lien Lender Claims.  The Term Loan Facility shall be secured by a valid, enforceable, fully perfected lien on and security interest in substantially all of the assets of the Reorganized Debtors.

4.     **Litigation Trust Facility**

Funding for the Litigation Trust and the prosecution of the Litigation Claims shall be provided through the Litigation Trust Facility made by the Litigation Trust Lenders.

E.     **Cancellation of Old Equity Interests and Other Agreements**

On the Effective Date, except as otherwise specifically provided for in the Plan:  (1) the Old Equity Interests and all obligations of the Debtors under the DIP Facility, the First Lien Credit Agreement, and any other certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of, or ownership interest in, the Debtors giving rise to any Claim or Equity Interest (except such certificates, Equity Interests, notes, or other instruments or documents evidencing indebtedness or obligations of the Debtors that may be reinstated pursuant to the Plan), shall be deemed automatically cancelled and surrendered and shall be of no further force solely as to the Debtors (and any obligation of the Debtors to pay any franchise or similar type taxes on account of such obligations shall be discharged), and the Reorganized Debtors shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors

pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtors that are specifically reinstated pursuant to the Plan) shall be released and discharged; provided, however, that any agreement that governs the rights of the Holder of a Claim or Equity Interest shall continue in effect solely for the purposes of allowing such Holders to receive distributions under the Plan; provided, further, that (x) the preceding proviso shall not affect the discharge of Claims or Equity Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan or result in any expense or liability to the Reorganized Debtors and (y) the terms and provisions of the Plan shall modify any existing contract or agreement that would in any way be inconsistent with distributions under the Plan.

Except as otherwise provided herein or in a Final Order, all Liens securing the Allowed First Lien Lender Claims under the First Lien Credit Agreement and the DIP Liens under the DIP Credit Agreement shall not be released, impaired, impacted, or otherwise affected in any way prior to the payment or satisfaction of all applicable Allowed Secured First Lien Lender Claims and DIP Claims in accordance with the terms of the Plan, at which time such Liens shall be terminated.

## F.    Corporate Action; Effectuating Documents

1.     On the Effective Date, all actions contemplated by the Plan shall be authorized and approved in all respects pursuant to the Plan.  All matters provided for herein involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the stockholders or directors of the Debtors, and shall be fully authorized pursuant to Section 303 of the Delaware General Corporation Law and other applicable law.

2.     Any director, chief restructuring officer, chief executive officer, president, chief financial officer, senior vice president, general counsel, or other appropriate officer of the Debtors shall be authorized to execute, deliver, file, or record the documents included in the Plan Supplement and such other contracts, instruments, releases, indentures, and other agreements or documents (including, without limitation, the Equity Purchase Agreement), and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  Any director, secretary or assistant secretary of the Debtors shall be authorized to certify or attest to any of the foregoing actions.  All of the foregoing is authorized without the need for any required approvals, authorizations, or consents except for express consents required under the Plan.

## G.    Plan Administrator

On the Effective Date, the Plan Administrator shall have all the rights and powers to implement the provisions of the Plan pertaining to the Plan Administrator, including, without limitation, the right to (a) effect all actions and execute all agreements, instruments and other

documents necessary to implement the provisions of the Plan; (b) make distributions as contemplated in the Plan, (c) establish and administer any necessary reserves for Disputed Claims that may be required; and (d) object to Disputed Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court such Disputed Claims. For the avoidance of doubt, the Plan Administrator shall have no obligation to object to or dispute (or expend funds to object to or dispute) any Claim where, in the Plan Administrator's sole judgment, the cost of such objection or dispute is not warranted in light of the potential incremental benefit to the remaining Holders of Claims. The Litigation Trustee shall serve as the initial Plan Administrator. The reasonable costs and expenses incurred by the Plan Administrator in performing the duties set forth in the Plan shall be paid by the Litigation Trust, subject to the approval of the Litigation Trust Oversight Committee.

## H.    **Equity Purchase Agreement**

On the Effective Date, the transactions contemplated by the Equity Purchase Agreement shall be consummated. For the avoidance of doubt, the Litigation Trust Assets shall not be purchased pursuant to the Equity Purchase Agreement and shall instead vest in the Litigation Trust pursuant to Article VI.B of the Plan.

In the event a third party offers to acquire the New Equity Interests of the Reorganized Debtors and the terms of such offer are acceptable to the First Lien Agents and the First Lien Lenders, such third party may be substituted for the First Lien Agents and the First Lien Lenders as the acquirer of such New Equity Interests under the Equity Purchase Agreement.

## I.    **Exemption from Certain Transfer Taxes**

Pursuant to Bankruptcy Code Section 1146(a), any transfers from the Debtors to the Litigation Trust, the Reorganized Debtors or any other Person pursuant to, in contemplation of, or in connection with the Plan, and the issuance, transfer, or exchange of any debt, equity securities or other interest under or in connection with the Plan, shall not be taxed under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax, sales or use tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or government assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to all documents necessary to evidence and implement distributions under the Plan, including the documents contained in the Plan Supplement and all documents necessary to evidence and implement any of the transactions and actions described in the Plan or the Plan Supplement.

## J.    **Plan Supplement**

The Plan Supplement may be filed in parts either contemporaneously with the filing of the Plan or from time to time thereafter, but in no event later than fourteen (14) days prior to the deadline established by the Bankruptcy Court for objecting to Confirmation of the Plan. After filing, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal business hours. The Plan Supplement also will be available for inspection on

(a) the website maintained by the Claims and Noticing Agent: https://cases.primeclerk.com/PatNat. In addition, Holders of Claims or Equity Interests may obtain a copy of any document included in the Plan Supplement upon written request in accordance with Article XI.P of the Plan.

## K.    Committee

Upon the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to (a) obligations arising under confidentiality agreements which shall remain in full force and effect according to their terms; (b) applications for Professional Fee Claims filed by or on behalf of the Committee; or (c) any motions or other actions seeking enforcement or implementation of the provisions of this Plan, the Confirmation Order, or the Litigation Trust Agreement. Professionals retained by the Committee shall be entitled to reasonable compensation for services rendered in connection with the matters identified in clauses (b) and (c) after the Effective Date.

## L.    Preservation of Causes of Action

Unless any Causes of Action are expressly waived, relinquished, exculpated, released, compromised, settled, transferred, or assigned under the Plan, or otherwise resolved by a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Litigation Trust shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date through the Effective Date, and no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action as a consequence of Confirmation. The Litigation Trust may pursue the Causes of Action, as appropriate, in accordance with the best interests of the Litigation Trust. Subject to Article VI.A.2, the Litigation Trust shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against such Person as any indication that the Litigation Trust will not pursue any and all available Causes of Action against such Person. The Litigation Trust reserves all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plan. For the avoidance of doubt, the Plan does not release any Causes of Action that the Debtors have or may have now or in the future against any Person other than the Released Parties and the Exculpated Parties (and only in their capacity as Released Parties and Exculpated Parties) to the extent set forth in the Plan. The Litigation Trust is deemed the representative of the Estates for the purpose of prosecuting, as applicable, the Litigation Claims and any objections to Claims pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

## ARTICLE VI.
## LITIGATION TRUST

A.    **The Litigation Trustee**

1.    **Appointment of the Litigation Trustee**

The Litigation Trustee shall be selected by the persons identified who will initially comprise the Litigation Trust Oversight Committee.  Pursuant to the Litigation Trust Agreement, the selection of the Litigation Trustee will be determined by a majority vote of the Litigation Trust Oversight Committee.  The identity of the Litigation Trustee shall be disclosed prior to the Confirmation Hearing in accordance with section 1129(a)(5) of the Bankruptcy Code.  The Litigation Trustee will be compensated by the Litigation Trust.

2.    **Powers of the Litigation Trustee**

The Litigation Trustee shall be a representative of the Debtors' Estates and shall, subject to the terms of the Litigation Trust Agreement, have the power to make all decisions with respect to the prosecution of the Litigation Claims; provided, however, that the following actions will require prior written approval of a majority of the members of the Litigation Trust Oversight Committee: (a) the selection of any successor Litigation Trustee; (b) any decisions related to the Litigation Trust Facility, including any amendment, replacement or alternative thereto or any determination to draw funds under the Litigation Trust Facility; (c) the incurrence by the Litigation Trust of additional indebtedness to fund the prosecution of the Litigation Claims in excess of the Litigation Trust Facility; (d) the retention of counsel and other professionals to assist in prosecution of the Litigation Claims and the terms of each professional's engagement, including any alternative fee arrangements; (e) settlement of all or any portion of the Litigation Claims; and (f) any arrangement for compensation of the Litigation Trustee or the Plan Administrator.

The Litigation Trustee shall consult with, and obtain approval of, the Litigation Trust Oversight Committee with respect to all material decisions regarding (x) the prosecution of the Causes of Action, including (without limitation) the litigation strategy with respect thereto, and the filing and prosecution of any dispositive or other substantive motion or pleading, and (y) the assertion or waiver of the Debtors' attorney-client privilege (to which the Litigation Trust shall succeed).

3.    **The Litigation Trustee as the Representative of the Debtors' Estates**

On the Effective Date, the Litigation Trustee shall be deemed the Estates' representative in accordance with section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in the Litigation Trust Agreement, including, without limitation, the right to (1) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Litigation Trust Agreement; (2) administer the Litigation Trust Assets, including prosecuting, settling, abandoning or compromising any actions that are or relate to the Litigation Trust Assets; (3) employ and compensate professionals and other agents consistent with Article VI.A.2 of the Plan, provided, however, that any such compensation shall be paid by the Litigation Trust to the extent not inconsistent with the status of the Litigation Trust as a liquidating trust within the meaning of Treasury Regulation § 301.7701-4(d) for federal income

tax purposes; and (4) control attorney/client privilege relating to or arising from the Litigation Trust Assets.

**B.    The Litigation Trust**

1.    On the Effective Date, the Litigation Trust shall be established pursuant to the Litigation Trust Agreement for the purpose of prosecuting the Litigation Claims.  The Litigation Trust is intended to qualify as a liquidating trust pursuant to Treasury Regulation § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

2.    On the Effective Date, the Litigation Claims shall vest automatically in the Litigation Trust.  The Plan shall be considered a motion pursuant to sections 105, 363 and 365 of the Bankruptcy Code for such relief.  The transfer of the Litigation Claims to the Litigation Trust shall be made for the benefit and on behalf of the Litigation Trust Beneficiaries.  The assets comprising the Litigation Trust Assets will be treated for tax purposes as being transferred by the Debtors to the Litigation Trust Beneficiaries pursuant to the Plan in exchange for their Allowed Claims (or a portion thereof) and then by the Litigation Trust Beneficiaries to the Litigation Trust in exchange for the Litigation Trust Interests in the Litigation Trust.  The Litigation Trust Beneficiaries shall be treated as the grantors and owners of the Litigation Trust.  Upon the transfer of the Litigation Trust Assets, the Litigation Trust shall succeed to all of the Debtors' rights, title and interest in the Litigation Trust Assets, and the Debtors will have no further interest in or with respect to the Litigation Trust Assets (other than on account of the Litigation Trust Interests).

3.    In connection with the prosecution of the Litigation Claims, any attorney-client privilege, work-product privilege, joint interest privilege or other privilege or immunity attaching to any documents or communications (in any form, including, without limitation, written, electronic or oral) shall be transferred to and shall vest in the Litigation Trust.  The Litigation Trust's receipt of such privileges associated with the Litigation Claims shall not operate as a waiver of those privileges possessed or retained by the Debtors, nor shall it operate to eliminate the rights of any co-defendant to any applicable joint privilege.  The Litigation Trust shall also be vested with the Debtors' and the Committee's respective rights, as such rights existed prior to the Effective Date, to conduct discovery and oral examinations of any party under Bankruptcy Rule 2004.  The Litigation Trust, however, shall not be considered a successor of any Debtor and shall not assume any obligations of the Debtors other than expressly provided for herein.

4.    Except as otherwise ordered by the Bankruptcy Court, the Litigation Trust Expenses on or after the Effective Date shall be paid in accordance with the Litigation Trust Agreement without further order of the Bankruptcy Court.

5.    The Litigation Trust shall file annual reports regarding the liquidation or other administration of property comprising the Litigation Trust Assets, the distributions made by it and other matters required to be included in such report in accordance with the Litigation Trust Agreement.

6.    The Litigation Trust Interests are not intended to constitute "securities."  To the extent the Litigation Trust Interests are deemed to be "securities," the issuance of such interests

shall be exempt from registration under the Securities Act and any applicable state and local laws requiring registration of securities pursuant to section 1145 of the Bankruptcy Code or another available exemption from registration under the Securities Act. If the Litigation Trustee determines, with the advice of counsel, that the Litigation Trust is required to comply with registration or reporting requirements under the Securities Act, the Exchange Act or other applicable law, then the Litigation Trustee shall take any and all actions to comply with such registration and reporting requirements, if any, and to file reports with the Securities and Exchange Commission to the extent required by applicable law.

7.      The Litigation Trust shall be dissolved as soon as practicable after the date that is the earlier to occur of: (a) the distribution of all proceeds from the Litigation Claims available for distribution pursuant to the Plan, or (b) the determination of the Litigation Trust Oversight Committee that the continued prosecution of the Litigation Claims is not likely to yield sufficient additional proceeds to justify further pursuit; provided, however, that in no event shall the Litigation Trust be dissolved later than five (5) years from the Effective Date, unless the Bankruptcy Court, upon motion within the six (6) months prior to the fifth (5th) anniversary of the Effective Date (or within six (6) months prior to the end of an extension period), determines that a fixed-period extension is necessary to facilitate or complete the recovery and liquidation of the Litigation Claims.

8.      To the extent that the terms of the Plan with respect to the Litigation Trust are inconsistent with the terms set forth in the Litigation Trust Agreement, then the terms of the Litigation Trust Agreement shall govern.

## C.      **The Litigation Trust Oversight Committee**

1.      The Litigation Trust Oversight Committee shall be comprised of three members: two members selected by the First Lien Agents and the First Lien Lenders and one member selected by the Committee. The identity of the members of the Litigation Trust Oversight Committee shall be disclosed prior to the Confirmation Hearing in accordance with section 1129(a)(5) of the Bankruptcy Code.

2.      The Litigation Trust Oversight Committee shall oversee the Litigation Trust and the Litigation Trustee.

3.      The Litigation Trust Oversight Committee shall be authorized to retain and employ Professionals to assist it with and advise it with respect to its duties under the Plan. All fees and expenses of such Professionals shall be satisfied by the Litigation Trust.

4.      The duties and powers of the Litigation Trust Oversight Committee shall terminate upon the final resolution of the Litigation Claims and the final distribution of all proceeds in accordance with the terms of the Litigation Trust Agreement.

## D.      **Litigation Proceeds Waterfall**

The Cash proceeds of the Litigation Claims shall be distributed in accordance with the following priority of payments:

(i)        *first*, to the extent not previously paid from proceeds of the Litigation Trust Facility, all accrued and unpaid Litigation Trust Expenses included in the Litigation Trust Budget;

(ii)       *second*, to the repayment of the aggregate amount of the outstanding obligations under the Litigation Trust Facility;

(iii)      *third*, to the repayment of (a) any indebtedness incurred under the DIP Facility, the Exit Facility or otherwise, or (b) any proceeds of collateral of the First Lien Lenders utilized, in connection with the distributions made to Holders of Allowed Administrative Expense Claims, Priority Tax Claims, and Priority Claims, pursuant to the Plan; and

(i)        *fourth*, ratably (a) 80% to the Holders of Allowed First Lien Lender Deficiency Claims and (b) 20% to the Holders of Allowed Class 5 General Unsecured Claims. To the extent that the Allowed First Lien Lender Deficiency Claims are fully satisfied, any additional recoveries will be distributed to the Holders of Allowed Class 5 General Unsecured Claims. To the extent that Holders of Allowed Class 5 General Unsecured Claims are fully satisfied, any additional recoveries will be distributed to the Holders of Allowed First Lien Lender Deficiency Claims. For the avoidance of doubt, no holder of an Allowed Claim will receive payment in excess of the Allowed amount of their Claim.

E.      **Closing the Chapter 11 Cases**

The Litigation Trust shall seek authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules, provided, however, that the Litigation Trust may keep one or more of the Debtors' cases open in order to resolve any Disputed Claims or to pursue Causes of Action or until the Litigation Trust has been terminated and all remaining Litigation Trust Assets have been distributed. For the avoidance of doubt, the Chapter 11 Cases may be closed prior to termination of the Litigation Trust.

## ARTICLE VII.
### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      **Rejection of Executory Contracts and Unexpired Leases**

1.      On the Effective Date, except for the Executory Contracts and Unexpired Leases listed on the Assumption Schedule, if any, and except to the extent that a Debtor either previously has assumed, assumed and assigned or rejected an Executory Contract or Unexpired Lease by an order of the Bankruptcy Court, or has filed a motion to assume or assume and assign an Executory Contract or Unexpired Lease prior to the Effective Date, each Executory Contract and Unexpired Lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms will be deemed rejected pursuant to section 365 of the Bankruptcy Code, and written notice will be provided to each such counterparty of such deemed rejected contract or lease (together with a statement of the date by which any Proof of Claim must be filed). Each such contract and lease will be rejected only to

the extent that any such contract or lease constitutes an Executory Contract or Unexpired Lease. The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of any such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code and that the rejection thereof is in the best interest of the Debtors, their Estates and all parties in interest in the Chapter 11 Cases.

2.     The Debtors' decision regarding whether to assume or reject Executory Contracts and Unexpired Leases (including the deemed rejection set forth in Article VII.A.1) shall be in consultation with, and with the consent of the First Lien Lenders, with such consent not to be unreasonably withheld.

## B.     Claims Based on Rejection of Executory Contracts of Unexpired Leases

Claims created by the rejection of Executory Contracts and Unexpired Leases pursuant to this Article VII.A of the Plan, or the expiration or termination of any Executory Contract or Unexpired Lease prior to the Effective Date, must be filed with the Bankruptcy Court and served on the Plan Administrator no later than thirty (30) days after the Effective Date. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to Article VII.A for which Proofs of Claim are not timely filed within that time period will be forever barred from assertion against the Debtors, the Estates, their successors and assigns, and their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Claims shall, as of the Effective Date, be subject to the discharge and permanent injunction set forth in Article XI.E. Unless otherwise ordered by the Bankruptcy Court, all such Allowed Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan and shall be subject to the provisions of Article III of the Plan.

## C.     Assumption and Assignment of Contracts and Leases

1.     Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into in connection with the Plan, on the Effective Date, pursuant to section 365 of the Bankruptcy Code, the Debtors shall assume each of the respective Executory Contracts and Unexpired Leases, if any, listed on the Assumption Schedule, which the Debtors shall file with the Bankruptcy Court as part of the Plan Supplement; provided, however, that the Debtors reserve the right, at any time prior to the Effective Date, to amend the Assumption Schedule to: (a) delete any Executory Contract or Unexpired Lease listed therein, thus providing for its rejection pursuant hereto; or (b) add any Executory Contract or Unexpired Lease to the Assumption Schedule, thus providing for its assumption pursuant to this Article VII.C. The Debtors shall provide written notice to each counterparty of a contract on the Assumption Schedule (together with a statement of the date by which any Cure Claims must be filed) and written notice of any amendments to the Assumption Schedule to the parties to the Executory Contracts or Unexpired Leases affected thereby and to the parties on the then-applicable service list in the Chapter 11 Cases. The notices of assumption will describe the procedures by which such parties may object to the proposed assumption of their respective Executory Contract or Unexpired Lease or the proposed Cure Claim amount, and explain how such disputes will be resolved by the Bankruptcy Court at the Confirmation Hearing, or such other date to which the parties may mutually agree or as ordered by the Bankruptcy Court, if the parties are not able to resolve a dispute consensually.

2. Objections, if any, to the proposed assumption and/or Cure Claim amount must be filed with the Bankruptcy Court and served so as to be actually received by the Debtors no later than fourteen (14) days from the date of the service of the assumption notice, which deadline may be extended in the Debtors' sole discretion.

3. Any non-Debtor counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure Claim amount will be deemed to have assented to such assumption and Cure Claim amount.

4. The Debtors prior to the Effective Date, or the Reorganized Debtors following the Effective Date, may settle any dispute regarding the amount of a Cure Claim without further notice to any party or action, approval, or order of the Bankruptcy Court. If the Debtors prior to the Effective Date, or the Reorganized Debtors following the Effective Date, object to any request for payment of a Cure Claim, the Bankruptcy Court shall determine the Allowed amount of such Cure Claim and any related issues. Unless the parties to the Executory Contract or Unexpired Lease agree otherwise, all disputed defaults that are required to be cured shall be cured by the later of (a) ten (10) days after entry of a Final Order determining the amount, if any, of the Debtors' liability with respect thereto and (b) the Effective Date.

5. If an objection to the Debtors' proposed Cure Claim amount is sustained by the Bankruptcy Court or a Final Order is entered determining a Cure Claim amount greater than that proposed by the Debtors, then within thirty (30) days, the Debtors prior to the Effective Date, or the Reorganized Debtors following the Effective Date, may elect to deem such Executory Contract or Unexpired Lease rejected in lieu of assuming it by filing a rejection notice, and the non-Debtor counterparty shall then be entitled to file a Proof of Claim asserting Claims arising from the rejection thereof, if applicable, in accordance with the terms of the Plan and the Bar Date Order.

6. Nothing herein or in the Plan Supplement shall constitute an admission by the Debtors that any contract or lease is an Executory Contract or Unexpired Lease or that a Debtor has any liability thereunder.

7. Each Executory Contract or Unexpired Lease assumed and assigned under this Article VII.C shall include any modifications, amendments, supplements or restatements to such contract or lease.

D. **Payments Related to the Assumption and Assignment of Executory Contracts and Unexpired Leases**

Any Cure Claims associated with any Executory Contract or Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code: (a) by payment of the Cure Claim in Cash on or after the Effective Date; or (b) on such other terms as are agreed to by the parties to such Executory Contract or Unexpired Lease. Pursuant to section 365(b)(2)(D) of the Bankruptcy Code, no Cure Claim shall be allowed for a penalty rate or other form of default rate of interest. If there is an unresolved dispute regarding: (x) the amount of any Cure Claim; (y) the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the

Bankruptcy Code) under the contract or lease to be assumed; or (z) any other matter pertaining to assumption of such contract or lease, the payment of any Cure Claim required by section 365(b)(1) of the Bankruptcy Code shall be made following the resolution of such dispute by the parties or the entry of a Final Order resolving the dispute and approving the assumption.

**ASSUMPTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE PURSUANT TO THE PLAN OR OTHERWISE SHALL RESULT IN THE FULL RELEASE AND SATISFACTION OF ANY CLAIMS AGAINST OR DEFAULTS BY THE DEBTORS, WHETHER MONETARY OR NONMONETARY, INCLUDING DEFAULTS OF PROVISIONS RESTRICTING THE CHANGE IN CONTROL OR OWNERSHIP INTEREST COMPOSITION OR OTHER BANKRUPTCY-RELATED DEFAULTS, ARISING UNDER ANY ASSUMED EXECUTORY CONTRACT OR UNEXPIRED LEASE AT ANY TIME BEFORE THE DATE THE REORGANIZED DEBTORS ASSUME SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE. ANY PROOFS OF CLAIM FILED WITH RESPECT TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT HAS BEEN ASSUMED SHALL BE DEEMED DISALLOWED AND EXPUNGED, WITHOUT FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE BANKRUPTCY COURT.**

The assumption of Executory Contracts and Unexpired Leases under the Plan shall include the assignment to and vesting of such contracts and leases in the Reorganized Debtors. The Confirmation Order will constitute an order of the Bankruptcy Court approving the above-described assumptions, assignments, and vesting.

E.      **Extension of Time to Assume or Reject**

Notwithstanding anything set forth in Article VII of the Plan, in the event of a dispute as to whether a contract is executory or a lease is unexpired, the Debtors' right to move to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after entry of a Final Order by the Bankruptcy Court determining that the contract is executory or the lease is unexpired. The deemed rejection provided for in Article VII.A of the Plan shall not apply to any such contract or lease, and any such contract or lease shall be assumed or rejected only upon motion of the Debtors following the Bankruptcy Court's determination that the contract is executory or the lease is unexpired.

F.      **Insurance Policies**

Notwithstanding any other provision of the Plan, pursuant to sections 365 and 1123 of the Bankruptcy Code and in accordance with the terms of the Plan, the Insurance Policies shall be assumed by the Debtors and assigned, to the extent permitted by law, to the Reorganized Debtors, unless any Insurance Policy was previously rejected by the Debtors pursuant to a Bankruptcy Court order or is the subject of a motion to reject pending on the Effective Date.

G.      **Pre-existing Obligations to the Debtors Under Executory Contracts and Unexpired Leases**

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtors under

such Executory Contract or Unexpired Lease. Notwithstanding any applicable non-bankruptcy law to the contrary, the Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a non-Debtor party to provide, warranties, indemnifications or continued maintenance obligations on goods previously purchased, or services previously received, by the contracting Debtors from non-Debtor parties to rejected Executory Contracts or Unexpired Leases.

## ARTICLE VIII.
## PROVISIONS GOVERNING DISTRIBUTIONS

### A.    Determination of Allowability of Claims and Rights to Distributions

1.      Only Holders of Allowed Claims shall be entitled to receive distributions under the Plan. The Plan Administrator shall make distributions to Holders of Allowed Claims on each Distribution Date.

2.      No distribution shall be made on a Disputed Claim until and unless such Disputed Claim becomes an Allowed Claim. Prior to making any distribution under the Plan to a particular Class, the Plan Administrator shall establish a Disputed Claims Reserve for Disputed Claims in such Class, each of which Disputed Claims Reserves shall be administered by the Plan Administrator. The Plan Administrator shall reserve in Cash or other property, for distribution on account of each Disputed Claim, the full amount of the estimated distribution on account of such Disputed Claim (or such lesser amount as may be estimated or otherwise ordered by the Bankruptcy Court in accordance with Article VIII.E of the Plan or otherwise) with respect to each Disputed Claim.

3.      The Plan Administrator shall hold property in the Disputed Claims Reserves in trust for the benefit of the Holders of Claims ultimately determined to be Allowed. Each Disputed Claims Reserve shall be closed and extinguished by the Plan Administrator when all distributions and other dispositions of Cash or other property required to be made under the Plan will have been made in accordance with the terms of the Plan. Upon closure of a Disputed Claims Reserve, all Cash or other property held in that Disputed Claims Reserve shall revest in and become the property of the Litigation Trust to be distributed in accordance with the Litigation Proceeds Waterfall.

### B.    Procedures for Making Distributions to Holders of Allowed Claims

1.      The Plan Administrator shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

2.      The Plan Administrator shall send distributions to the Holders of the Allowed Claims at the addresses listed for such Holder in the Schedules or on the applicable Proof of Claim or notice of transfer of a Claim filed at least 5 days before the Effective Date.

3.      If any Holder's distribution is returned as undeliverable, no further distributions to such Holder shall be made unless and until the Plan Administrator is notified by the Claims and Noticing Agent or such Holder of such Holder's then current address, at which time all missed distributions shall be made, subject to Article VIII.B.4 of the Plan, to such Holder without

interest.  If any distribution is made by check and such check is not returned but remains uncashed for three (3) months after the date of such check, the Plan Administrator may cancel and void such check, and the distribution with respect thereto shall be deemed undeliverable.  If, pursuant to Article VIII.H of the Plan, any Holder is requested to provide an applicable Internal Revenue Service form or to otherwise satisfy any tax withholding requirements with respect to a distribution and such Holder fails to do so within three (3) months of the date of such request, such Holder's distribution shall be deemed undeliverable.

4. Amounts in respect of returned or otherwise undeliverable or unclaimed distributions made by the Plan Administrator shall be returned to or deemed to vest in the Litigation Trust until such distributions are claimed.  All claims for returned or otherwise undeliverable or unclaimed distributions must be made (a) on or before the first (1st) anniversary of the Effective Date or (b) with respect to any distribution made later than such date, on or before six (6) months after the date of such later distribution; after which date all undeliverable property shall revert and vest in the Litigation Trust, free of any restrictions thereon and the claims of any Holder with respect to such property shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.  In the event of a timely claim for any returned or otherwise undeliverable or unclaimed distribution, the Plan Administer shall distribute such amount or property pursuant to the Plan.

5. The Plan Administrator may elect not make a distribution of less than $25.00 to any Holder of an Allowed Claim unless the distribution is a final distribution.  If, at any time, the Plan Administrator determines that the remaining Cash and other Assets are not sufficient to make distributions to Holders of Allowed Claims in an amount that would warrant the Plan Administrator incurring the cost of making such a distribution, the Plan Administrator may dispose of such remaining Cash and other Assets in a manner the Plan Administrator deems to be appropriate, including donating it to a charitable organization.

6. All distributions made under the Plan shall be final, and neither the Estates, the Litigation Trustee, nor any representative of the Debtors' Estates may seek disgorgement of any distributions made under the Plan.

## C.     Consolidation for Distribution Purposes Only

Solely for the purposes of determining the Allowed amount of Claims to be used in calculating distributions to be made pursuant to the Plan, any Holder asserting the same Claim against more than one Debtor (based on a guarantee, joint and several liability under contract or applicable law, or any other basis) shall be deemed to have only one Claim and shall only receive a distribution under the Plan on account of such Claim.

## D.     Application of Distribution Record Date

As of the Distribution Record Date, the transfer registers for each Class of Claims or Equity Interests, as maintained by the Debtors or their agents, shall be deemed closed and there shall be no further changes made to reflect any new record Holders of any such Claims or Equity Interests without the written consent of the Debtors or the Plan Administrator, as applicable.  The

Debtors and the Plan Administrator shall have no obligation to recognize any transfer of such Claims or Equity Interests occurring on or after the Distribution Record Date.

E.      **Provisions Related to Disputed Claims**

1.      After the Effective Date, unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Plan Administrator shall have the exclusive right to make, file, prosecute, settle, compromise, withdraw, or resolve in any manner approved by the Bankruptcy Court, objections to Claims.  The costs of pursuing the objections to Claims shall be borne by the Litigation Trust.  From and after the Effective Date, the Plan Administrator and any claimant may elect to compromise, settle or otherwise resolve any objection to a Disputed Claim without approval of the Bankruptcy Court.  Notwithstanding anything in the Plan, the U.S. Trustee's rights to object to Claims, including Professional Fee Claims and Claims asserted under section 503(b)(3) or (b)(4) of the Bankruptcy Code, are fully reserved.

2.      All objections to Disputed Claims shall be filed and served upon the Holders of each such Claim not later than the Claim Objection Deadline (as extended).

3.      At any time, (a) prior to the Effective Date, the Debtors, and (b) subsequent to the Effective Date, the Plan Administrator, may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Plan Administrator has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the Claim, the Debtors or the Plan Administrator, as applicable, may elect to object to the ultimate allowance of the Claim or seek to reduce and allow the Claim.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

4.      Any Claims held by any Person from whom property is recoverable under sections 542, 543, or 550 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Person have been settled or a Final Order with respect thereto has been entered and all sums due, if any, by that Person have been turned over or paid by such Person to the Debtors or the Litigation Trust.

5.      All Claims filed on account of an indemnification obligation to a director, officer, or employee (including, but not limited to James S. Feltman, Jonathan Landers, and Donald S. MacKenzie) shall be deemed satisfied and expunged from the Claims Register as of the Effective

Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

6.       **EXCEPT AS PROVIDED HEREIN OR OTHERWISE AGREED BY THE DEBTORS OR THE LITIGATION TRUST, AS APPLICABLE, ANY AND ALL HOLDERS OF PROOFS OF CLAIM FILED AFTER THE APPLICABLE BAR DATE SHALL NOT BE TREATED AS CREDITORS FOR PURPOSES OF VOTING AND DISTRIBUTION PURSUANT TO BANKRUPTCY RULE 3003(c)(2) UNLESS ON OR BEFORE THE VOTING DEADLINE OR THE CONFIRMATION DATE, AS THE CASE MAY BE, SUCH LATE PROOFS OF CLAIM ARE DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT.**

F.       **Adjustment of Claims Without Objection**

Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted on the Claims Register by the Claims and Noticing Agent at the direction of the Debtors or the Plan Administrator, as applicable, upon notice to the Holder of such Claim, but without a Claims Objection having to be Filed. If no objection is received within the time period prescribed in the notice, such Claim shall be adjusted without any further notice to or action, order or approval of the Bankruptcy Court.

G.       **Surrender of Cancelled Old Securities**

Each Holder of the Old Equity Interests shall be deemed to have surrendered any stock certificate or other documentation underlying each such Old Equity Interest, and any such stock certificates and other documentation shall be deemed to be cancelled pursuant to Article V.E of the Plan.

H.       **Withholding and Reporting Requirements**

In connection with the Plan and all distributions hereunder, the Plan Administrator shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. Any amounts withheld shall be deemed to have been distributed and received by the applicable recipient for purposes of the Plan. The Plan Administrator shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a distribution, the Holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each Holder. Notwithstanding any other provision of the Plan, (a) each Holder of an Allowed Claim that is to receive a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any governmental unit, including income and other tax obligations, on account of such distribution, and (b) no distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements satisfactory to the applicable Plan Administrator to allow it to comply with its tax withholding and reporting requirements. Any property to be

distributed pursuant to the Plan shall, pending the implementation of such arrangements, be treated as an undeliverable distribution to be held by the Plan Administrator, as the case may be, until such time as the Plan Administrator is satisfied with the Holder's arrangements for any withholding tax obligations.

I.      **Setoffs**

The Plan Administrator may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtors or the Litigation Trust may have against the Holder of such Claim; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Litigation Trust of any such claim that the Debtors or the Litigation Trust may have against such Holder.

J.      **Prepayment**

Except as otherwise provided in the Plan, any ancillary documents entered into in connection herewith, or the Confirmation Order, the Plan Administrator shall have the right to prepay, without penalty, all or any portion of an Allowed Claim at any time; provided, however, that any such prepayment shall not be violative of, or otherwise prejudice, the relative priorities and parities among the Classes of Claims.

K.      **No Fractional Shares of New Equity Interests.**

No fractional shares of New Equity Interests shall be distributed and no cash shall be distributed in lieu of such fractional amounts. When any distribution of New Equity Interests pursuant to the Plan would result in the issuance of a number of shares of New Equity Interests that is not a whole number, the actual distribution of shares of New Equity Interests shall be truncated (i.e., rounded down to the nearest whole number).

L.      **No Distribution in Excess of Allowed Amount of Claim**

Notwithstanding anything to the contrary contained in the Plan, no Holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of that Claim.

M.      **Amendments to Claims**

On or after the Effective Date, a Claim may not be Filed or amended without prior authorization of the Bankruptcy Court or the Litigation Trustee, as applicable, and any such new or amended Claim Filed without such prior authorization shall be deemed disallowed in full and expunged without any further action.

# ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

A.      **Conditions to Confirmation**

The following are conditions precedent to the occurrence of the Confirmation Date, each of which must be satisfied or waived in accordance with Article IX.C of the Plan:

1.      an order pursuant to Bankruptcy Code Section 1125 shall have been entered finding that the Disclosure Statement contains adequate information;

2.      the proposed Confirmation Order, in form and substance satisfactory to the Debtors, the First Lien Agents and First Lien Lenders, shall have been submitted to the Bankruptcy Court;

3.      the Debtors shall have received a commitment from the Exit Lender for the Exit Facility, in form and substance acceptable to the Debtors, the First Lien Agents and First Lien Lenders;

4.      the Debtors shall have received a commitment from the Litigation Trust Lenders for the Litigation Trust Facility, in form and substance acceptable to the Debtors, the First Lien Agents and First Lien Lenders;

5.      the Plan Supplement and any related documentation shall be in form and substance acceptable to the Debtors, the First Lien Agents and First Lien Lenders;

6.      the Equity Purchase Agreement shall have been executed in form and substance acceptable to the Debtors, the First Lien Agents and First Lien Lenders; and

7.      the Bankruptcy Court shall have determined that the Plan satisfies all requirements for confirmation under the Bankruptcy Code.

B.      **Conditions to Effective Date**

The following conditions precedent must be satisfied or waived on or prior to the Effective Date in accordance with Article IX.C of the Plan:

1.      The Bankruptcy Court shall have entered the Confirmation Order, which shall have become a Final Order, and which shall grant final approval of the Plan and the injunctions, releases, and exculpations contained therein;

2.      the Confirmation Order shall, among other things:

(i)      provide that the Debtors, the Reorganized Debtors, the Committee, the Plan Administrator, the Litigation Trustee, the Litigation Trust Oversight Committee and the Litigation Trust are authorized and directed to take all actions necessary or appropriate to enter into, implement, and consummate

the transactions contemplated by and the contracts, instruments, releases, indentures, and other agreements or documents created under or in connection with the Plan; and

(ii)     authorize and approve the Equity Purchase Agreement and the Exit Facility;

3.     the Confirmation Order shall not then be stayed, vacated, or reversed;

4.     all other actions, documents, and agreements necessary to implement the Plan shall have been effected or executed, or will be effected or executed contemporaneously with implementation of the Plan (including, without limitation, the Reorganized Debtor Governing Documents, the Litigation Trust Agreement, the Equity Purchase Agreement, and the documentation for the Exit Facility, New Term Loan Facility and the Litigation Trust Facility), each of which shall be in form and substance acceptable to the Debtors, the First Lien Agents and the First Lien Lenders;

5.     the Equity Purchase Agreement shall be in full force and effect and no event or circumstance shall have occurred that would give rise to the ability of any party thereto to terminate the Equity Purchase Agreement;

6.     the fees and expenses required to be paid on the Effective Date pursuant to Article XI.B of the Plan shall have been paid in full in Cash;

7.     the aggregate amount of all Allowed Administrative Expense Claims and Priority Tax Claims shall not exceed $4.75 million (such cap to be reduced for all administrative expenses and other wind-down costs paid by the Debtors, in the ordinary course, on or after the date of the Disclosure Statement and prior to the Effective Date) and the aggregate amount of all Allowed Priority Claims shall not exceed $1 million;

8.     the Litigation Trust shall have been established, and the Litigation Trust Agreement shall be acceptable to the parties thereto;

9.     all conditions to the consummation of the Equity Purchase Agreement, the Exit Facility and the Litigation Trust Facility shall have been satisfied or waived as provided therein; and

10.     The Effective Date shall have occurred by no later than May 31, 2018.

## C.     **Waiver of Conditions**

Each of the conditions set forth in Article IX.A and Article IX.B with the express exception of the conditions contained in Article IX.A.1, Article IX.B.1, and Article IX.B.3, may be waived in whole or in part by the First Lien Agents and First Lien Lenders (with the consent of the Debtors not to be unreasonably withheld), without any notice to parties in interest or the Bankruptcy Court and without a hearing.

D.   **Operations of the Debtors Between the Confirmation Date and the Effective Date**

During the period from the Confirmation Date through and until the Effective Date, the Debtors shall continue to operate its business as debtor in possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all Final Orders.

E.   **Effective Date**

On or within three Business Days of the Effective Date, the Debtors shall file and serve a notice of occurrence of the Effective Date.

## ARTICLE X.
## RETENTION OF JURISDICTION

A.   **Scope of Retention of Jurisdiction**

Under Bankruptcy Code Sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, without limitation, jurisdiction to:

1.   allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Equity Interest not otherwise Allowed under the Plan (other than personal injury or wrongful death Claims, unless agreed by the Holder), including, without limitation, the resolution of any Request for Payment and the resolution of any objections to the allowance or priority of Claims;

2.   hear and determine all applications for Professional Fees; provided, however, that from and after the Effective Date, the payment of the fees and expenses of the retained Professionals of the Plan Administrator or the Litigation Trust (to the extent different from those of the Plan Administrator) shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

3.   hear and determine all matters with respect to contracts or leases or the assumption or rejection of any contracts or leases to which a Debtors were a party or with respect to which the Debtors may be liable, including, if necessary and without limitation, the nature or amount of any required Cure or the liquidation or allowance of any Claims arising therefrom;

4.   effectuate performance of and payments under the provisions of the Plan;

5.   hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Litigation Claims or the Chapter 11 Cases;

6.   enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other

agreements or documents created in connection with the Plan, the Disclosure Statement, or the Confirmation Order;

7.      hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including, without limitation, disputes arising under agreements, documents, or instruments executed in connection with the Plan;

8.      consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

9.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

10.      enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

11.      hear and determine any matters arising in connection with or relating to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, the Litigation Trust Agreement, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Plan Supplement, the Disclosure Statement, or the Confirmation Order;

12.      enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases or provided for under the Plan;

13.      except as otherwise limited herein, recover all assets of the Debtors and property of the Estates, wherever located;

14.      hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code Sections 346, 505, and 1146;

15.      hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge;

16.      hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

17.      enter a final decree closing the Chapter 11 Cases.

B.      **Failure of the Bankruptcy Court to Exercise Jurisdiction**

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the

Chapter 11 Cases, including the matters set forth in Article X.A of the Plan, the provisions of this Article X shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XI.
## MISCELLANEOUS PROVISIONS

### A.  Administrative Expense Claims and Professional Fee Claims

1.  Except as otherwise provided in Article XI.A.2 of the Plan or in the Bar Date Order or other orders of the Bankruptcy Court, unless previously filed or Allowed, each holder of an Administrative Expense Claim that arose or accrued on or after the Petition Date through the Effective Date must file a request for payment of such Administrative Expense Claim pursuant to the procedures specified in the Confirmation Order and notice of entry of the Confirmation Order no later than 30 days after the Effective Date (the "Administrative Expense Claim Bar Date").  Holders of Administrative Expense Claims that are required to file and serve a request for payment of such Administrative Expense Claims and that do not file and serve such a request by the applicable Bar Date shall be forever barred from asserting such Administrative Expense Claims against the Debtors, the Reorganized Debtors, or the Liquidating Trust, and such Administrative Expense Claims shall be deemed waived and released as of the Effective Date. Objections to Administrative Expense Claims must be filed and served on the Plan Administrator, his or her counsel, and the Person submitting such Administrative Expense Claim no later than twenty (20) days (or such longer period as may be allowed by order of the Bankruptcy Court) the Administrative Expense Claim Bar Date.

2.  All final Requests for Payment of Professional Fee Claims must be filed and served on the Plan Administrator, his or her counsel, and other necessary parties in interest no later than forty-five (45) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court.  Objections to such Requests for Payment must be filed and served on the Plan Administrator, his or her counsel, and the requesting Professional or other Person no later than twenty (20) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable Request for Payment was served.  The Plan Administrator shall pay all Allowed Professional Fee Claims within 10 days of the Bankruptcy Court's approval thereof.

### B.  Payment of Statutory Fees

All quarterly fees payable pursuant to Section 1930 of Title 28 of the United States Code prior to the Effective Date shall be paid by the Debtors on or before the Effective Date.  All such fees payable after the Effective Date shall be paid by the Plan Administrator or the Reorganized Debtors as and when due, until such time as the Chapter 11 Cases are closed, dismissed or converted.

### C.  Successors and Assigns and Binding Effect

The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal

representative, successor, or assign of such Person, including, but not limited to, the Litigation Trust, and all other parties in interest in the Chapter 11 Cases.

**D.     Preservation of Subordination Rights**

Nothing contained in this Plan shall be deemed to modify, impair, terminate or otherwise affect in any way the rights of any Person under section 510(a) of the Bankruptcy Code, and all such rights are expressly preserved under this Plan.  The treatment set forth in Article III of the Plan and the distributions to the various Classes of Claims hereunder shall not affect the right of any Person to levy, garnish, attach, or employ any other legal process with respect to such distributions by reason of any claimed subordination rights or otherwise.  All such rights and any agreements relating thereto shall remain in full force and effect, except as otherwise expressly compromised and settled pursuant to the Plan.

**E.     Discharge of Claims and Equity Interests**

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the Plan Distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims and Equity Interests of any nature whatsoever, including any interest accrued on Claims or Equity Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Equity Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims or Equity Interests, including demands and liabilities that arose before the Effective Date, any liability to the extent such Claims or Equity Interests relate to services performed by current or former employees of the Debtors prior to the Effective Date and that arise from a termination of employment or a termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case, whether or not (1) a Proof of Claim or proof of Equity Interest based upon such debt, right, or Equity Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code, (2) a Claim or Equity Interest based upon such debt, right, or Equity Interest is Allowed pursuant to section 502 of the Bankruptcy Code, or (3) the Holder of such a Claim or Equity Interest has accepted the Plan. Any default by the Debtors or their Affiliates with respect to any Claim or Equity Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Equity Interests subject to the occurrence of the Effective Date.

**F.     Compromise and Settlement**

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Equity Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim or Equity Interest, or any distribution to be

made on account of such Allowed Claim or Equity Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Equity Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against them and Causes of Action against other Entities.

G. **Releases**

1. **Releases by the Debtors**

**As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce this Plan and the Plan Documents, for good and valuable consideration, the adequacy of which is hereby confirmed including, without limitation, the Released Parties' services and assistance to facilitate the reorganization of the Debtors and the implementation of the Restructuring Transactions, and except as otherwise provided in this Plan, the Plan Documents, or in the Confirmation Order, the Released Parties are deemed forever released and discharged by the Debtors, the Reorganized Debtors, the Plan Administrator, the Litigation Trust, the Litigation Trustee and any Person (including the Committee and the First Lien Agents) holding or seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor to the Debtors or any Estate representative appointed or selected pursuant to Bankruptcy Code Section 1123(b)(3), in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other entities that may purport to assert any Cause of Action derivatively, by or through the foregoing Entities (collectively, the "Releasing Parties"), from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Releasing Parties, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, that any of the Releasing Parties would have been legally entitled to assert in her, his or its own right (whether individually or collectively) or on behalf of the holder of any Claim or Equity Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the First Lien Credit Agreement, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of any Claim or Equity Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the negotiation, formulation, or preparation of the Disclosure Statement, the Restructuring Support Agreement, the DIP Facility, the Restructuring Transactions, the Exit Facility, the New Term Loan Facility, the Litigation Trust Facility, the Reorganized Debtor Governing Documents, or the Plan (other than the rights of the Debtors, the Committee, the Litigation Trust, the Litigation Trustee and the First Lien Agents to enforce the Plan and the contracts, instruments, releases, indentures, and other**

agreements or documents delivered thereunder), the solicitation of votes with respect to this Plan, or any other act or omission, transaction, agreement, event, or other occurrence, other than claims or Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or constitutes intentional fraud, gross negligence, or willful misconduct.

2.      Reservation of Rights Under the Plan

Notwithstanding anything contained herein to the contrary, the foregoing releases do not release any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan (including the Restructuring Support Agreement, the Equity Purchase Agreement, Reorganized Debtor Governing Documents, and the documents included in the Plan Supplement.

H.      **Exculpation and Limitation of Liability**

Pursuant to the Plan and to the maximum extent permitted by applicable law, none of the Exculpated Parties shall have or incur any liability to any holder of a Claim, Cause of Action or Equity Interest for any act or omission in connection with, related to or arising out of, the Chapter 11 Cases, the negotiation of any settlement, agreement, contract, instrument, release or document created or entered into in connection with the Plan or in the Chapter 11 Cases (including the DIP Facility, Exit Facility, and Litigation Trust Facility and documents related thereto), the pursuit of confirmation of the Plan, the consummation of the Plan, the preparation and distribution of the Disclosure Statement, the offer, issuance and distribution of any securities issued or to be issued pursuant to the Plan, any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors or the administration of the Plan or the property to be distributed under the Plan, except for any act or omission that is determined in a final order to have constituted willful misconduct or gross negligence (collectively, "<u>Exculpated Claims</u>").  Each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan.

I.      **Injunction**

Except as otherwise provided in the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Equity Interests, Causes of Action, liabilities, obligations, suits, judgments, damages, demands, debts, or rights, including, but not limited to, those that: (1) have been released or exculpated pursuant to Article XI.G and Article XI.H hereof; (2) are against an Exculpated Party with respect to Exculpated Claims; or (3) are otherwise stayed, settled, compromised or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from (on account of or in connection with or with respect to any released, settled, compromised, or exculpated Claims, Equity Interests, Causes of Action, liabilities, obligations, suits, judgments, damages, demands, debts, or rights): (a) commencing or continuing in any manner any action or other proceeding of any kind against the Released Parties (solely with respect to the Releasing Parties) or , with respect to Exculpated Claims, Exculpated

Parties (or the property or estate of any Person, directly or indirectly, so released or exculpated); (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Released Parties (solely with respect to the Releasing Parties) or, with respect to Exculpated Claims, Exculpated Parties; (c) creating, perfecting, or enforcing any Lien, Claim, or encumbrance of any kind against the Released Parties (solely with respect to the Releasing Parties) or, with respect to Exculpated Claims, Exculpated Parties (or the property or estate of any Person so released or exculpated); (d) asserting any right of setoff or subrogation of any kind against any obligation due from the Released Parties (solely with respect to the Releasing Parties) or, with respect to Exculpated Claims, Exculpated Parties (or the property or estates of the debtors or any Person so released or exculpated) unless such Person has timely asserted such setoff or subrogation right prior to Confirmation in a document filed with the Bankruptcy Court explicitly preserving such setoff or subrogation; and (e) commencing or continuing in any manner any action or other proceeding of any kind against the Released Parties (solely with respect to the Releasing Parties) or, with respect to Exculpated Claims, Exculpated Parties (or the property or estate of any Person so released or exculpated); **provided** that nothing contained in the Plan shall preclude any Person from receiving or obtaining benefits directly and expressly provided to such Person pursuant to the terms of the Plan; **provided, further,** that nothing contained in the Plan shall be construed to prevent any Person from defending against Claims Objections or collection actions whether by asserting a right of setoff or otherwise to the extent permitted by law.

J.      **No Release of Any Claims Held by the United States**

Except as provided for in Section 1141 of the Bankruptcy Code, nothing in the Confirmation Order or the Plan shall effect a release of any Claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any Claim arising under the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"), the environmental laws, or any criminal laws of the United States or any state and local authority against the Released Parties, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any Claim, suit, action, or other proceedings against the Released Parties for any liability whatever, including, without limitation, any Claim, suit, or action arising under the Internal Revenue Code, the environmental laws, or any criminal laws of the United States or any state or local authority, nor shall anything in the Confirmation Order or the Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws, or any criminal laws of the United States or any state and local authority against the Released Parties.

K.      **Term of Injunctions or Stays**

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code Sections 105 or 362 or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.

L.    **Modifications and Amendments**

The Debtors, with the consent of the First Lien Agents and First Lien Lenders, may alter, amend, or modify the Plan under Bankruptcy Code Section 1127(a) at any time prior to the Confirmation Date. After the Confirmation Date and prior to substantial consummation of the Plan, as defined in Bankruptcy Code Section 1101(2), the Debtors, with the consent of the First Lien Agents and First Lien Lenders, may under Bankruptcy Code Section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

M.    **Substantial Consummation**

On the Effective Date, the Plan shall be deemed to be substantially consummated under Section 1101 and 1127(b) of the Bankruptcy Code.

N.    **Severability of Plan Provisions**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors (with the consent of the First Lien Agents and First Lien Lenders) shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

O.    **Revocation, Withdrawal, or Non-Consummation**

The Debtors, with the consent of the First Lien Agents and First Lien Lenders, reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file subsequent plans of reorganization. If the Debtors revoke or withdraw the Plan in accordance with this Article XI.O, or if Confirmation or the Effective Date does not occur, then (1) the Plan shall be null and void in all respects, (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of contracts or leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (3) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (a) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Equity Interests in, any Debtors or any other Person, (b) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or (c) constitute an admission of any sort by any Debtor or any other Person.

P.     **Notices**

Any notice, request, or demand required or permitted to be made or provided to or upon the Debtors, the Plan Administrator, the Litigation Trust, the Committee or the First Lien Agents under the Plan shall be (1) in writing, (2) served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service, (d) first class mail, (e) electronic mail or (f) facsimile transmission, (3) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, and (4) addressed as follows:

For the Debtors:

HUGHES HUBBARD & REED LLP
Kathryn A. Coleman
Christopher Gartman
Dustin P. Smith
One Battery Park Plaza
New York, New York 10004-1482
Telephone:  (212) 837-6000
Facsimile: (212) 299-6126
E-Mail: katie.coleman@hugheshubbard.com
E-Mail: chris.gartman@hugheshubbard.com
E-Mail: dustin.smith@hugheshubbard.com

-and –

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones
James E. O'Neill
Peter J. Keane
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:   (302) 652-4400
E-Mail: ljones@pszjlaw.com
E-Mail: joneill@pszjlaw.com
E-Mail: pkeane@pszjlaw.com

For the Committee:

KILPATRICK TOWNSEND & STOCKTON LLP
David M. Posner
Gianfranco Finizio
The Grace Building
1114 Avenue of the Americas

New York, NY 10036
Telephone: (212) 775-8700
Facsimile: (212) 775-8800
E-mail: dposner@kilpatricktownsend.com
E-mail: gfinizio@kilpatricktownsend.com
-and –

MORRIS JAMES LLP
Carl N. Kunz, III, Esq. (DE Bar No. 3201)
Brenna A. Dolphin, Esq. (DE Bar No. 5604)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware 19801-1494
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: ckunz@morrisjames.com
E-mail: bdolphin@morrisjames.com

For the First Lien Agents:

SCHULTE ROTH & ZABEL LLP
Adam C. Harris
919 Third Avenue
New York, NY 10022
Telephone No.: (212) 756-2000
Facsimile No.: (212) 593-5955
E-Mail: Adam.Harris@srz.com

-and –

LANDIS RATH & COBB LLP
Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
919 North Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone No.: (302) 467-4400
Facsimile No.: (302) 467-4450
E-Mail: landis@lrclaw.com
E-Mail: mumford@lrclaw.com

Q.      **Request for Expedited Determination of Taxes**

The Debtor shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Commencement Date through the Effective Date.

R.       **Conflicts**

To the extent any provision of the Disclosure Statement or any instrument, document or agreement executed in connection with the Plan (or any exhibits, schedules, appendices, supplements or amendments to the foregoing) conflicts with or is in any way inconsistent with the terms of the Plan, the terms and provisions of the Plan shall govern and control.

[SIGNATURE PAGE FOLLOWS]

Dated: March 13, 2018

**PATRIOT NATIONAL, INC.**
for itself and its Debtor affiliates

By: *_/s/ James S. Feltman_*
Name: James S. Feltman
Title: Chief Restructuring Officer