# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re*<br><br>**PATRIOT NATIONAL, INC., *et al.*,**[1]<br><br>**Debtors.** | Chapter 11<br><br>Case No. 18-10189 (KG)<br><br>(Jointly Administered)<br><br>**Proposed Hearing Date (Re: New Lease): April 2, 2018 at 10:00 a.m.**<br>**Proposed Objection Deadline (Re: New Lease): March 28, 2018 at 12:00 p.m.**<br><br>**Hearing Date (Re: Rejection): April 9, 2018 at 10:00 a.m.**<br>**Objection Deadline (Re: Rejection): April 2, 2018 at 4:00 p.m.** |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING (I) ENTRY INTO A NEW HEADQUARTERS LEASE, (II) REJECTION OF UNEXPIRED HEADQUARTERS LEASE, AND (III) ABANDONMENT OF ANY PERSONAL PROPERTY THAT REMAINS AT THE LEASED PREMISES

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), move the Court (this "Motion"), pursuant to sections 105, 363, 365, and 554 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of two orders, in substantially the form attached as Exhibit A (the "New Lease Proposed Order") and Exhibit B (the "Rejection Proposed Order" and, together with the New Lease Proposed Order, the "Proposed Orders"),

---

1. The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors' federal tax identification number, are: Patriot National, Inc. (1376), Patriot Services, LLC (1695); TriGen Insurance Solutions, Inc. (2501); Patriot Captive Management, LLC (2341); Patriot Underwriters, Inc. (0045); TriGen Hospitality Group, Inc. (6557); Patriot Risk Consultants, LLC (0844); Patriot Audit Services, LLC (5793); Patriot Claim Services, Inc. (9147); Patriot Risk Services, Inc. (7189); Corporate Claims Management, Inc. (6760); CWIBenefits, Inc. (0204); Forza Lien, LLC (7153); Contego Investigative Services, Inc. (0330); Contego Services Group, LLC (0012); Patriot Care Management, LLC (2808); Radar Post-Closing Holding Company, Inc. (2049); Patriot Technology Solutions, LLC (6855); and Decision UR, LLC (1826). The Debtors' headquarters are located at 401 East Las Olas Boulevard, Suite 1650, Fort Lauderdale, Florida 33301.

(i) authorizing, but not directing, the Debtors to enter into the lease agreement, by and between Debtor Patriot National, Inc. and Steelbridge CFC, LLC (the "New Landlord"), substantially in the form attached hereto as Exhibit C (the "New Lease"); (ii) authorizing the Debtors to reject that certain unexpired lease between Debtor Patriot National, Inc. ("PNI") and 401 East Las Olas LLC (predecessor-in-interest to TAF gg Las Olas, L.P., the "Current Landlord"), dated December 31, 2015 (as modified or amended, the "Rejected Lease"), effective as of April 30, 2018 (the "Rejection Effective Date"); and (iii) abandoning any personal property remaining on the premises of the Rejected Lease (the "Rejected Lease Premises"). In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory and rule bases for the relief requested herein are sections 105, 363, 365, and 554 of the Bankruptcy Code and Rules 6004 and 6006 of the Bankruptcy Rules.

## BACKGROUND

**A.     General Background**

3. On January 30, 2018 (the "Petition Date"), the Debtors commenced their bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

4. On February 16, 2018, the United States Trustee for Region 3 appointed a two-member Official Committee of Unsecured Creditors (Docket No. 118) (the "Committee"). No trustee or examiner has been appointed in these Chapter 11 Cases. The Debtors are operating their respective businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. The events leading up to the Petition Date are set forth in the *Declaration of James S. Feltman, Chief Restructuring Officer of Patriot National, Inc., in Support of First Day Relief*, filed on January 30, 2018 (Docket No. 4) and which is incorporated herein by reference.

**B. The Rejected Lease**

6. On or about December 31, 2014, the Debtors entered into the Rejected Lease between 401 East Las Olas LLC (predecessor-in-interest to the Current Landlord) and PNI. The Rejected Lease, as subsequently amended,[2] provides[3] for a lease of approximately 36,537 square feet of office space on two floors, and currently provides for a base rent of approximately $104,983 per month for the period through February 28, 2019 (with annual increases thereafter of approximately 3%). The Debtors currently maintain their headquarters and employ a substantial portion of their workforce at the Rejected Lease Premises.

7. In conjunction with their review of executory contracts and real property leases, and in consultation with their professionals, the Debtors reviewed the Rejected Lease and determined that its terms were not conducive to the Debtors' future business plans. Specifically,

---

2. The Debtors entered into a third amendment to the Lease Agreement on or about December 15, 2017. That agreement reduced the rented premises under the Lease from approximately 50,129 square feet of office space on three floors to approximately 36,537 square feet on two floors.

3. The description of the terms of the Rejected Lease, the New Lease, and any amendments or modifications thereto are for included in this Motion for illustration and convenience; they are qualified in their entirety by the terms of the applicable agreements.

the Rejected Lease commits the Debtors to renting significantly more space than that which is required by their business operations. The Debtors determined that a lease with a reduced footprint and lower costs would be in the Debtors' best interests going forward. Accordingly, in an effort to achieve maximum cost-savings and meet the needs of the Debtors' businesses, for the benefit of the Debtors' businesses, estates, creditors, and other parties in interest, the Debtors engaged in negotiations with the Current Landlord in an effort to come to an agreement that would meet the Debtors' needs going forward and also explored potential alternative leases.

### C. The New Lease

8. Ultimately, the Debtors determined that the New Lease would best fit the Debtors' current and projected business needs. The New Lease reduces the total square footage of the Debtors' headquarters and the overall rental cost. The Debtors, in their business judgment, find the New Lease favorable considering current market conditions and their current and anticipated business needs and objectives.

9. Below is a summary of the key terms of the New Lease:

|  | **Rejected Lease (as amended)** | **New Lease** |
| --- | --- | --- |
| **Premises** | 401 East Las Olas Blvd., Suites 1500 and 1600, Fort Lauderdale, Florida | 5900 North Andrews Avenue, Suite 1000, Fort Lauderdale, Florida |
| **Base Rent** | $104,982.98 / month (Mar. 1, 2018 – Feb. 28, 2019)<br><br>$108,119.07 / month (Mar. 1, 2019 – Feb. 29, 2020)<br><br>$111,376.96 / month (Mar. 1, 2020 – Feb. 28, 2021)<br><br>$114,726.18 / month (Mar. 1, 2021 – Nov. 30, 2021) | $0 / month (first three months)<br><br>$29,026.50 / month (subsequent nine months)<br><br>29,905.14 / month (second year)<br><br>30,799.47 / month (third year)<br><br>31,725.18 / month (fourth year)<br><br>32,682.27 / month (fifth year)<br><br>33,655.05 / month (sixth year) |

| Size | 36,537 sq. ft. | 18,828 sq. ft. |
|---|---|---|
| Security Deposit or Letter of Credit | $100,000[4] | $274,000 (subject to reductions pursuant to section 27.3 of the New Lease) |

10. The New Lease represents a significant benefit for the Debtors and their estates, allowing the Debtors to meet their current and anticipated future business needs at a reduced cost and footprint. The Debtors estimate they will save approximately $70,000 in rent per month over the remaining term of the Rejected Lease. As a result, the Debtors' rejection of the Rejected Lease and entry into the New Lease will be conducive to the Debtors' efficient operation going forward and will significantly benefit the Debtors' estates and all parties in interest.

## RELIEF REQUESTED

11. By this Motion, The Debtors request entry of an order, in substantially the form of the Proposed Orders, (i) authorizing, but not directing, the Debtors to enter into the New Lease, (ii) authorizing and approving the Debtors' rejection of the Rejected Lease as of the Rejection Effective Date, and (iii) authorizing the Debtors to abandon any personal property of the Debtors remaining in the Rejected Lease Premises after the Rejection Effective Date.

## BASIS FOR RELIEF REQUESTED

**A. The Debtors' Entry into the New Lease Should be Approved Pursuant to Sections 363(b) of the Bankruptcy Code.**

12. Under Bankruptcy Code section 363(b)(1), a debtor in possession "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of

---

4. The Rejected Lease provides for a security deposit of $100,000. However, that deposit was subsequently set off against amounts owed to the Current Landlord.

the estate." 11 U.S.C. § 363(b)(1).[5] In determining whether to authorize a debtor to use property under Bankruptcy Code section 363(b)(1), courts require the debtor to demonstrate that a sound business purpose justifies its actions. *See In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991); *see also Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983).

13. Once the debtor has articulated a valid business purpose, "a strong presumption follows that the agreement was negotiated in good faith and is in the best interests of the estate." *Culp v. Stanziale (In re Culp)*, 545 B.R. 827, 844 (D. Del. 2016), *aff'd*, 681 F. App'x 140 (3d Cir. 2017), *cert. denied*, 138 S. Ct. 170 (2017); *In re Filene's Basement, LLC*, No. 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) ("[T]he burden of rebutting that presumption falls to parties opposing the transaction.") (quoting *In re MF Glob. Inc.*, 467 B.R. 726, 730 (Bankr. S.D.N.Y. 2012)).

14. In this case, the New Lease is fair, reasonable, and in the best interest of the Debtors' estates. The Debtors compared other available properties in consultation with a realtor and also attempted to negotiate a favorable reduction with the Current Landlord before determining that the New Lease would best fit their needs. As described herein, the New Lease allows the Debtors to obtain real benefits by providing adequate office space for the operation of the Debtors' headquarters while substantially reducing the Debtors' rent expenses. In addition, the terms of the New Lease were negotiated in the ordinary course of business and are consistent with the Debtors' historical practices.

---

5. By filing this Motion, the Debtors do not concede that either entry into or performance under the New Lease constitute actions outside the ordinary course of business; rather, the Debtors are filing this Motion out of an abundance of caution to confirm the New Lease's enforceability and to ensure full transparency in these Chapter 11 Cases.

### B. Rejection of the Rejected Lease Is an Appropriate Exercise of the Debtors' Business Judgment and Should Be Approved.

15. Section 365(a) of the Bankruptcy Code provides that a debtor "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a); *see also L.R.S.C. Co. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.)*, 209 F.3d 291, 298 (3d Cir. 2000) (section 365 of the Bankruptcy Code "allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed"). Courts routinely approve motions to reject executory contracts and unexpired leases upon a showing that a debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment. *See Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 492 (3d Cir. 1998); *In re Taylor*, 913 F.2d 102, 107 (3d Cir. 1990); *In re Armstrong World Indus., Inc.*, 348 B.R. 136, 162 (Bankr. D. Del. 2006) ("Courts have uniformly deferred to the business judgment of the debtor to determine whether the rejection of an executory contract or unexpired lease by the debtor is appropriate under section 365(a) of the Bankruptcy Code.").

16. Courts generally do not second-guess a debtor's reasonable and good faith business judgment concerning the rejection of an executory contract or unexpired lease, unless the decision is the product of bad faith, whim or caprice. *See In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (applying a business judgment standard, absent a showing of bad faith, whim, or caprice); *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) (same); *see also Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (absent extraordinary circumstance, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course"). The standard merely requires a showing that either assumption or rejection of the

7

executory contract or unexpired lease will benefit the debtor's estate. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distribution Cor. (In re Sharon Steel Corp.)*, 872 F.2d 36, 40 (3d Cir. 1989).

17. The Debtors' rejection of the Rejected Lease is an exercise of their sound business judgment and in the best interest of their estates. The Debtors have determined that the Rejected Lease is no longer necessary to the Debtors' ongoing operations and that entry into the New Lease would better fit the Debtors' needs. Absent rejection of the Rejected Lease, the Debtors may accrue avoidable administrative expenses with little accompanying benefit to their estates and to the detriment of the Debtors' stakeholders. Because rejecting the Rejected Lease will benefit the Debtors' estates, the Court should grant the relief requested herein.

### C. The Debtors' Abandonment of Personal Property at the Rejected Lease Premises is Appropriate.

18. The Debtors also seek authority to abandon any Debtor-owned personal property located at the Rejected Lease Premises on the Petition Date, as is, where is, and in accordance with section 554(a) of the Bankruptcy Code. Section 554(a) provides that "the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a).

19. Prior to the Rejection Effective Date, the Debtors will remove any personal property that justifies the expense of transport to another location. The Debtors believe that the costs associated with liquidating the personal property assets remaining at the Rejected Lease Property, if any, will likely approach or exceed the value of such assets. Accordingly, the Debtors believe that the personal property remaining at the Rejected Lease Premises, if any, will have inconsequential value to the estates and should be abandoned as of the Rejection Effective Date. Furthermore, the Debtors will not abandon any computers or other property that contain

personally identifiable information of the Debtors' employees or customers, or contain critical business information.

### D. Claims Bar Date

20. The Current Landlord may seek to assert a rejection damage claim under section 502 of the Bankruptcy Code or other claims in connection with the rejection of the Rejected Agreement and must do so in accordance with this Court's *Order (i) Establishing Bar Dates for Filing Proofs of Claim, (ii) Approving Proof of Claim Form, Bar Date Notices, and Mailing and Publication Procedures, (iii) Implementing Uniform Procedures Regarding 503(b)(9) Claims, and (iv) Providing Certain Supplemental Relief* [D.I. 317] (the "Claims Bar Date Order"). The Debtors will give notice of the bar date to the Current Landlord in accordance with the Claims Bar Date Order. The Debtors will also give notice of the order granting this Motion by serving such order on the Current Landlord after entry of such order. Pursuant to the Claims Bar Date Order, any claims in connection with the rejection of the Rejected Agreement must be filed by May 30, 2018 (*i.e.*, thirty days after the Rejection Effective Date).

21. Nothing in this Motion shall be deemed or construed to: (a) constitute an admission as to the validity or priority of any claim against the Debtors; and/or (b) constitute a waiver of the Debtors' rights to dispute any claim.

### NOTICE

22. Notice of this Motion shall be provided to (i) the U.S. Trustee; (ii) counsel for Cerberus Business Finance, LLC, as the administrative agent for the DIP Lenders and for the prepetition secured lenders; (iii) counsel to the Committee; (iv) the Current Landlord; (v) the New Landlord; and (vi) parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtors submit that no other or further notice need be provided.

## **NO PRIOR REQUEST**

23. No prior request for the relief sought herein has been made to this Court or any other court.

*[Remainder of Page Left Blank Intentionally]*

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order and grant such other and further relief as may be appropriate.

Dated: March 20, 2018
      Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
_____
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Peter J. Keane (DE Bar No. 5503)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
      joneill@pszjlaw.com
      pkeane@pszjlaw.com

-and-

Kathryn A. Coleman
Christopher Gartman
Jacob Gartman
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
Telephone: (212) 837-6000
Facsimile: (212) 422-4726
Email: katie.coleman@hugheshubbard.com
      chris.gartman@hugheshubbard.com
      jacob.gartman@hugheshubbard.com

*Counsel for the Debtors*