**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re* <br><br> **PATRIOT NATIONAL, INC.,** *et al.*,[1] <br><br> **Debtors.** | Chapter 11 <br><br> Case No. 18-10189 (KG) <br><br> (Jointly Administered) <br><br> **Related Docket No. 382** |

**PRELIMINARY OBJECTION OF CERTAIN FORMER
DIRECTORS AND OFFICER TO THE DEBTORS' SECOND
AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION**

Quentin P. Smith, Jr., Charles H. Walsh, Michael J. Corey, and Christopher A. Pesch (collectively, the "Former Ds&O"), by and through their undersigned counsel, hereby submit this preliminary objection (the "Objection") to the *Second Amended Joint Chapter 11 Plan of Reorganization* [Docket No. 382] (the "Plan") of Patriot National, Inc. ("Patriot") and its affiliated debtors in possession (collectively, the "Debtors"). In support of the Objection, the Former Ds&O respectfully represent as follows:

**PRELIMINARY STATEMENT**

1. The Former Ds&O are defendants in pending litigation stayed by this Court's mediation order, as well as creditors of the Debtors' estates. As both defendants and creditors, the Former Ds&O have grave concerns regarding the propriety of the Plan and echo the issues raised by the Committee in its letter urging creditors to reject the Plan. In particular, allegations

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors' federal tax identification number, are: Patriot National, Inc. (1376), Patriot Services, LLC (1695); TriGen Insurance Solutions, Inc. (2501); Patriot Captive Management, LLC (2341); Patriot Underwriters, Inc. (0045); TriGen Hospitality Group, Inc. (6557); Patriot Risk Consultants, LLC (0844); Patriot Audit Services, LLC (5793); Patriot Claim Services, Inc. (9147); Patriot Risk Services, Inc. (7189); Corporate Claims Management, Inc. (6760); CWIBenefits, Inc. (0204); Forza Lien, LLC (7153); Contego Investigative Services, Inc. (0330); Contego Services Group, LLC (0012); Patriot Care Management, LLC (2808); Radar Post-Closing Holding Company, Inc. (2049); Patriot Technology Solutions, LLC (6855); and Decision UR, LLC (1826). The Debtors' headquarters are located at 401 East Las Olas Boulevard, Suite 1650, Fort Lauderdale, Florida 33301.

have been made by various parties regarding the Cerberus Credit Facility and potentially tortious conduct by Cerberus vis-a-vis the Debtors.  The deadline to commence an appropriate contested matter or adversary proceeding asserting any challenge claim against Cerberus has not yet passed and the Former Ds&O, along with other parties, are evaluating their options.   In the interim, however, the Former Ds&O determined it prudent that they submit their preliminary objection to the Plan.

2.　　　　Under the Plan, the Debtors are proposing to grant broad releases to various parties, including Cerberus, despite serious questions as to whether those parties engaged in wrongdoing in connection with the Cerberus Credit Facility and the Forbearance Agreement.  Further investigation of these wrongdoings is warranted to, among other things, evaluate the propriety of the proposed releases.  These releases not only will deprive the estates' creditors of extremely valuable causes of action, but Cerberus may also attempt to use the releases to negate or otherwise negatively impair the claims that Former Ds&O have against Cerberus in connection with the Lawsuits (*e.g.,* by potentially releasing the Former Ds&O's ability to pursue contribution claims against Cerberus).

3.　　　　Further, the current directors and officers of the Debtors are being improperly insulated through broad exculpations for their acts or omissions that may have occurred pre-petition, including the Debtors' entry into the Forbearance Agreement and the formulation of the Plan, which was drafted pre-petition and filed on the Petition Date.  Among other things, current directors and officers of Patriot are accused of turning a blind eye towards Cerberus' and former Patriot CEO and majority owner, Steven Mariano's, collusive scheme to freeze out the minority stockholders and take Patriot private, without providing minority stockholders or creditors with adequate value.  Yet these same directors and officers are being exculpated.

4.      Importantly, the Disclosure Statement contains various remarks regarding potential litigation claims that the Debtors intend to pursue, ostensibly through the Litigation Trustee, which will form the basis of recovery, if any, for general unsecured creditors. Whether or not these claims will be actually pursued is doubtful. For example, the Disclosure Statement provides that the Debtors intend to pursue recovery of a $6 million dollar separation payment made to Mariano and the avoidance of a general waiver and release granted to him. This alleged fraudulent conveyance was approved by the current directors and officers (who will be exculpated) and likely approved by Cerberus (who will be released) given the restrictive covenants under the Cerberus Credit Facility (which required Cerberus' approval for such an extraordinary payment to an affiliate of Patriot). The Former Ds&O are unaware of any allegations by Cerberus in the current proceedings that the current directors' and officers' approval of the severance agreement with Mariano was made in breach of the Facility's restrictive covenants. Thus, it is questionable as to whether Cerberus, through its purported control of the Litigation Trust Oversight Committee, really intends to reclaim the $6 million that it allowed to be paid directly to Mariano for his own benefit, or to rescind the general waiver and release granted to Mariano for liabilities in the Lawsuits that may exceed $450 million – all at the expense of creditors and the minority stockholders. Moreover, Cerberus appears to have every intent to subordinate creditors' and minority stockholders' claims to Cerberus' own claims despite potentially unclean hands.

5.      The above issues appear to violate the good faith standard for confirmation of a plan under section 1129(a)(3) of the Bankruptcy Code as well as the standards for debtor releases and exculpations under a plan. Accordingly, and as set forth in greater detail below, the Court should sustain this Objection and deny confirmation of the Plan.

## BACKGROUND

**A.     General Background**

6.     On January 30, 2018 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code.

7.     On February 16, 2018, the Office of the United States Trustee appointed an official committee of unsecured creditors pursuant to section 1102(a)(1) of the Bankruptcy Code (the "<u>Committee</u>").

8.     The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

9.     No trustee or examiner has been appointed in these chapter 11 cases.

**B.     The Cerberus Credit Facility**

10.     On November 9, 2016, Patriot, as borrower, and the remaining Debtors as guarantors, entered into a financing agreement (the "<u>Cerberus Credit Facility</u>") under which Cerberus Business Finance, LLC ("<u>Cerberus</u>" or the "<u>Prepetition Agent</u>") served as collateral agent and administrative agent for the lenders (the "<u>Prepetition Secured Lenders</u>," and together with the Prepetition Agent, the "<u>Prepetition Secured Parties</u>").  The Cerberus Credit Facility originally provided for a $30 million revolving credit facility and a $250 million term loan facility.

11.     As of July 2017, the Debtors were allegedly in default under the Cerberus Credit Facility.  The purported defaults included, without limitation, failure to pay interest when due, failure to deliver certain audited financial statements for the fiscal year ended December 31, 2016, and failure to comply with certain financial covenants.  On November 9, 2017, the Prepetition Agent issued a Notice of Default with respect to those defaults.

12.     On November 17, 2017, the Debtors and the Prepetition Secured Parties entered into a Forbearance Agreement (as amended on December 3, 2017, December 7, 2017, and January 5, 2018, the "Forbearance Agreement"), pursuant to which the Prepetition Secured Parties agreed to forbear from the exercise of rights and remedies against the Debtors and to provide up to $6.7 million in new cash loans to the Debtors.  As part of the Forbearance Agreement, the Debtors granted Cerberus a broad release of any liability in connection with the Cerberus Credit Facility.[2]  This purported release was granted with full knowledge that Cerberus was alleged to have knowingly aided and abetted Mariano and others in breaches of fiduciary duties.

13.     Specifically, as noted above, Cerberus has been accused of colluding with Mariano to freeze out the minority stockholders and take Patriot private, without providing minority stockholders or creditors with adequate value.  The Former Ds&O want these allegations investigated further, because representations were made in writing regarding the financial due diligence that Cerberus would conduct in connection with the Facility.  Either the due diligence was conducted and Cerberus withheld the results from the Former Ds&O or Cerberus made a material omission with regard to its failure to have the financial due diligence conducted in accordance with the representations made to the Former Ds&O.

14.     Financial payments to the majority stockholder, Mariano, may constitute preferential payments, and must be thoroughly vetted.  Specifically, the Senior Secured Super-Priority Debtor-In-Possession Financing Agreement among Cerberus, Patriot and other parties (the "DIP Agreement") identifies in *Schedule 6.01(v) Material Contracts* and *Schedule 7.02(j)*

---

[2] Patriot submitted a Form 8-K with the United States Securities and Exchange Commission on November 17, 2017 advising that Patriot had obtained and entered into the Forbearance Agreement (the "SEC Filing").  The SEC Filing did not disclose the releases and a copy of the Forbearance Agreement was not attached to the SEC Filing.

*Transactions with Affiliates* multiple agreements under which Mariano, as a large stockholder of Ashmere Insurance Company, may continue to receive payments. Cerberus and the Debtors have not rejected these contracts, and thus have presumably approved continued payments to Mariano-owned entities. Furthermore, risks associated with the concentration of Patriot's revenues from Guarantee Insurance Company ("GIC") and Ashmere had been surfaced during Ebix, Inc.'s due diligence review and it would be incredulous to believe that Cerberus also failed to analyze the concentration risks or quality of GIC's earnings before lending Patriot $230 million as it was represented to the Former Ds&O that Cerberus required a third party quality of earnings analysis as a condition to close the Facility. Notably, certain of the current directors who approved the Forbearance Agreement and the releases in the Plan are Mariano's family member and former directors of GIC during the period in which Mariano is accused of having taken over $15 million by the Florida Office of Insurance Regulation. Mariano's family member and other current directors, and presumably Cerberus in accordance with the Facility's restrictive covenants, also approved a multi-million dollar severance payment to Mariano, with full knowledge of the claims in the Lawsuits against Mariano, of which $6 million was paid upfront in cash. For these and other reasons, further investigation is warranted before the Plan is confirmed and any releases are granted.

**C. DIP Releases and Challenge Period**

15. On the Petition Date, the Debtors sought approval of a $15.5 million post-petition financing agreement, pursuant to which Cerberus (the "DIP Agent") served as the administrative and collateral agent for certain lenders [Docket No. 18]. The proposed post-petition financing was approved on a final basis on March 6, 2018 [Docket No. 297] (the "Final Financing Order").

16. Pursuant to paragraph 15 of the Final Financing Order:

> Any party-in-interest with standing (other than the Debtors) shall have until the earliest of (i)(x) with respect to the Committee, sixty (60) calendar days from the date of its formation, and (y) with respect to all such other parties in interest, seventy-five (75) calendar days from the date of the entry of the Interim Order; and (ii) the date of the commencement of a hearing to consider confirmation of a chapter 11 plan in these Chapter 11 Cases (each, a "Challenge Period," and the last day of any such Challenge Period, the "Challenge Termination Date"), to commence an appropriate contested matter or adversary proceeding asserting any Challenge…If a Challenge is not filed on or before the Challenge Termination Date, then: (a) the agreements, acknowledgments and stipulations contained in Paragraph D of this Final Order shall be irrevocably binding on the Debtors' estates and all parties-in-interest and any and all successors-in-interest as to any of the foregoing (including, without limitation, the Committee and any other official committee or trustee) without further action by any party or this Court, and any other party-in-interest and any and all successors-in-interest as to any of the foregoing shall thereafter be forever barred from bringing any Challenge; (b) the Prepetition Liens shall be deemed to constitute valid, binding, enforceable and perfected liens and security interests not subject to avoidance or disallowance pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (c) the Prepetition Secured Obligations shall be deemed to be, as of the Petition Date, finally allowed claims, secured to the extent of the value of the Prepetition Secured Parties' Liens in the Prepetition Collateral, for all purposes against the Debtors, and shall not be subject to challenge by any party-in-interest as to amount, validity, priority or otherwise; and (d) the Debtors and the Debtors' estates shall be deemed to have released, waived and discharged the Prepetition Secured Parties, together with each of their respective affiliates, parents, subsidiaries, partners, controlling persons, agents, attorneys, advisors, professionals, officers, directors and employees, each in such capacity, from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, the Prepetition Secured Obligations, the Prepetition Loan Documents, or any action or failure to act by any Prepetition Secured Party in connection therewith.

17. Thus, the Former Ds&O, as parties in interest, have the earlier of seventy-five (75) days from the date of the Interim Order or the Confirmation Hearing Date (as defined below) to commence an appropriate contested matter or adversary proceeding asserting any challenge claim against Cerberus. If no challenge is lodged, Cerberus will be released from such claims.

18. Upon information and belief, the Committee has not yet completed its investigation nor has it filed a Challenge. Various parties-in-interest, however, have filed motions under Bankruptcy Rule 2004 for orders directing Cerberus to produce documents. *See Motion of Mbago Kaniki for an Order Pursuant to Fed. R. Bankr. P. 2004, Directing Cerberus Business Finance, LLC to Produce Document* [Docket No. 386 ] (the "Kaniki 2004 Motion"); *Limited Joinder of Aric McIntire and Henry Wasik to Motion of Mbago Kaniki for an Order Pursuant to Fed. R. Bankr. P. 2004, Directing Cerberus Business Finance, LLC to Produce Document* [Docket No. 399] (the "McIntire 2004 Motion").

19. In particular, Mbago Kaniki, a shareholder of Patriot, states that if the allegations against Cerberus are proven true, "it would mean that Cerberus's acts ultimately enabled it to acquire a $475 million company for (ostensibly) $280 million via a credit facility that Cerberus (and Debtors' management) knew the Debtors would never be able to pay." *Kaniki Motion* at ¶ 12. Kaniki further argues that, if the allegations are true, Cerberus' claims should be subordinated and recharacterized as equity. *Id.* at 7.

**D.    The Debtor Releases and Exculpations Under the Plan**

20. On the Petition Date, the Debtors filed their *Joint Chapter 11 Plan of Reorganization* [Docket No. 15] (the "Plan") and on January 31, 2018 filed the *Disclosure Statement of Patriot National, Inc., and Its Affiliated Debtors* [Docket No. 16] (the "Disclosure Statement").

21. From time to time thereafter, the Debtors amended the Plan and the Disclosure Statement [Docket Nos. 374, 376, & 382].

22. By Order dated March 14, 2018, the Bankruptcy Court entered an order approving the Disclosure Statement, as amended [Docket No. 381]. A hearing on confirmation of the Plan is scheduled for April 24, 2018 (the "Confirmation Hearing Date").

23. Pursuant to the Plan, the Debtors are proposing to issue and deliver to Cerberus and the Prepetition Secured Lenders all of the newly issued equity interests in the reorganized Debtors on the effective date of the Plan. Plan, at Art. V.A.

24. Further, pursuant to the Plan, Cerberus is among the "Released Parties" broadly released from any liability by the Debtors (the "Debtor Releases"). *Id.* at Art. I.A.122 & XI.G.

25. The Plan also seeks to exculpate, among other parties, the current officers and directors of the Debtors for "any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors or the administration of the Plan or the property to be distributed under the Plan, except for any act or omission that is determined in a final order to have constituted willful misconduct or gross negligence**"** (the "Exculpations"). *Id.* at Art. I.A.62 & XI.H.

### E. Claims of the Former Ds&O

26. Prior to the commencement of these jointly administered bankruptcy cases, various statutory and common-law claims were made against the Former Ds&O (collectively, the "Lawsuits") or have been threatened against the Former Ds&O.[3] Further, the Former Ds&O may be subject to certain claims by the Litigation Trust under the Plan.

27. On February 28, 2018, the Court entered an order compelling mediation by the parties to the Lawsuits and staying the Lawsuits through May 29, 2018 [Docket No. 381]. The mediation is scheduled for April 18-19, 2018.

---

[3] The Former Ds&O were, and they currently are, defendants in the following Lawsuits: *Hudson Bay Master Fund Ltd. v. Del Pizzo et al.*, Case No. 17-cv-06204 (S.D.N.Y.); *Wasik et al. v. Mariano et al.*, Case No. 12953 (Del. Ch.); *and McIntire et al. v. Mariano et al.*, Case. No. 18-cv-60075 (S.D. Fl.). The Former Ds&O vehemently deny any and all allegations pending or threatened against them related to Patriot.

28. On March 8, 2018, the Former Ds&O filed proofs of claim in the Chapter 11 Cases [Claim Nos. 74, 84, 85, 86, 87, 88, 90 and 91]. Accordingly, the Former Ds&O are creditors of Patriot and have standing to file this Objection.

29. Independent of the claims against the Debtors, the Former Ds&O have reason to believe that they have claims against the Prepetition Secured Parties, including Cerberus, arising from the Cerberus Credit Facility and related transactions, acts, and/or omissions. In addition, the Former Ds&O have reason to believe that they have claims against the Exculpated Parties, including the current directors and officers, arising from the financial crisis in which GIC was stated by the Debtors to be in as early as the summer of 2015, unbeknownst to the Former Ds&O. *See Section II.F.2 of the Second Amended Disclosure Statement.*

## PRELIMINARY OBJECTION

**A. The Debtors Have Failed to Satisfy the Good Faith Requirement Under Section 1129(a)(3) of the Bankruptcy Code**

30. Section 1129(a)(3) of the Bankruptcy Code requires that a plan "be proposed in good faith and not by means forbidden by law." 11 U.S.C. § 1129(a)(3). "The important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code. Those objectives and purposes include preserving going concerns and maximizing property available to satisfy creditors, giving debtors a fresh start in life, discouraging debtor misconduct, the expeditious liquidation and distribution of the bankruptcy estate to its creditors, and achieving fundamental fairness and justice." *In re W.R. Grace & Co.*, 729 F.3d 332, 346 (3d Cir. 2013) (internal quotation marks, citations omitted). A good faith plan (i) fosters a result consistent with these objectives, (ii) "has been proposed with honesty and good intentions and with a basis for expecting that reorganization can be effected," and (iii) exhibits "a fundamental fairness in dealing with the creditors." *See W.R.*

*Grace & Co.*, 475 B.R. 34, 88 (D. Del. 2012), aff'd, 729 F.3d 332 (3d Cir. 2013). A plan that is collusive does not "fairly" achieve its result; therefore, a collusive plan will not satisfy the good faith standard. *See In re Am. Capital Equip., LLC*, 688 F.3d 145, 158 (3d Cir. 2012).

31. Here, the Plan as proposed violates the inherent good faith requirement under section 1129(a)(3) of the Bankruptcy Code. Under the Plan, the Debtors are issuing Cerberus and the Prepetition Secured Lenders newly issued equity interests in the reorganized Debtors arising from the Cerberus Credit Facility, which is the subject of myriad allegations of pre-petition wrongdoing.

32. Further, in contravention of their fiduciary duty, the Debtors are not attempting to initiate any avoidance action with respect to the Cerberus Credit Facility or with the release contained in the Forbearance Agreement. Instead, the Debtors are granting broad releases to Cerberus and the Prepetition Secured Lenders and exculpations (including for pre-petition acts) to the current directors and officers under the Plan. This will thereby preclude the liquidation of any estate claims owned by the Debtors for the benefit of the creditors of the estates. To the extent that the allegations against Cerberus and the Prepetition Secured Lenders have merit, the Plan would endorse such wrongdoing at the sole expense of the creditors, including the Former Ds&O. Specifically, further investigation of these wrongdoings is warranted to, among other things, evaluate whether there is adequate consideration for the releases granted by the Debtors. As alleged in the Lawsuits, Cerberus had approved a $30 million distribution to stockholders under the Facility, and the damages alleged under the Lawsuits in which Cerberus has been named as a defendant along with certain of the current directors of Patriot exceed $450 million, including over $230 million in damages in connection with the Facility.

33. Given the many questions concerning the pre-petition transactions, the Debtors have not demonstrated that the Plan achieves fairness for the estates' creditors. Further, the Plan as contemplated should not be confirmed unless and until there is an investigation of the Debtors' claims and causes of action against the Prepetition Secured Parties, including Cerberus, and the Exculpated Parties, including current directors and officers. As the Debtors are unwilling to investigate the alleged wrongdoing or to unwind the releases under the Forbearance Agreement, it may be appropriate for the Court to grant the Committee derivative standing to investigate and prosecute such causes of action. Without a completed investigation, the Plan should not be confirmed at this time.

**B.     The Debtor Releases and Exculpations Are Impermissibly Broad**

34. In addition to the issues raised above, the Plan does not meet the standards under applicable law for granting Debtor releases under the Plan. *See* Plan, at Art. I.A.122 & XI.G. Pursuant to established precedent in this District, notwithstanding section 524(e) of the Bankruptcy Code, a plan may provide for releases by debtors of non-debtor entities based on the following factors:

   i.    identity of interests between debtor and non-debtor releasee, so that a suit against the non-debtor will deplete the estate's resources (e.g., due to a debtor's indemnification of a non-debtor);

   ii.   substantial contribution to the plan by non-debtor;

   iii.  necessity of release to the reorganization;

   iv.   overwhelming acceptance of plan and release by creditors; and

   v.    payment of all or substantially all of the claims of the creditors and interest holders under the plan.

*See, e.g., In re Tribune Co.*, 464 B.R. 126, 186 (Bankr. D. Del. 2011), *In re Washington Mutual,*

*Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011); *In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del 1999). "The factors are neither exclusive nor conjunctive requirements, but simply provide guidance in the Court's determination of fairness." *Tribune,* 464 B.R. at 186 (citing *Washington Mutual*, 442 B.R. at 346).

35. Here, the Debtors have failed to meet their burden to establish the Debtor Releases to the Released Parties is appropriate. First, if Cerberus received broad releases under the Forbearance, it is not clear why a Plan release of Cerberus is necessary for the reorganization. *See Transcript of Mar. 12, 2018 Hearing* at p. 46-7 (at which the Court questioned Cerberus regarding the necessity of its release under the Plan). Second, the Committee does not support the Plan and urges all unsecured creditors to vote to reject the Plan. *See Exhibit G* to the *Disclosure Statement*. Thus, whether the Plan will be accepted by creditors remains to be seen. And third, there is no guarantee under the Plan that unsecured creditors will receive any recovery from the Debtors' estates. *See Disclosure Statement* at p. 6 (estimated recovery percentage or interest in Class 5 General Unsecured Claims is "the proceeds from Litigation Trust Interest, if any.") In sum, in exchange for the highly valuable Debtor Release under the Plan, the Prepetition Secured Parties, including Cerberus, are not providing any comparable consideration or any extraordinary service that would constitute a substantial contribution to the Plan or to these chapter 11 cases. In addition, the Debtor Releases in favor of the Prepetition Secured Parties may negatively impair the Former Ds&O in connection with the defense of the Lawsuits and any future claims against the Former Ds&O by potentially negating the Former Ds&O's ability to pursue contribution claims against Cerberus.

36. Further, the Plan is non-confirmable because the Exculpations proposed by the Debtors for the benefit of the current directors and officers are overly broad and may be argued

as potentially negating the Former Ds&O's ability to pursue contribution claims against the exculpated current directors and officers who are named as defendants in the Lawsuits. An "exculpation clause must be limited to the fiduciaries who have served *during* the chapter 11 proceeding: estate professionals, the Committees and their members, and the Debtors' directors and officers." *Washington Mutual*, 442 B.R. at 350-51 (emphasis added).

37. As proposed, the Exculpations appear to improperly shelter the current directors and officers for pre-petition acts. Clearly, the inclusion of pre-petition acts into the Exculpations is wholly inappropriate and appears to be a disguised Debtor Release of the current directors and officers. In light of the many questions related to the appropriateness of, among others, the entry of the Forbearance Agreement and the release contained therein and the formulation of the Plan, which was drafted pre-petition under the supervision of the current directors and officers and appears to solely benefit the Prepetition Secured Parties and the current directors and officers, any exculpation of the current officers and directors is inappropriate.

**C. Reservation of Rights**

38. Following the filing of this Objection, the Former Ds&O intend to seek discovery of, among other parties, the Debtors and Cerberus in connection with the issues raised herein. The Former Ds&O reserve their right to supplement this Objection or otherwise raise additional objections to confirmation of the Plan prior to the objection deadline, and/or file appropriate motions based on any information produced during discovery.

WHEREFORE, the Former Ds&O respectfully request that this Court issue an order denying confirmation of the Plan, and/or granting such other relief as this Court deems appropriate, fair and just.

Dated: March 21, 2018  
San Diego, California

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

*/s/ Kandace Watson*
Kandace Watson (*pro hac vice* pending)
12275 El Camino Real
Suite 200
San Diego, CA 92130
Telephone: (858) 720-8900
Facsimile: (858) 509-3691

Ori Katz
Four Embarcadero Center
San Francisco, California 94111
Telephone: (415) 434-9100
Facsimile: (415) 434-3947

*Counsel to Quentin P. Smith, Jr., Charles H. Walsh, Michael J. Corey and Christopher A. Pesch*