# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| **PATRIOT NATIONAL, INC., *et al.*,**[1] | Case No. 18-10189 (KG) |
| **Debtors.** | (Jointly Administered) |
| | Hearing Date: April 2, 2018 at 10:00 a.m.<br>Objection Deadline: March 28, 2018 at 4:00 p.m. |

## DEBTORS' RESPONSE TO MOTIONS FOR RELIEF FROM THE AUTOMATIC STAY TO ALLOW PAYMENT AND/OR ADVANCEMENT OF DEFENSE COSTS

The debtors and debtors-in-possession in the above-captioned cases (collectively, the "<u>Debtors</u>") respond to the motions of various former and current officers and directors of the Debtors[2] (collectively, the "<u>Movants</u>") for relief from the automatic stay to allow payment and/or

---

1. The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors' federal tax identification number, are: Patriot National, Inc. (1376); Patriot Services, LLC (1695); TriGen Insurance Solutions, Inc. (2501); Patriot Captive Management, LLC (2341); Patriot Underwriters, Inc. (0045); TriGen Hospitality Group, Inc. (6557); Patriot Risk Consultants, LLC (0844); Patriot Audit Services, LLC (5793); Patriot Claim Services, Inc. (9147); Patriot Risk Services, Inc. (7189); Corporate Claims Management, Inc. (6760); CWIBenefits, Inc. (0204); Forza Lien, LLC (7153); Contego Investigative Services, Inc. (0330); Contego Services Group, LLC (0012); Patriot Care Management, LLC (2808); Radar Post-Closing Holding Company, Inc. (2049); Patriot Technology Solutions, LLC (6855); and Decision UR, LLC (1826). The Debtors' headquarters are located at 401 East Las Olas Boulevard, Suite 1650, Fort Lauderdale, Florida 33301.

2. See Steven Mariano's Motion for Relief from the Automatic Stay, to the Extent Necessary, to Allow Insurers to Pay Past and Future Defense Costs under D&O Policies, filed on March 12, 2018 (Docket No. 351); Motion for Entry of an Order Modifying the Automatic Stay to the Extent Applicable, to Allow Payment and/or Advancement of Defense Costs Under Directors and Officers Liability Policies, filed on March 12, 2018 by Sean M. Bidic, M.D., Terry L. Coleman, Ernst N. Csiszar, Glenn T. Hibler and Thomas C. Shields (Docket No. 355); Joinder of Austin J. Shanfelter in and to (i) Motion for Entry of an Order Modifying the Automatic Stay to the Extent Applicable, to Allow Payment and/or Advancement of Defense Costs Under Directors and Officers Liability Policies and (ii) Steven Mariano's Motion for Relief from the Automatic Stay, to the Extent Necessary, to Allow Insurers to Pay Past and Future Defense Costs under D&O Policies, filed on March 13, 2018 (Docket No. 371); Joinder of Certain Former Directors and Officer in and to Motion for Entry of an Order Modifying the Automatic Stay, to the Extent Applicable, to Allow Payment and/or Advancement of Defense Costs Under Applicable Directors and Officers Liability Policies, filed on March 14, 2018 by Quentin P. Smith, Jr., Charles H. Walsh, Michael J. Corey and Christopher A. Pesch (Docket No. 387); Joinder of John R. Del Pizzo to Motion for Entry of an Order Modifying the Automatic Stay, to the Extent Applicable, to Allow Payment and/or Advancement of Defense Costs Under Directors and Officers Liability Policies, filed on March 26, 2018 (Docket No. 433); and Joinder of James O'Brien, Michael Purcell, and Jeffrey Rohr in and to Motion

(Footnote continued on next page)

advancement of defense costs under the Debtors' Directors & Officers Liability policies (the "D&O Policies") and respectfully state as follows:

## PRELIMINARY STATEMENT

1. The Debtors do not object to lifting the automatic stay to allow the issuers of the D&O Policies (the "Insurers") to pay all reasonable outstanding defense costs incurred prior to the date this Court stayed the Actions (as defined in the Debtors' Motion to Compel Mediation) on February 28, 2018. The Debtors thus consent to the primary relief the Movants seek.

2. Going forward, the Debtors ask the Court to impose reasonable restrictions on the use of the proceeds of the D&O Policies to ensure those proceeds are not unnecessarily depleted during the period of this Court's stay of the Actions (the "Stay Period"). Specifically, the Debtors ask the Court to enter an order, and direct the parties, as follows:

   (a) Granting relief from the automatic stay to allow the Insurers to pay all reasonable fees and expenses incurred in the Actions up to the date this Court stayed those cases (February 28, 2018);

   (b) Granting relief from the automatic stay to allow the Insurers to pay the reasonable fees and expenses to be incurred by counsel for the Movants for their actual time in attending the mediation to be held on April 18-19, 2018;

---

(Footnote continued from prior page)
for Entry of an Order Modifying the Automatic Stay, to the Extent Applicable, to Allow Payment and/or Advancement of Defense Costs Under Applicable Directors and Officers Liability Policies, filed on March 28, 2018 (Docket No. 452) (collectively, the "Motions").

(c) Granting relief from the automatic stay to allow the Insurers to pay the reasonable fees and expenses incurred by any counsel for the Movants for their actual time in attending any judicially ordered hearing before a court of competent jurisdiction in any of the Actions other than this Court[3];

(d) Requiring that following the expiration of the stay of the Actions (currently May 29, 2018), Movants must seek further relief from the automatic stay from this Court to allow for payment for any other work performed during the period of the stay, with the interested parties, including the Committee and the Debtors, having an opportunity to comment;

(e) Limiting any relief granted to reimbursement of defense costs in connection with the Actions and not any fees or expenses incurred by any defendant in taking positions in the Debtors' chapter 11 cases in its capacity as an equityholder or a creditor in relation to the Debtors' proposed plan of reorganization or otherwise (e.g. objections to confirmation); and

(f) Advising the Movants that the Court anticipates that any other fees incurred during the Stay Period, beyond those for the services outlined in paragraphs (a)-(c) above, should be nominal.

3. The D&O Policies are important assets of the Debtors' estates, and some of the proceeds of those policies could be a source of significant recovery to the unsecured

---

3. The Honorable George B. Daniels ordered the parties in one of the Actions to appear at hearing in the United States District Court for the Southern District of New York on March 1, 2018. The Debtors are not aware of any other judicially-ordered, non-bankruptcy court hearings during the subject period.

3

creditors in this matter. For this reason, the Debtors are obligated to take action to conserve those proceeds and therefore ask the Court to provide the relief outlined above.

## BACKGROUND

### A. The D&O Policies

4.      The D&O Policies provide insurance coverage for claims made against directors, executives, employees, and agents of the Debtors. Certain of the D&O Policies also provide coverage to the Debtors to reimburse them for indemnification costs and for certain direct claims. Specifically, some of the policies provide "ABC" coverage and some provide only "Side A" coverage. The ABC policies provide coverage for both the insured entity (Patriot National) and its covered officers and directors as follows: Side A provides coverage to covered officers and directors of Patriot National (or a subsidiary) against damages and defense costs that they are obligated to pay in connection with claims made against them in their capacity as directors and officers; Side B provides coverage for losses arising from claims against insured persons to the extent that Patriot National (or a subsidiary) has indemnified those losses or paid those losses on behalf of the insured person; and Side C provides coverage for claims made directly against Patriot National (or a subsidiary).

### B. The Debtors' Indemnification Obligations

5.      Debtor Patriot National, Inc. ("Patriot National") has indemnification obligations to certain D&O Defendants based on its bylaws and prepetition agreements. Article IV of Patriot National's bylaws provides for the broad indemnification of its current and former directors, officers, employees, and agents. These obligations cover defense and settlement costs associated with claims arising out of an act or omission committed while acting as an officer,

4

director, employee, or agent. In addition, Patriot National has indemnification obligations to certain other non-Debtor parties pursuant to contractual agreements.

6. Certain of the Movants have already filed claims against the Debtors for indemnity in connection with various prepetition litigation described below. (*See, e.g.,* Claim Nos. 74, 84-88, 90-91.)

**C. Mediation**

7. On February 28, 2018, the Court entered an order (Docket No. 381) compelling mediation of the Actions and staying those cases for 90 days to allow such mediation to proceed. The mediation has been scheduled for April 18-19, 2018.

**ARGUMENT**

8. The Movants seek to have their counsel fees paid both for the period preceding the imposition of the stay of the litigation and on a going-forward basis. The Debtors do not oppose the Insurers advancing the reasonable defense costs that they conclude—based on their ordinary review of invoices, as they would in any case—they are required to pay under the D&O Policies.

9. At the same time, one of the principal reasons the Debtors sought the mediation and the accompanying stay of litigation was to create a framework within which the rights of all parties with an interest in the proceeds of the D&O Policies can be addressed. A necessary component of creating that framework is conserving those proceeds so there is something left to allocate among parties in interest, including potentially unsecured creditors. Thus, while the Debtors support the payment of reasonable defense costs incurred prior to the stay, they ask the Court to grant more tailored relief from the stay with respect to amounts incurred from and after March 1, 2018 through the end of the stay of litigation (currently May 29, 2018).

10. Given that a stay is in effect over all the Actions, and that there are no immediate scheduling deadlines in the cases following the lifting of the stay, the only activity defense counsel need to undertake during the Stay Period is attending the mediation itself. There is no reason that D&O Policy proceeds should be irretrievably spent for any other purpose.

11. In addition, any provision in the Movants' proposed orders requesting findings that the proceeds of the D&O Policies are not property of the Debtors' estates should be stricken because, contrary to certain of the Movants' contentions, the Debtors have a property interest in each of the D&O Policies. *See In re SN Liquidation, Inc.*, 388 B.R. 579, 583-584 (Bankr. D. Del. 2008) (holding that the policy at issue was "clearly in the nature of estate property" where it "provid[ed] coverage for directors and officers as well as for the Debtors"). While the Debtors are aware of the Court's *World Health Alternatives* decision, that case is distinguishable because here, unlike in *World Health Alternatives*, there are Side B indemnification claims. *See In re World Health Alternatives*, 369 B.R. 805, 810-811 (2007) (relying on *In re Allied Digital Techs. Corp.*, 306 B.R. 505, 510-12 (Bankr. D. Del. 2004). Here, as in *SN Liquidation*, the assertion of indemnification claims against the Debtors is not merely speculative: as stated above, certain of the Movants have already filed indemnification claims against the Debtors. *SN Liquidation, Inc.*, 388 B.R. at 584 ("Unlike the situation in *Allied Digital*, indemnification is not merely speculative in this case, but the defendants have made a formal request for indemnification. The Primary Policy is clearly in the nature of estate property providing coverage for directors and officers as well as for the Debtors. Depletion of insurance proceeds which results from indemnification for defense costs would adversely affect the Debtors' estate.").

12. If the D&O Policies are exhausted, these indemnification claims would increase the unsecured claims pool and reduce recoveries for all unsecured creditors, thereby clearly affecting the Debtors' estates. *See id.*; *see also In re Continental Airlines*, 177 B.R. 475, 481 (D. Del. 1993) (affirming bankruptcy court on finding that the automatic stay applied to certain actions against non-debtor defendants because, among other things, debtors were obligated under bylaws and transaction documents to indemnify non-debtor defendants).

13. To address such concerns, courts in similar cases have granted relief from the automatic stay to allow for the advancement of defense proceeds without determining whether the proceeds of the policies were property of the debtors' estates. *See, e.g.*, *In re Penson Worldwide, Inc.*, Case No. 13-10061 (PJW) (Docket No. 311 (Bankr. D. Del. Mar. 14, 2013)); *In re Dewey & LeBoeuf LLP*, No. 12-12321 (MG) (Docket No. 559 (Bankr. S.D.N.Y. Oct. 18, 2012)); *In re MF Global Holdings Ltd.*, 469 B.R. 177, 197 (Bankr. S.D.N.Y. Apr. 10, 2012). Such courts have also imposed so-called "soft caps" (essentially, interim limitations subject to increase upon a showing of cause) on the aggregate amount of proceeds that can be advanced absent a further showing of cause by the insureds. *Id.* These limitations appropriately balance insureds' rights to the advancement of defense costs with a debtor's obligation to conserve its assets and maximize the amounts available to all creditors.

14. In this case, where the litigation against the non-Debtor insureds under the D&O Policies is stayed, a more targeted limitation than an overall interim maximum reimbursement amount is appropriate and relatively simple to establish using objective measures. Thus, the only activity that is not subject to this Court's stay is the mediation, and therefore attending the mediation is an appropriate basis for advancement of defense costs during the Stay Period. Moreover, the insureds should not be entitled to advancement of amounts for incurred

by them in these chapter 11 cases seeking to advance rights as equityholders or creditors such as objecting to the Debtors' proposed plan of reorganization. While the Debtors dispute that any such acts would be covered claims under the D&O Policies, the insureds should not be permitted to waste proceeds of the D&O Policies to advance their own pecuniary interests.

15. There is minimal prejudice to the insureds under this approach because the Debtors are requesting that these limitations be in effect only during the Stay Period. The insureds are not precluded from seeking further reimbursement after the Stay Period ends. The limitation the Debtors request equitably balances the interests of all parties in interest, as well as those of the Debtors' stakeholders.

16. Any stay relief should also be conditioned on the imposition of notice and reporting requirements to the Debtors and the Committee. The Insurers should be required to, within ten days following the first day of each month (the "Reporting Date"), submit a written report (the "Report") to the Court, with copies to counsel for the Debtors and the Committee stating: (a) the aggregate amount disbursed through the last day of the month immediately prior to the Reporting Date under the D&O Policies issued by such Insurer; (b) the aggregate amount disbursed pursuant to the D&O Policies issued by such Insurer during the month immediately prior to the Reporting Date; (c) the aggregate amount of fees, costs, and/or other losses of any sort incurred by all of the insured parties for which the insured parties have tendered invoices seeking payment under the D&O Policies issued by such Insurer but for which such Insurer has not yet made disbursements through the last day of the month immediately prior to the Reporting Date; and (d) to the best knowledge of counsel of record for such Insurer, the total coverage remaining pursuant to the D&O Policies issued by the Insurer.

8

DOCS_DE:218666.1 69353/002

17. Numerous courts have imposed such types of reporting requirements on advancement of defense costs for directors and officers. *See, e.g., In re Overseas Shipholding Group, Inc*., Case No. 12-20000 (PJW) (Docket No. 1087 (Bankr. D. Del. March 21, 2013)); *In re Allied Systems Holdings, Inc.*, Case No. 12-11564 (CSS) (Docket No. 1248 (Bankr. D. Del. June 4, 2013)); *In re RCS Capital Corp.*, Case No. 16-10223 (MFW), (Docket No. 699 (Bankr. D. Del. May 3, 2016)); *In re JMO Wind Down, Inc*., Case No. 16-10682 (BLS), (Docket No. 313 (Bankr. D. Del. Aug. 3, 2016 )).

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order granting, in part, the Movants' request to lift the stay and entering the other relief Debtors request above.

Dated: March 28, 2018
      Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Peter J. Keane*
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Peter J. Keane (DE Bar No. 5503)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
      joneill@pszjlaw.com
      pkeane@pszjlaw.com

-and-

Kathryn A. Coleman
Christopher Gartman
Erin E. Diers
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: (212) 837-6000
Facsimile: (212) 422-4726
Email: katie.coleman@hugheshubbard.com
      chris.gartman@hugheshubbard.com
      erin.diers@hugheshubbard.com

*Counsel for the Debtors*